**No. 21-12314**

In the

# United States Court of Appeals
## for the Eleventh Circuit

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ET AL.,**

*Appellants*,

v.

**RICK SWEARINGEN, in his official capacity as Commissioner of the Florida Department of Law Enforcement,**

*Appellee.*

On Appeal from the United States District Court
for the Northern District of Florida
Case No. 4:18-cv-00137-MW-MAF

## CORRECTED APPELLANTS' OPENING BRIEF

John Parker Sweeney
James W. Porter, III
Marc A. Nardone
Connor M. Blair
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Telephone: (202) 393-7150
jsweeney@bradley.com

*Counsel for Appellants*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

I certify that the following trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations have an interest in the outcome of this case or appeal:

1. Baum, Christopher J. (Counsel for Appellee)

2. Bell, Daniel (Counsel for Appellee)

3. Blair, Connor M. (Counsel for Appellants)

4. Bradley Arant Boult Cummings LLP (Law Firm Representing Appellants)

5. Fant, Radford (Appellant)

6. Fitzpatrick, Martin A., Hon. (Magistrate Judge Below)

7. Golembiewski, Kevin (Counsel for Appellee)

8. Nardone, Marc A. (Counsel for Appellants)

9. National Rifle Association of America, Inc. (Appellant)

10. Newhall, Timothy (Counsel for Appellee)

11. Percival, James H. (Counsel for Appellee)

12. Porter, James W. (Counsel for Appellants)

13. Swearingen, Rick, in his official capacity as Commissioner of the Florida Department of Law Enforcement (Appellee)

14. Sweeney, John Parker (Counsel for Appellants)

15. Teegen, Elizabeth (Counsel for Appellee)

16. Walker, Mark E., Hon. (Chief United States District Judge below)

17. Whitaker, Henry (Counsel for Appellee)

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Dated: August 18, 2021                      Respectfully submitted,

                                            */s/ John Parker Sweeney*

                                            John Parker Sweeney
                                            *Counsel for Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents several important constitutional questions of first impression in this Circuit, including whether adults under the age of 21 may be categorically prohibited from exercising a fundamental right enshrined in the Bill of Rights, whether being a member of that disfavored class is constitutionally analogous to being a convicted felon or person adjudicated to be mentally ill, and whether the lawfulness of a "longstanding" prohibition may be challenged under the Second Amendment. Appellants believe oral argument would assist the Court in deciding this important case.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF CITATIONS ..................................................................... vii

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUES.............................................................2

STATEMENT OF THE CASE................................................................3

   I.   The course of proceedings .........................................................3

   II.  Statement of facts ...................................................................4

      A.   Appellant NRA represents the interests of law-abiding, responsible young adults seeking to exercise their fundamental rights. ........................4

      B.   Florida bans all young adults from purchasing any firearm. .......................5

      C.   The District Court upheld the Ban. ............................................7

      D.   The Ban has no historical analogue. ...........................................9

      E.   The Ban is unlikely to promote public safety. .............................11

   III. Standard of review..................................................................14

SUMMARY OF THE ARGUMENT .....................................................15

ARGUMENT ...................................................................................16

   I.  The Ban violates young adults' Second Amendment right to purchase firearms.................................................................................16

      A.   The Second Amendment protects young adults' right to purchase firearms.................................................................................16

         1.   The Second Amendment's text, history, and tradition confirm that young adults have the right to purchase firearms. ..................................18

         2.   The Ban is not a presumptively lawful measure because it is not analogous to longstanding prohibitions on felons and the mentally ill and is not mere commercial regulation. ...........................................24

3.    The Ban is not lawful even if it is analogous to one of the presumptively lawful measures in *Heller*'s dicta. ...................................30

B.    The Ban violates the Second Amendment. .................................................31

1.    The Ban is unconstitutional under *Heller*'s text, history, and tradition standard because it bans law-abiding, responsible citizens from acquiring firearms. ...................................................................................31

2.    The Ban fails heightened scrutiny because it burdens the Second Amendment and is not sufficiently related or appropriately tailored to its purpose. ............................................................................................35

II.    The Ban violates young adults' Fourteenth Amendment right to equal protection of the law because it fails both strict scrutiny and even rational basis review. .......................................................................................43

CONCLUSION ......................................................................................................46

CERTIFICATE OF COMPLIANCE ......................................................................47

CERTIFICATE OF SERVICE ...............................................................................48

# TABLE OF CITATIONS

**Cases**                                                                                     **Page(s)**

*AEGIS Elec. & Gas Int'l Servs. Ltd. v. ECI Mgmt. LLC*,
    967 F.3d 1216 (11th Cir. 2020) ........................................................................14

*Americans for Prosperity Found. v. Bonta*,
    141 S. Ct. 2373 (2021).....................................................................................39

*Ashcroft v. Free Speech Coal.*,
    535 U.S. 234 (2002)..........................................................................................40

*Bellotti v. Baird*,
    443 U.S. 622 (1979)..........................................................................................20

*Binderup v. Att'y Gen. U.S. of Am.*,
    836 F.3d 336 (3d Cir. 2016) (en banc) ............................................................31

*Burk v. Augusta-Richmond County*,
    365 F.3d 1247 (11th Cir. 2004) ........................................................................37

*Citizens United v. Fed. Election Comm'n*,
    558 U.S. 310 (2010)...........................................................................................37

*City of Los Angeles v. Alameda Books, Inc.*,
    535 U.S. 425 (2002)...........................................................................................40

\* *Craig v. Boren*,
    429 U.S. 190 (1976)......................................................................................40, 41

\* *District of Columbia v. Heller*,
    554 U.S. 570 (2008)...................................................................................*passim*

*Elhert v. Settle*,
    CL20000582, Circuit Court for the City of Lynchburg (24th Va.
    Cir., July 14, 2020) ...........................................................................................34

\* *Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ......................................................................15, 34

*Fisher v. Univ. of Texas at Austin*,
    136 S. Ct. 2198 (2016)......................................................................................19

\* *Flick v. Att'y Gen.*,
  812 F. App'x 974 (11th Cir. 2020) ....................................30

\* *Gary v. City of Warner Robins*,
  311 F.3d 1334 (11th Cir. 2002) ..................................43, 44

\* *GeorgiaCarry.Org, Inc. v. Georgia*,
  687 F.3d 1244 (11th Cir. 2012) ............................ 17, 18, 35

*GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*,
  788 F.3d 1318 (11th Cir. 2015) ....................................... 37

*Goss v. Lopez*,
  419 U.S. 565 (1975)..................................................19

\* *Heller v. District of Columbia*,
  670 F.3d 1244 (D.C. Cir. 2011)............................ 31, 32, 36

\* *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*,
  No. 19-2250, 2021 WL 2934468 (4th Cir. July 13, 2021) .........................*passim*

*Illinois Ass'n of Firearms Retailers v. City of Chicago*,
  961 F. Supp. 2d 928 (N.D. Ill. 2014)..................................34

*Islam v. Sec'y, Dep't of Homeland Sec.*,
  997 F.3d 1333 (11th Cir. 2021) .......................................14

*Kanter v. Barr*,
  919 F.3d 437 (7th Cir. 2019) ..........................................33

*Kent v. Dulles*,
  357 U.S. 116 (1958)....................................................20

*Lawrence v. Texas*,
  539 U.S. 558 (2003)....................................................20

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001)....................................................39

\* *Maryland Shall Issue, Inc. v. Hogan*,
  971 F.3d 199 (4th Cir. 2020) ..........................................34

*McCutcheon v. FEC*,
   572 U.S. 185 (2014).......................................................................39

\* *McDonald v. City of Chicago*.,
   561 U.S. 742 (2010)...................................................................*passim*

\* *Moore v. Madigan*,
   702 F.3d 933 (7th Cir. 2012) ...................................................... 18, 24

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco,*
   *Firearms, & Explosives*,
   700 F.3d 185 (5th Cir. 2012) ...........................................21, 31, 42, 43

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco,*
   *Firearms, & Explosives*,
   714 F.3d 334 (5th Cir. 2013) ........................................................10

*New Jersey v. T.L.O.*,
   469 U.S. 325 (1985)......................................................................19

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York*,
   140 S. Ct. 1525 (2020)................................................................. 32

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015) ..........................................................31

*Nunn v. State*,
   1 Ga. 243 (1846) .........................................................................24

*Obergefell v. Hodges*,
   576 U.S. 644 (2015)......................................................................20

*Packingham v. North Carolina*,
   137 S. Ct. 1730 (2017)..................................................................39

*Planned Parenthood of Southeastern PA v. Casey*,
   505 U.S. 833 (1992)......................................................................34

*Ray v. Commr, Alabama Dept of Corr.*,
   915 F.3d 689 (11th Cir. 2019) ................................................... 15, 38

*Roper v. Simmons*,
   543 U.S. 551 (2005)................................................................. 20, 23

*Se. Promotions Ltd. v. Conrad*,
    420 U.S. 546 (1975)..........................................................................40

*Silvester v. Harris*,
    843 F.3d 816 (9th Cir. 2016) ............................................................36

* *Teixeira v. County of Alameda*,
    873 F.3d 670 (9th Cir. 2017) (en banc) ...........................................34

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969)..........................................................................19

*Troxel v. Granville*,
    530 U.S. 57 (2000)............................................................................20

* *Turner Broad. Sys., Inc. v. FCC*,
    520 U.S. 180 (1997)..........................................................................39

* *Tyler v. Hillsdale Cty. Sheriff's Dep't*,
    837 F.3d 678 (6th Cir. 2016) (en banc) ......................................26, 31

*United States v. Alvarez*,
    567 U.S. 709 (2012)..........................................................................14

*United States v. Booker*,
    644 F.3d 12 (1st Cir. 2011)...............................................................31

* *United States v. Focia*,
    869 F.3d 1269 (11th Cir. 2017) ...........................................25, 28, 29

*United States v. Hughley*,
    691 F. App'x 278 (8th Cir. 2017)......................................................31

* *United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) ...............................................................29

*United States v. Playboy Ent. Grp., Inc.*,
    529 U.S. 803 (2000)......................................................................37, 38

* *United States v. Rozier*,
    598 F.3d 768 (11th Cir. 2010) .............................................25, 26, 30

*United States v. Skoien,*
  614 F.3d 638 (7th Cir. 2010) (en banc) ............................................31

*United States v. Verdugo–Urquidez,*
  494 U.S. 259 (1990)..........................................................................19

* *United States v. White,*
  593 F.3d 1199 (11th Cir. 2010) ...................................................26, 30

*W. Va. State Bd. of Educ. v. Barnette,*
  319 U.S. 624 (1943)..........................................................................18

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989)..........................................................................39

*Williams v. Pryor,*
  240 F.3d 944 (11th Cir. 2001) .........................................................37

**Statutes**

10 U.S.C. § 246 ....................................................................................22

10 U.S.C. § 505(a) ...............................................................................22

18 U.S.C. § 922(b)(1)........................................................................5, 11

18 U.S.C. § 922(g)(4)...........................................................................26

18 U.S.C. § 922(g)(9)...........................................................................26

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1331 ....................................................................................1

28 U.S.C. § 1343 ....................................................................................1

32 U.S.C. § 313 ....................................................................................23

50 U.S.C. § 3803(a) .............................................................................23

1875 Ind. Acts 59 .................................................................................11

1882 Md. Laws 656 ..............................................................................11

1882 W. Va. Acts 421 ...........................................................................11

1890 Okla. Stat. 495 ...........................................................................11

1890 Wyo. Sess. Laws 127 ................................................................11

1890 La. Acts 39 .................................................................................11

1892 D.C. Stat. 116 ............................................................................11

1923 N.H. Laws 138 ...........................................................................11

1923 S.C. Acts and Joint Resolutions 207 ......................................11

Act of Feb. 28, 1795, 1 Stat. 424 .....................................................22

Act of May 8, 1792, 1 Stat. 271 ................................................10, 22

Fla. Stat. § 390.01114 ........................................................................23

Fla. Stat. § 743.07 ..............................................................................23

Fla. Stat. § 790.065 .......................................................................*passim*

Fla. Stat. § 790.065(2)(a)(4). ..............................................................5

Fla. Sta. § 790.065(13) .................................................................*passim*

Fla. Stat. § 775.082 ..............................................................................4

Fla. Stat. § 775.083 ..............................................................................4

Fla. Stat. § 790.22(3) ...........................................................................5

Fla. Stat. § 790.23(1)(a) ......................................................................5

Fla. Stat. § 790.233(1) .........................................................................5

Fla. Stat. § 943.13 ..............................................................................23

Fla. Stat. § 985.557 ............................................................................23

**Other Authorities**

1 Commentaries on the Laws of England (1765) ............................21

14 *Documentary History of the First Federal Congress: Debates in the House of Representatives, Third Session: December 1790–March 1791* (1995). .......................................................22

Ch. 2018-3, § 2, Laws of Fla .................................................11

David B. Kopel & Joseph G.S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. L.J. 495 (2019) .........................................9, 10

Fed. R. Civ. P. 56(a)...............................................................14

Gary Kleck, *Regulating Guns Among Young Adults*, Am. J. of Crim. Just. 44:689 (2019) ...............................................13, 42

Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control,* 73 Fordham L. Fev. 505-06 (2004) ............................................................... 9, 10

Thomas M. Cooley, *The General Principles of Constitutional Law in the United States of America* 271 (1880).............................................21

U.S. Const. amend. I .............................................................18

U.S. Const. amend. II ...................................................*passim*

U.S. Const. amend. IV ..........................................................18

U.S. Const. amend. VIII...........................................................20

U.S. Const. amend. XIV ................................................*passim*

U.S. Const. art. I, § 2..............................................................18

U.S. Const. art. I, § 3..............................................................18

U.S. Const. art. II, § 1 ............................................................18

## JURISDICTIONAL STATEMENT

The National Rifle Association of America, Inc. ("NRA") and Radford Fant (collectively, "Appellants") challenge Section 790.065(13) of the Florida Statutes (the "Ban") because Florida's categorical ban on the purchase of any firearm by 18-to-20-year-old law-abiding, responsible adults (hereinafter referred to as "young adults") is precluded by the Second and Fourteenth Amendments to the United States Constitution. The United States District Court for the Northern District of Florida had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The District Court's final judgment granting summary judgment to Appellee and denying Appellants' motion for summary judgment was entered on the docket on June 24, 2021. Appellants' Appendix ("App.") 236. Appellants timely noticed their appeal on July 7, 2021. App. 237. This appeal is from a final judgment. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Whether the Second and Fourteenth Amendments preclude Florida from banning all firearm purchases by law-abiding, responsible young adults.

**STATEMENT OF THE CASE**

Appellants challenge Florida's Ban on all firearm purchases by law-abiding, responsible young adults. The Ban significantly burdens the right of young adults to possess firearms for self-defense and other purposes by denying their right to purchase any type of firearm. The Ban is a "blunt instrument" unlikely to achieve its purpose. The Ban irrationally treats young adults differently from all other law-abiding adults, violating the Second and Fourteenth Amendments.

## I.  The course of proceedings

Appellant NRA brought suit challenging the Ban in March 2018. App. 7 (Docket, ECF No. 1.) After the District Court denied the NRA's motion to grant additional individual plaintiffs leave to proceed under pseudonyms, App. 8 (Docket, ECF No. 32), the NRA appealed to this Court, App. 8 (Docket, ECF No. 34.) The NRA voluntarily dismissed that appeal, App. 10 (Docket, ECF No. 55-1), and filed an amended complaint, dropping the pseudonymous plaintiff and adding Plaintiff Radford Fant, App. 10 (Docket, ECF No. 54.)

Appellee moved to dismiss, arguing that Appellants failed to state a claim as to either their facial Second Amendment challenge or their facial Equal Protection challenge and that Florida's Attorney General should be dismissed as an improper party. (Def. MTD, ECF 73, 1). The District Court granted that motion in part, dismissing the Attorney General, and denied it in part, holding that Appellants

3

"plausibly alleged that [the Ban] is unconstitutional" as violative of both the Second and Fourteenth Amendments. (Order on Def. MTD, ECF 94, 6–7.)

The parties disclosed and deposed expert witnesses. Motions to strike those experts were filed, App. 17 (Docket, ECF Nos. 125, 126 & 127), but not resolved by the District Court, which did not rely upon the experts in its decision. The parties took no additional discovery. The material facts underlying Appellants' challenge of the Ban are not in dispute.

Both parties moved for summary judgment. App. 15, 16 (Docket, ECF Nos. 107 & 109.) Upholding the Ban, the District Court denied Appellants' motion for summary judgment and granted summary judgment in favor of Appellee. App. 189 (Order, at 2.)

## II. Statement of the facts

### A. Appellant NRA represents the interests of law-abiding, responsible young adults seeking to exercise their fundamental rights.

The NRA, founded in 1871, is the oldest civil rights organization in America and the Nation's foremost defender of Second Amendment rights. App. 54 (Decl. of Joshua Savani, ECF No. 108-1, ¶ 5.) Its mission is "[t]o protect and defend the Constitution of the United States, especially . . . the God-given inalienable right of the individual American Citizen guaranteed by such Constitution to acquire . . . and enjoy the right to keep and bear arms . . . ." (*Id*. ¶ 6.) The NRA promotes the safe and responsible purchase, possession, and use of firearms by law-abiding,

responsible adults for lawful purposes, such as self-defense, target practice, marksmanship competition, and hunting. (*Id.* ¶ 7.) The NRA has a membership of approximately five million persons. (*Id.*) The NRA's membership includes over 300,000 members in the State of Florida, including at least 276 young adult members. (*Id.* ¶ 8.) But for a reasonable fear of prosecution under the Ban, some of these law-abiding, responsible young adults would purchase handguns, long guns, or both for self-defense and other lawful purposes. (*Id.* ¶ 9.)

Appellant Radford Fant is a law-abiding, responsible adult citizen and resident of Florida between the ages of 18 and 21, seeking to exercise his fundamental right to purchase firearms. App. 58 (Decl. of Radford Fant, ECF No. 108-2, ¶¶ 3, 5–6, 8–10.) Fant is a member of the NRA. (*Id.* ¶ 4.) But for the Ban, he could lawfully purchase a firearm under Florida and federal law. (*Id.* ¶ 6.) He is not a law-enforcement officer, correctional officer, or servicemember and is not exempt from the Ban. (*Id.* ¶ 7.) Fant desires to exercise his constitutionally protected right to purchase a handgun and long gun for self-defense and other lawful purposes. (*Id.* ¶ 8.) But for a reasonable fear of prosecution under the Ban, he would lawfully purchase these firearms. (*Id.* ¶ 9.)

### B. Florida bans all young adults from purchasing any firearm.

In 2018, Florida enacted the Ban, which reads:

A person younger than 21 years of age may not purchase a firearm. The sale or transfer of a firearm to a person younger than 21 years of

age may not be made or facilitated by a licensed importer, licensed manufacturer, or licensed dealer. A person who violates this subsection commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. The prohibitions of this subsection do not apply to the purchase of a rifle or shotgun by a law enforcement officer or correctional officer . . . or a servicemember . . . .

Fla. Stat. § 790.065(13) (reprinted at Addendum-8). An individual who purchases

any firearm in violation of this Ban is subject to imprisonment for up to five years,

a fine of up to $5,000, or both. *Id.* §§ 775.082, 775.083.

The Ban is redundant of other, more narrow Florida and federal prohibitions

not at issue here. Florida generally prohibits firearm purchase or possession by:

- Minors under the age of 18, *id.* § 790.22(3);

- Anyone convicted of a felony, *id.* § 790.23(1)(a);

- Anyone enjoined against committing acts of domestic violence, *id.* § 790.233(1); and

- Anyone adjudicated mentally defective or committed to a mental institution, *id.* § 790.065(2)(a)(4).

Federal law prohibits anyone under the age of 21 from purchasing handguns from a

federally licensed firearm dealer ("FFL") by prohibiting FFLs from selling handguns

to those under 21 years of age. 18 U.S.C. § 922(b)(1). This law is not at issue here.

Federal law does not otherwise restrict young adults' right to acquire a firearm.

While the Ban prohibits all young adults from purchasing any firearm, including all long guns and handguns, from any source at all, it does not prohibit young adults from obtaining a firearm through gift or loan. Notwithstanding this exception, the Ban "functions as a total ban" that prohibits individuals likely to "actually need firearms to defend themselves," including, for example, "the 20-year-old single mother living on her own [from] obtain[ing] a firearm for self-defense [while allowing] a 20-year-old living with their parents [to] easily obtain one[.]" App. 232–33 (Order, at 45–46.)

### C. The District Court upheld the Ban.

The District Court applied this Court's two-step approach for evaluating Second Amendment challenges, under which the court determines if the restricted activity is protected by the Second Amendment and, if so, whether the restriction satisfies heightened scrutiny. App. 195–96 (Order, at 8–9.)

Under step one, the District Court "look[ed] to sources from before, at, and just after the Founding Era [to determine whether] 18-to-20-year-olds historically [were] understood to have a right to purchase firearms[.]" App. 199 (Order, at 12.) The District Court "found no case or article suggesting that, during the Founding Era, any law existed that imposed restrictions on 18-to-20-year-olds' ability to purchase firearms." App. 200–01 (Order, at 13–14.) The District Court then considered whether "restrictions on 18-to-20-year-olds are longstanding" and

"analogous to the [felon and mentally ill] prohibitions listed in *Heller*." App. 208, 220 (Order, at 21, 33.) The District Court held that restrictions on young adults' purchasing firearms are longstanding because a small minority of states restricted selling handguns to individuals under 21 years of age in the late nineteenth and early twentieth centuries and because in 1968 the federal government prohibited FFLs from selling handguns to those under 21. App. 210–11 (Order, at 23–24 & n.22.) The District Court held the Ban presumptively lawful as analogous to the felon prohibition referenced in *Heller*'s dicta because young adults are "thought to be especially dangerous with firearms." App. 223–25 (Order, at 36–38.) Construing this Court's precedents to foreclose rebuttal of this presumption, the District Court ended its analysis there, holding that young adults have no Second Amendment rights and that the Ban does not violate the Second Amendment. App. 229 (Order, at 42.)

The District Court did not conduct the second step of the analysis. App. 229 (Order, at 42.) The District Court did, however, express "grave concerns about the balance the Legislature struck." App. 232 (Order, at 45.) The Court concluded the Ban is a "blunt instrument," App. 230 (Order, at 43), that "will have little impact on many, if not most, 18-to-20-year-old Floridians. In short, then, it is not clear how much the Act does to prevent tragedies like the one at Marjory Stoneman Douglas High School," App. 232 (Order, at 45.)

The District Court applied rational basis review to Appellants' Equal Protection challenge after holding that "age is not a suspect class" and "no fundamental right . . . is implicated [since] the [Ban] does not violate the Second Amendment." App. 230 (Order, at 43.) The District Court held that the Ban survives rational basis review because "[the Ban's] connection to Florida's stated purpose is [not] so tenuous as to render Florida's actions irrational." App. 230 (Order, at 43.)

### D. The Ban has no historical analogue.

The District Court reviewed the undisputed facts and "found no case or article suggesting that, during the Founding Era, any law existed that imposed restrictions on 18-to-20-year-olds' ability to purchase firearms." App. 200–01 (Order, at 13–14) (citing Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 505–06 (2004) (cataloging Founding-Era firearms regulations).) The District Court inferred that, "[g]iven the amount of attention this issue has received, if such a law existed, someone surely would have identified it by now." App. 201 (Order, at 14.)

The District Court correctly found undisputed that "those eighteen and up were generally part of the militia, [although] that was not always the case." App. 211 (Order, at 24.) Every militia law near the time of ratification required 18-year-olds to be part of the militia and bring their own arms. David B. Kopel & Joseph G.S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. L.J. 495, 533–

9

595 (2019) (analyzing the Founding-Era militia enactments); *Hirschfeld*, 2021 WL 2934468, at *16, App. 1 & 2 (4th Cir. July 13, 2021), as amended (July 15, 2021) (collecting authority). For this reason, the age of majority for keeping and bearing arms was 18. *Infra* 21–22. The age of majority remains 18 today for militia and other purposes. *Infra* 23.

The District Court also found undisputed that "throughout the early nineteenth century, neither the states nor the federal government imposed any explicit restrictions on the purchase of firearms by 18-to-20-year-olds." App. 211 (Order, at 24); *see also* App. 200–04 (Order, at 13–17) (citing Cornell & DeDino, *supra*, at 505–06); Kopel & Greenlee, *supra*, at 533–595; Militia Act of 1792, ch. 33 § 1, 1 Stat. 271 (1792); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 714 F.3d 334, 344 (5th Cir. 2013) ("*BATFE II*") (Jones, J., dissenting from denial of rehearing en banc) ("[T]he panel is unable to prove that banning commercial firearms sales to late teens has any analogue in the founding era.").

The District Court summed up the undisputed facts in the historical record: "Florida's restriction finds little support in the Founding Era." App. 211 (Order, at 24.)

Only a handful of states imposed restrictions on young adults' ability to purchase firearms thereafter, and such restrictions were not widespread or as

complete as the Ban. By 1900, only five states (Indiana, Maryland, West Virginia, Louisiana, and Wyoming) and the District of Columbia[1] prohibited those under the age of 21 from purchasing pistols or handguns. Just three more states (Oklahoma, New Hampshire, and South Carolina[2]) had added similar restrictions by 1925. No state "ban[ned] the sale of long guns." App. 211 (Order, at 24 n.22.) "This apparently remained the status quo until the 1960s, when Congress [enacted 18 U.S.C. § 922(b)(1)]," which prohibits FFLs from selling handguns to young adults. App. 210 (Order, at 23) (internal quotation omitted.)

### E.  The Ban is unlikely to promote public safety.

Florida enacted the Ban to "comprehensively address[] gun violence on school campuses." Ch. 2018-3, § 2, Laws of Fla.; *see also* App. 107 (Bill Analysis and Fiscal Impact Statement for S.B. 7026, ECF No. 108-5, at 4.) Appellee attempted to justify the Ban by arguing that young adults are more "likely" to commit crime than older adults. (Def. MSJ, ECF 107, at 25.) Appellee presented statistical evidence that young adults are disproportionately likely to commit crimes, (*id.* at 26), but Appellants presented evidence that those aged 21-to-24-years-old

---

[1] Indiana, 1875 Ind. Acts 59, 59; Maryland, 1882 Md. Laws 656, 656; West Virginia, 1882 W. Va. Acts 421, 421; Louisiana, 1890 La. Acts 39, 39; Wyoming, 1890 Wyo. Sess. Laws 127; District of Columbia, 27 Stat. 116, 117 (1892).

[2] Oklahoma, Act of 1890, ch. 25, art. 47, §§ 1- 3, 1890 Okla. Stat. 495, 495 (admitted as a State in 1907); New Hampshire, ch. 118, § 7, 1923 N.H. Laws 138, 139; South Carolina, No. 148, § 19, 1923 S.C. Acts and Joint Resolutions 207, 221.

have a higher arrest rate for violent crime; young adults are not uniquely disproportionately likely to commit crimes. App. 78–79 (English Decl., ECF No. 108-4 ¶ 13.) Appellee also presented an expert opinion that "on average 18-year old individuals are more likely to engage in behaviors that are impulsive, emotional, risky and that offer immediate or short time reward compared to 21-year old individuals," and are "more likely to react impulsively under emotional situations and in situations that they perceive as threatening." (Def. MSJ, ECF 106-1, at 21.) But Appellants showed that the studies Appellee's expert relied upon do not support his conclusions because 18-to-20-year-old adults are not included in the adolescent age groups actually studied. App. 149 (Kleck Decl., ECF No. 108-6 ¶ 12.)

Appellee offered no evidence:

- That young adults commit a disproportionate amount of gun crimes,

- That young adults purchasing firearms increases crimes committed by young adults,

- That prohibiting young adults' firearm purchase would reduce firearm violence,

- That the legislature considered any evidence that a categorical ban would be effective,

- How many young adults now banned from purchasing a firearm ever committed crimes or gun crimes, or

12

- How many young adults were already prohibited from purchasing firearms by laws not at issue here.

The record evidence demonstrates that the Ban is unlikely to reduce gun violence. More than 98% of the young adults who are subject to the Ban will never commit a violent crime, with or without a gun. App. 148 (Kleck Decl., ECF No. 108-6 ¶ 7.) Only 10% of firearms used in crime are obtained through regulated sales involving background checks; instead, the vast majority are obtained through illegal means. App. 73 (English Decl., ECF No. 108-4 ¶ 8.) Long guns, which Florida now bans young adults from purchasing, are implicated in only 14.5% of gun crime and fewer than 7.5% of homicides. App. 73–74 (English Decl., ECF No. 108-4 ¶ 8.)

Undisputed facts establish that "[a]ge-based restrictions on purchase and possession of firearms . . . have no detectable crime-reducing effect." App. 149 (Kleck Decl., ECF No. 108-6 ¶ 11); *see also* App. 73–74 (English Decl., ECF No. 108-4 ¶ 8.); Gary Kleck, *Regulating Guns Among Young Adults*, Am. J. of Crim. Just. 44, 689, 699 (2019) ("The federal ban on 18–20-year-olds purchasing handguns from licensed dealers . . . does not appear to have reduced the 18–20-year-old share of violent crime . . . . The ban was apparently ineffective in reducing criminal violence."). Age-based restrictions are also unlikely to affect suicide rates or prevent accidental deaths from long guns among young adults because those rates are already very low. App. 75–76 (English Decl., ECF No. 108-4 ¶ 9.) The United States Circuit

13

Court for the Fourth Circuit ("Fourth Circuit") recently examined the data regarding young adults and firearm crime and confirmed that "an exceedingly small percentage, around 0.3% and definitely less than 1%, of the 13 million young adults in this group commit [violent] crimes." *Hirschfeld*, 2021 WL 2934468, at *31 (collecting data).

### III. Standard of review

Appellants contend the District Court erred in granting summary judgment to Appellee and denying Appellants' motion for summary judgment. The District Court's decision is reviewed de novo. *AEGIS Elec. & Gas Int'l Servs. Ltd. v. ECI Mgmt. LLC*, 967 F.3d 1216, 1223 (11th Cir. 2020).

"In conducting de novo review of the district court's grant of summary judgment, we apply the same underlying standard used by the district court," *Islam v. Sec'y, Dep't of Homeland Sec.*, 997 F.3d 1333, 1346 (11th Cir. 2021), requiring Appellee to establish that there is "no genuine dispute as to any material fact and [he is] entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). To demonstrate the District Court erred in denying their motion for summary judgment, Appellants must establish that there is "no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

Either way, Appellee bears the burden of proving the constitutionality of the Ban. *United States v. Alvarez*, 567 U.S. 709, 717 (2012); *Ray v. Commr, Alabama Dept of Corr.*, 915 F.3d 689, 698 (11th Cir. 2019).

## SUMMARY OF THE ARGUMENT

The Second Amendment guarantees "the people"—all law-abiding, responsible citizens—the individual right to possess and carry firearms for self-defense and other lawful purposes. *District of Columbia v. Heller*, 554 U.S. 570, 592, 635 (2008). The right to possess firearms includes the right to purchase them. *See, e.g.*, *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). The text, history, and tradition of the Second Amendment confirm that young adults have this right just the same as older adults. *See, e.g.*, *Hirschfeld*, 2021 WL 2934468, at *1.

Florida bans young adults from exercising their right to purchase a firearm. This unprecedented law categorically bans an entire class of citizens who come within the Second Amendment's protections from exercising their right and is as unconstitutional as it is ill-suited for its stated purpose. The Ban is unconstitutional per se because it is inconsistent with the text, history, and tradition of the Second Amendment. The Ban also fails any level of heightened scrutiny because it is not sufficiently related to its purpose or appropriately tailored. It is instead "a blunt instrument," App. 230 (Order, at 43), that categorically violates every young adult's

rights in hopes of preventing criminal firearm violence by a very few and is unlikely to further its purpose.

The Ban also violates the Equal Protection Clause of the Fourteenth Amendment because it violates the fundamental right of young adults to keep and bear arms and fails to treat similarly situated individuals similarly. The Ban cannot survive strict scrutiny because it lacks sufficient tailoring. Nor can it survive rational basis review because it irrationally (i) prohibits acquisition of firearms only by those young adults not privileged enough to be gifted arms by family or friends, (ii) removes all firearm transfers to young adults from the NICS background check process, and (iii) bans from firearm purchase those same young adults Florida deems law-abiding and responsible enough to serve in the military and in law enforcement.

## ARGUMENT

### I. The Ban violates young adults' Second Amendment right to purchase firearms.

#### A. The Second Amendment protects young adults' right to purchase firearms.

In *Heller*, the Supreme Court established that the Second Amendment protects law-abiding, responsible citizens' right to keep and bear arms that are commonly used for lawful purposes. 554 U.S. at 625, 635. To establish the Second Amendment's scope, the Court analyzed the text of the Second Amendment as well

as the history and traditions of the right to keep and bear arms. *Id*. at 576–605. The text, history, and tradition of the Second Amendment are dispositive of its scope "because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right." *Id*. at 592. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Id*. at 634–35. Even the limitations on the right described by *Heller* and discussed *infra* 22–28 are anchored in "limitations [that are] fairly supported by the historical tradition." *Id*. 627.

This Court accordingly looks to the historical background of the Second Amendment to determine whether a law burdens individuals or activities protected by the Second Amendment. *See, e.g.*, *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1261 (11th Cir. 2012) ("*Heller* commands that, in passing on a Second Amendment claim, courts must read the challenged statute in light of the historical background of the Second Amendment."). For example, in *GeorgiaCarry*, this Court examined myriad historical sources to hold that "the pre-existing right codified in the Second Amendment does not include protection for a right to carry a firearm in a place of worship against the owner's wishes." *Id*. at 1264 (upholding state law barring unrestricted carrying of firearms in specific locations, including houses of worship, without the property owner's authorization). This Court focused its historical analysis on "the pre-existing right codified in the Second Amendment" at

the time the "Founding Fathers drafted [it]." *Id*. at 1264–65. This Court's focus on the Founding era was proper because ratification of the Bill of Rights is "the critical year for determining the amendment's historical meaning," even when analyzing a state law. *Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012) (citing *McDonald v. City of Chicago*, 561 U.S. 742, 765 & n.14 (2010)).

> **1. The Second Amendment's text, history, and tradition confirm that young adults have the right to purchase firearms.**

The Second Amendment's text guarantees young adults the right to keep and bear arms. The text contains no age restriction, even though the Founders used age restrictions elsewhere in the Constitution, such as imposing age thresholds on candidates for the House of Representatives (25); Const. art. I, § 2; the Senate (30), *id*. art. I, § 3; and President (35), *id*. art. II, § 1.

The Second Amendment's text is not silent in this regard; it expressly protects the right of "the people." The people referenced in the text encompass all law-abiding, responsible adults, including young adults. *Heller*, 554 U.S. at 580. On this point, the First and Fourth Amendments are instructive. Like the Second Amendment, both codify "the people" as the rightsholders. Like the Second Amendment, both codify a pre-existing, individual right. "The people" protected by the First Amendment (which serves as a guidepost for interpreting the Second Amendment, *id*. at 591, 595, 626) includes young adults. *See Tinker v. Des Moines*

*Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) (free speech); *see also W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (free exercise). So, "indisputabl[y]," does the Fourth Amendment. *See New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985).

"The people" protected by the Second Amendment are not a subset of "the people" protected by the First and Fourth Amendments. They are the same people:

> 'The people' seems to have been a term of art employed in select parts of the Constitution. Its uses suggest that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.

*Heller*, 554 U.S. at 580 (cleaned up) (quoting *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990)). *Heller* did not mention or even suggest that young adults are excluded from "the people" protected by the Second Amendment. To the contrary, *Heller* confirms that the Second Amendment protects the same "people" as the First and Fourth Amendments, which do not exclude young adults from their protections. 554 U.S. at 580.

Other constitutional rights without express age limits also protect young adults. The enumerated rights to due process and equal protection apply to young adults. *See, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 574 (1975) (due process); *Fisher v. Univ. of Texas at Austin*, 136 S. Ct. 2198, 2210 (2016) (equal protection). So do

substantive due process rights, such as the rights to marry, exercise sexual autonomy, raise children, and travel. *See Obergefell v. Hodges*, 576 U.S. 644, 675 (2015) (marry); *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (right to sexual autonomy for all but minors who by law may not offer consent); *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) (plurality) (raise children); *Kent v. Dulles*, 357 U.S. 116, 125–27 (1958) (travel); *cf. Hirschfeld*, 2021 WL 2934468, at *12 (noting that "[t]here are only two unenumerated rights states may restrict for those under a certain age: marriage and sex" but that every state allows those 18 and over to consent to sex and allows those 18 and over to marry though some states require parental consent). Even rights founded in a constitutional penumbra are not limited to adults over age 20. *See, e.g.*, *Bellotti v. Baird*, 443 U.S. 622, 641 n.21 (1979) (noting that previous Supreme Court precedent recognizing the right to an abortion involved "adult women" and not "minors who … range in age from children of 12 years to 17-year-old teenagers"). The Supreme Court's Eighth Amendment jurisprudence underscores that, where "a line must be drawn," "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood." *Roper v. Simmons*, 543 U.S. 551, 574 (2005).

Founding-era history and tradition confirm this textual understanding. At the time of the Founding, there were no regulations restricting young adults' ability to possess or purchase firearms. The District Court confirmed that there is "no case or

article suggesting that, during the Founding Era, any law existed that imposed restrictions on 18-to-20-year-olds' ability to purchase firearms." App. 200–01 (Order, at 13–14.) Further, "throughout the early nineteenth century, neither the states nor the federal government imposed any explicit restrictions on the purchase of firearms by 18-to-20-year-olds." App. 211 (Order, at 24.)

It has been argued that the Founders theoretically "would have supported limiting or banning 'the ownership of firearms by *minors*, felons, and the mentally impaired.'" *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 201 (5th Cir. 2012) ("*BATFE I*") (quoting Don B. Kates, *Second Amendment, in 4 Encyclopedia of the American Constitution* 1640 (Leonard W. Levy et al. eds., 1986)). But it is undisputed that neither the Founders, nor the federal government, nor any state or local government actually did so at the time.

Then, as now, the age of majority for keeping and bearing arms was 18. At the time of the Founding, the age of majority was not uniform but depended on the activity at issue. 1 Commentaries on the Laws of England 463–64 (1765); *see also id*. at 465 (noting the "different capacities which [individuals] assume at different ages"). The age at which individuals became eligible for militia service at the time of the Founding demonstrates the age of majority for the right to keep and bear arms because "the people, from whom the militia must be taken, shall have the right to keep and bear arms." *Heller*, 554 U.S. at 617 (quoting Thomas M. Cooley, *The*

*General Principles of Constitutional Law in the United States of America* 271 (1880)).

At the time of the Founding, 18-to-20-year-olds were permitted—indeed required—to be part of the militia and to arm themselves. "Every militia law near the time of ratification required 18-year-olds to be part of the militia and bring their own arms." *Hirschfeld*, 2021 WL 2934468, at *16, App. 1 & 2 (collecting authority). The first federal Militia Act in 1792 required "each and every free able-bodied white male citizen of the respective states, resident therein, who is or shall be of the age of eighteen years, and under the age of forty-five years (except as is herein after excepted) shall severally and respectively be enrolled in the militia" and "provide himself with a good musket or firelock, a sufficient bayonet, [and other arms and accessories]." Act of May 8, 1792, ch. 33, § 1, 1 Stat. 271, 271. The 1792 Act required militia members to arm themselves rather than receive arms from the government because of fears that the government could later disarm them. *See* 14 *Documentary History of the First Federal Congress: Debates in the House of Representatives, Third Session: December 1790–March 1791*, at 62 (1995). This Act was superseded by the Act of February 28, 1795, 1 Stat. 424, which kept the same substantive provisions but made permanent the President's authority to call the militia.

The age of majority remains 18 today for militia and other purposes. All males over the age of 17 and under the age of 45 are part of the militia. 10 U.S.C. § 246. At age 18, citizens are eligible to serve in the military, 10 U.S.C. § 505(a); be drafted, 50 U.S.C. § 3803(a); and vote, U.S. Const. amend. XXVI. In Florida, the age of majority is 18, which means an 18-to-20-year-old may serve on a jury, enter into contracts, sue and be sued, get married, and own property, all without parental consent. Fla. Stat. § 743.07. An 18-to-20-year-old may also be tried as an adult for all crimes, *id*. § 985.557, and obtain an abortion without parental consent, *id*. § 390.01114. *See also Roper*, 543 U.S. at 574 (recognizing the age of 18 as the dividing line between childhood and adulthood and concluding the age of 18 is the age at which the Constitution no longer prohibits the death penalty). Florida citizens 18 and older can enlist in the National Guard, 32 U.S.C. § 313, and those 19 and older may serve in a law enforcement capacity, Fla. Stat. § 943.13, both of which positions exempt them from the Ban. *Id*. § 790.065(13); App. 71 (Decl. of Expert Professor William English, ECF No. 108-4, ¶ 13 (noting the historical practice of conscripting 18-to-20-year-old adults and that 84% of United States Marine Corps enlistees are 20 or younger).)

In any event, while it is undisputed that militia members have Second Amendment rights, militia members are not the only individuals with Second Amendment rights. *Heller* expressly rejected this argument, making clear that militia

members are only "a subset of 'the people'—those who were male, able bodied, and within a certain age range." 554 U.S. at 580; *see also id*. at 612–13 (stating that right to keep and bear arms is not limited to "militia only") (quoting *Nunn v. State*, 1 Ga. 243, 251 (1846)). For this reason, the few states in the early-to-mid-nineteenth century that increased the age of compulsory militia service to 21 did not thereby limit the scope of the Second Amendment for the entire nation.

The history and tradition of the Second Amendment after the Founding also demonstrates that young adults have the right to keep and bear arms. No law prohibited those under the age of 21 from purchasing firearms until 1875. *Supra* 10 (a few states prohibited young adults from purchasing some arms, like pistols). Even in this less relevant time period nearly a century after ratification, *Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012), no state restricted young adults' purchase of long guns as Florida does now. *Supra* 11 (no state "ban[ned] the sale of long guns") (citing App. 211 (Order, at 24 n.22.))

      **2.  The Ban is not a presumptively lawful measure because it is not analogous to longstanding prohibitions on felons and the mentally ill and is not mere commercial regulation.**

*Heller* was clear that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635. To illustrate its holding, *Heller* provided examples of "presumptively lawful regulatory measures": "longstanding prohibitions on the possession of firearms by

felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 626–27 & n.26.[3] These regulatory measures are presumptively lawful because they are consistent with the historical understanding of the Second Amendment. *Id*. 626–27. For example, prohibitions on the possession of firearms by convicted felons are presumptively lawful because convicted felons have been adjudicated not to be law-abiding. *Id*.; *see also United States v. Focia*, 869 F.3d 1269, 1286 (11th Cir. 2017) ("These measures comport with the Second Amendment because they affect individuals or conduct unprotected by the right to keep and bear arms.").

The Ban is not analogous to longstanding prohibitions on the possession of firearms by convicted felons and individuals adjudicated to be mentally ill. This Court has twice interpreted *Heller*'s dicta in this context. In *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), this Court upheld a law banning convicted felons from acquiring firearms as presumptively lawful. *Id*. at 769, 771. This Court relied upon *Heller*'s dicta to hold that the Second Amendment right protects only "*law-abiding* and *qualified* individuals." *Id*. at 771 n.6 (emphasis in original). This Court

---

[3] *Heller* noted in a footnote that it "identif[ied] these presumptively lawful regulatory measures." *McDonald* then confirmed this by summarizing *Heller*'s dicta: "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures . . . . We repeat those assurances here." *McDonald v. City of Chicago*., 561 U.S. 742, 786 (2010).

concluded that, because he is a convicted felon, "Rozier's Second Amendment right to bear arms is not weighed in the same manner as that of a law-abiding citizen." *Id*. at 770–71.

In *United States v. White*, 593 F.3d 1199 (11th Cir. 2010), this Court upheld a law banning convicted domestic violence misdemeanants from acquiring firearms as presumptively lawful. *Id*. at 1205. Consistent with *Rozier*, *White*'s holding is premised on the fact that domestic violence misdemeanants, like convicted felons, have been adjudicated as not law-abiding: "[A] person convicted under § 922(g)(9) must have first acted violently toward a family member or domestic partner, a predicate demonstrated by his conviction for a misdemeanor crime of violence." *Id*. at 1206. This Court likened a domestic violence misdemeant to a convicted felon and upheld the prohibition. *Id*.

*Rozier* and *White* respect that law-abiding citizens come within the Second Amendment's scope unless and until convicted of a felony or, by analogy, domestic misdemeanor. Similarly, prohibitions on the mentally ill require the individual subject to the prohibition be adjudicated a danger to self or others by being adjudicated a mental defective or committed to a mental institution. *See Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 681 (6th Cir. 2016) (en banc) (analyzing 18 U.S.C. § 922(g)(4), which prohibits firearm possession by individuals "who

ha[ve] been adjudicated as a mental defective or who ha[ve] been committed to a mental institution").

The District Court, by contrast, narrowed the Second Amendment's scope to exclude law-abiding young adults because they are a "group[] thought to be especially dangerous with firearms," App. 223 (Order, at 36), which is an inference unsupported by the evidence. *Supra* 11–12. The District Court admitted this standard was "deeply unsatisfying." (*Id*. at 36 n.28.) It is unsatisfying because it is inconsistent with *Heller*'s central holding and dicta. Nothing in *Heller* or this Court's precedents support the notion that hundreds of thousands of law-abiding young adults in Florida may be categorically banned from purchasing firearms merely because those individuals happen to be in a group declared by the government to be—without individual adjudication—"especially dangerous with firearms." This stretches the analogy to the presumptively lawful prohibitions on felons and the mentally ill past the breaking point.

Not only does the District Court's holding have no support in *Heller* and *McDonald* or this Court's precedents, it is contrary to the text, history, and tradition of the Second Amendment and constitutional rights generally. No other constitutional right, including the Second Amendment, excludes young adults from its protections. *Supra* 18–20. Nor does any other fundamental right categorically exclude an entire group of law-abiding adults based on their demographic's

27

perceived characteristics. *Id*. The Second Amendment expressly protects the right of law-abiding, responsible adults—male or female, black or white, urban or rural, and young and old—to purchase firearms. *Id*. The right does not vanish for an entire group who share a single characteristic just because some people in that group might commit a crime.

Law-abiding, responsible young adults cannot be fairly analogized to convicted felons and the mentally ill because they have not been individually adjudicated to be non-law-abiding or irresponsible. Florida cannot deprive young adults from exercising their fundamental right to purchase a firearm on this basis, just as the state could not rely on demographic-based prejudices to curtail any other fundamental right. Subjugating the Second Amendment to such categorical judgments of a legislature relegates it to being "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," which *McDonald* squarely rejected. 561 U.S. at 780.

The Ban likewise is not a longstanding condition or qualification on the commercial sale of arms. This Court has distinguished a commercial regulation from a ban: whereas a ban "completely prohibit[s] [an individual] from selling or buying firearms," a commercial regulation "only minimally affects the ability to acquire a firearm." *Focia*, 869 F.3d at 1286. In *Focia*, this Court upheld a law prohibiting "the transfer of a firearm by an unlicensed person to any other unlicensed person who

28

resides in a different state" as a commercial regulation because the prohibition did not restrict plaintiff's ability to purchase a firearm in his home state. *Id*.

The Ban is a ban because it completely prohibits young adults from buying firearms: "A person younger than 21 years of age may not purchase a firearm." Fla. Stat. § 790.065(13). Under *Focia*, the Ban cannot be considered a commercial regulation because it eliminates all avenues for young adults to legally purchase any firearms. If the wholesale prohibition of the right to purchase firearms by a group of otherwise qualified citizens were permissible, it would effectively eviscerate *Heller*'s holding. *Heller*, 554 U.S. at 592, 628–30; *see also United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) (observing a law "prohibiting the commercial sale of firearms" "would be untenable under *Heller*"). The Ban is not a presumptively lawful commercial regulation.

Nor is the Ban presumptively lawful because a small minority of states in the late nineteenth century and early twentieth centuries prohibited those under the age of 21 from purchasing certain arms (none banned purchasing long guns, as the Ban does). To be presumptively lawful, the Ban must be **both** longstanding **and** analogous to prohibitions on felons and the mentally ill referenced in *Heller*; "longstanding" is not its own categorical exception to the right to keep and bear arms. *See Hirschfeld*, 2021 WL 2934468, at *7 ("We do not, however, read the word 'longstanding' in *Heller* as a standalone exception to the Second Amendment.").

29

Rather, "longstanding" modifies the prohibitions on felons and the mentally ill. *Id*. Restrictions on Second Amendment rights that are longstanding are not necessarily constitutional. *Id*.

### 3. The Ban is not lawful even if it is analogous to one of the presumptively lawful measures in *Heller*'s dicta.

Even if this Court holds that the Ban is presumptively lawful, it should consider whether Appellants have rebutted this presumption. This Court has not held that this presumption cannot be rebutted. While upholding the constitutionality of the federal ban of firearm possession by convicted felons, *Rozier* stated that *Heller*'s dicta allows for "statutes disqualifying felons from possessing a firearm under any and all circumstances." 598 F.3d at 771. This Court has not, however, held that all presumptively lawful regulatory measures can never be rebutted. *See id*.; *see also White*, 593 F.3d at 1206 (not analyzing whether presumption was rebutted or could be rebutted); *Flick v. Att'y Gen.,* 812 F. App'x 974, 975 (11th Cir. 2020) (same).

Although expressing "grave doubts" about the result, App. 233 (Order, at 46), the District Court construed this Court's silence on the availability of rebuttal to be an affirmative rejection of it, requiring rejection of Appellants' rebuttal, App. 228–29 (Order, at 41–42.) Though most challenges to presumptively lawful regulatory measures are as-applied challenges, as in *Rozier*, *White*, and *Flick*, no federal circuit

court holds that the presumption can **never** be rebutted. To the contrary, all circuit courts considering the issue have held that the presumption can be rebutted.[4]

For the reasons already demonstrated, Appellants have rebutted the presumption that the Ban is lawful. The Ban categorically prevents an arbitrarily defined group of law-abiding, responsible citizens from exercising their Second Amendment right to purchase a firearm without any individual adjudication. Such a sweeping violation of so many individuals' Second Amendment right cannot be held lawful.

### B. The Ban violates the Second Amendment.

#### 1. The Ban is unconstitutional under *Heller*'s text, history, and tradition standard because it bans law-abiding, responsible citizens from acquiring firearms.

*Heller* did more than establish who and what the Second Amendment protects. It established a standard for determining the constitutionality of laws burdening the Second Amendment right: only laws that are consistent with the Second Amendment's text, history, and tradition may be upheld. *Heller*, 554 U.S. at 629.

---

[4] *See, e.g.*, *BATFE I*, 700 F.3d at 196 (5th Cir. 2012); *accord*, *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011) *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 257 n.73 (2d Cir. 2015); *Binderup v. Att'y Gen. U.S. of Am.*, 836 F.3d 336, 350–51 (3d Cir. 2016) (en banc) (plurality opinion); *Hirschfeld*, 2021 WL 2934468, at *8 n.9; *Tyler*, 837 F.3d at 687; *United States v. Skoien*, 614 F.3d 638, 639 (7th Cir. 2010) (en banc); *United States v. Hughley*, 691 F. App'x 278, 279 (8th Cir. 2017); *Heller v. District of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) ("*Heller II*").

Conversely, laws that are inconsistent with the Second Amendment's text, history, and tradition must be struck down. *Id*.

When the challenged law is inconsistent with the text, history, and tradition, as here, it is unconstitutional per se and is a policy choice that is "off the table." *Id*. at 636. No interest balancing or scrutiny analysis is necessary or permissible. *Id*. at 634 (rejecting dissenting Justice Breyer's proposed "judge-empowering 'interest-balancing inquiry'" and stating "[we] know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest balancing' approach"); *see also McDonald*, 561 U.S. at 790–91 (rejecting assessments of "the costs and benefits of firearms restrictions" and noting that, in *Heller*, while Justice Breyer "recommended an interest-balancing test, the Court specifically rejected that suggestion"). Justices Gorsuch, Kavanaugh, and Barrett, who joined the Supreme Court after *Heller* and *McDonald*, have expressed their agreement with *Heller*'s standard. *See New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1527, 1541 (2020) (Justice Gorsuch joining Section IV.A of Justice Alito's dissent, which would have held a city ordinance unconstitutional under *Heller*'s text, history, and tradition analysis); *id*. at 1527 (Kavanaugh, J., concurring) (citing *Heller II*, 670 F.3d at 1271 (Kavanaugh, J., dissenting) ("In my view, *Heller* and *McDonald* leave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate

scrutiny.")); *Kanter v. Barr*, 919 F.3d 437, 464–65 (7th Cir. 2019) (Barrett, J., dissenting) (analyzing history and tradition to conclude that the government may not categorically disarm non-violent felons).

At issue in *Heller* was a District of Columbia law that banned law-abiding, responsible citizens from possessing handguns. In analyzing the constitutionality of the District's ban, the Court examined whether a ban on protected conduct (there, handgun possession) was consistent with the Second Amendment's text, history, and tradition. The Court found little historical support for such a ban. *Id*. at 629 ("Few laws in the history of our Nation have come close to the severe restriction of the District's handgun ban."); *see also id*. at 683–87 (Breyer, J., dissenting) (discussing historical evidence consistent with the handgun ban). The Court therefore struck the ban as unconstitutional, holding that a ban on protected conduct is so clearly unconstitutional that the Court need not resort to applying any further standard of review. *Id*. at 636. Bans on conduct protected by the Second Amendment are unconstitutional per se. *Id.*

The Ban is materially indistinguishable from the ban at issue in *Heller*. The District banned all law-abiding, responsible citizens from possessing a handgun. Florida bans all law-abiding, responsible young adults from purchasing any firearm, including handguns. It is immaterial that Florida bans purchasing (and not possessing) because the ability to acquire firearms through purchase necessarily is

included in the right to possess. *See, e.g.*, *Hirschfeld*, 2021 WL 2934468, at *11;

*Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 200 (4th Cir. 2020) (holding that

a FFL has standing to bring a Second Amendment claim on behalf of its customers'

right to purchase firearms); *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th

Cir. 2017) (en banc) ("[T]he Second Amendment protects ancillary rights necessary

to the realization of the core right to possess a firearm for self-defense"); *id*. at 682

("Commerce in firearms is a necessary prerequisite to keeping and possessing arms

for self-defense . . . ."); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011).[5]

Allowing some young adults to acquire a firearm by gift cannot save the Ban

because a law need not violate the entire scope of the Second Amendment right to

be unconstitutional. *See Planned Parenthood of Se. PA v. Casey*, 505 U.S. 833, 894

(1992) (plurality op.) ("The proper focus of constitutional inquiry is the group for

whom the law is a restriction, not the group for whom the law is irrelevant."). Just

as the Ban prohibits purchasing by young adults, the ban at issue in *Heller* banned

possession of only one class of firearms. *Heller*, 554 U.S. at 629 ("It is no answer to

say, as petitioners do, that it is permissible to ban the possession of handguns so long

---

[5] *See also Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 930 (N.D. Ill. 2014) ("[T]he right to keep and bear arms for self-defense under the Second Amendment . . . must also include the right to acquire a firearm."); *Elhert v. Settle*, CL20000582, Circuit Court for the City of Lynchburg, 3–4 (24th Va. Cir., July 14, 2020) (overturning a restriction on private purchases of handguns by 18-to-20-year-olds because "[t]he lack of a right to buy and sell arms would negate the right to keep arms . . .").

as the possession of other firearms (i.e., long guns) is allowed. . . . a complete prohibition of [handguns] is invalid."). It is impermissible to ban firearm purchase by law-abiding, responsible young adults even if some lucky few of them are allowed to acquire firearms by gift.

Like in *Heller*, Florida bans what the Second Amendment protects: the right of young adults to purchase a firearm. Like in *Heller*, there is insufficient historical support for the Ban. *Supra* 33. Like in *Heller*, the Ban is unconstitutional per se.

> **2. The Ban fails heightened scrutiny because it burdens the Second Amendment and is not sufficiently related or appropriately tailored to its purpose.**

Should the Court disagree that *Heller*'s text, history, and tradition analysis controls, it should hold that the Ban burdens the Second Amendment right and does not satisfy heightened scrutiny. The Ban burdens the Second Amendment for all the reasons it is unconstitutional per se, and the Court should proceed to the second step of this Court's two step approach. The Ban should be struck because it significantly burdens protected conduct and is not sufficiently related to its purpose or appropriately tailored.

Under step two of this Court's analysis, the Court determines "what level of scrutiny to apply." *GeorgiaCarry*, 687 F.3d at 1260 n.34. Because this Court has not yet analyzed a law that burdens the Second Amendment, and has not been faced with a total ban on the purchase of firearms by an entire age group of law-abiding,

responsible adults, it has not articulated what level of scrutiny applies to that type of burden.

The level of scrutiny should be of little consequence in this case because "a law that imposes such a severe restriction on the fundamental right of self defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny." *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016). The Ban is a "blunt instrument" that destroys the right to purchase a firearm. *See* App. 230, 232 (Order, at 43, 45.) It therefore fails under any level of scrutiny.

In any event, laws burdening the Second Amendment's core right of self-defense warrant strict scrutiny. *See, e.g.*, *Heller II*, 670 F.3d at 1257 ("[A] regulation that imposes a substantial burden upon the core right of self-defense protected by the Second Amendment must have a strong justification, whereas a regulation that imposes a less substantial burden should be proportionately easier to justify."). The core right certainly includes a law-abiding citizen's right to possess a firearm for use in the home for self-defense. *Heller*, 554 U.S. at 635 ("Whatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."). And the right to possess necessarily includes the right to purchase, without which the right to possess may become meaningless. *Supra* 33–34.

As the District Court correctly held, the Ban burdens this right by categorically prohibiting young adults from purchasing firearms. App. 232–33 (Order, at 45–46.) The Ban "functions as a total ban" on firearm acquisition (and therefore possession) for the young adults who are likely to "actually need firearms to defend themselves," including those who "are likely independent, likely to live in dangerous neighborhoods, and likely to have families and children of their own." (*Id*.) The Ban deprives "the 20-year-old single mother living on her own" the right to acquire a firearm to defend herself, her family, and her home. (*Id*.) Strict scrutiny is the only appropriate level of heightened scrutiny review here.

Strict scrutiny is an extremely demanding standard. *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001). To satisfy strict scrutiny, Appellee must establish that the challenged law is narrowly tailored to promote a compelling government interest. *See GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1328 (11th Cir. 2015) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010)). To be narrowly tailored in the context of strict scrutiny, the law must employ the least restrictive means to achieve the interest. *See United States v. Playboy Ent. Grp., Inc*., 529 U.S. 803, 813 (2000); *Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1251 (11th Cir. 2004) (citations omitted).

The Ban cannot survive strict scrutiny because it is not the least restrictive means to achieve a compelling interest. While Florida has an interest in promoting

public safety, particularly in schools, it cannot show that the Ban is the least restrictive means to advance that interest. No law that categorically bans law-abiding, responsible adults from purchasing protected arms could be. *Cf. Heller*, 554 U.S. at 629, 634–35 (noting that violence involving handgun use by criminals was a significant issue but rejecting the argument that it could justify a ban on the exercise of Second Amendment rights). The Ban infringes all young adults' right to purchase any firearm, even for self-defense in the home. The Ban does not just limit the right, it destroys the right except for those privileged few with access to firearms from their families. It is necessarily not the least restrictive alternative to achieve a compelling interest.

Appellee failed to meet his "burden to demonstrate that there are no other less restrictive means by which to protect its interests." *Ray v. Comm'r, Ala. Dep't of Corr.*, 915 F.3d 689, 699 (11th Cir. 2019); *see also Playboy*, 529 U.S. at 813 ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."). There is no evidence in the record to suggest that the Florida legislature considered any alternatives to a total ban or attempted in any way to narrowly tailor the law. This Court is clear that Appellee "cannot simply rely on the unexplained ipse dixit of the state that there are no less restrictive means" to achieve even a compelling interest. *Ray*, 915 F.3d at 699. No record evidence exists that the Ban is the least restrictive means to achieve Florida's interests.

The Ban also fails intermediate scrutiny, which demands a law be "narrowly tailored to serve a significant governmental interest." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017). Appellee bears the burden of establishing that Florida's law is "closely drawn to avoid unnecessary abridgment" of constitutional rights. *McCutcheon v. FEC*, 572 U.S. 185, 218 (2014) (plurality op.); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 782–83 (1989). Relying on *McCutcheon*, the Supreme Court reiterated in *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021), that "[a] substantial relation is necessary but not sufficient" to justify a law that burdens constitutional rights. *Id.* at 2384. "[A] reasonable assessment of the burdens imposed" by a law "should begin with an understanding of the extent to which the burdens are unnecessary," an inquiry that "requires narrow tailoring." *Id.* at 2385. While the state need not adopt the "least restrictive means," its means must be "narrowly tailored to [its] asserted interest." *Id.* at 2383.

The Court should not afford Florida any deference when assessing the fit between its purported interests and the means selected to advance them. *See Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 213–14 (1997). Appellee must prove that those means in fact do not burden the right "substantially more" than "necessary to further [its important] interest." *Id.* at 214. Appellee must also demonstrate that the "restriction will in fact alleviate" its concerns. *Lorillard Tobacco Co. v. Reilly*, 533

U.S. 525, 555 (2001). Appellee cannot "get away with shoddy data or reasoning." *City of Los Angeles v. Alameda Books, Inc*., 535 U.S. 425, 438 (2002) (plurality op.). For instance, Appellee cannot rely on "mere speculation or conjecture." *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). Instead, Appellee must present evidence that the restriction will actually further Florida's stated interests. *Id*.

As a matter of law, Appellee's reliance on statistical evidence that a broad demographic group commits a disproportionate amount of bad conduct cannot justify categorical restrictions on the rights of that group. *See, e.g*., *Ashcroft v. Free Speech Coal*., 535 U.S. 234, 251–52 (2002). "[A] free society prefers to punish the few who abuse [their] rights . . . after they break the law than to throttle them and all others beforehand." *Se. Promotions Ltd. v. Conrad*, 420 U.S. 546, 559 (1975). "The rights of more than 99% of a group cannot be restricted because a fraction of 1% commit a disproportionate amount of violent crime." *Hirschfeld*, 2021 WL 2934468, at *32.

*Craig v. Boren*, 429 U.S. 190 (1976) illustrates this point. There, Oklahoma defended its ban on selling beer to males (but not females) under the age of 21 by presenting evidence that young adult males were ten times as likely as young adult females to be arrested for, killed by, and injured by drunk driving. *Id*. at 200–01. The evidence demonstrated that 0.18% of females compared to 2% of males had been arrested for drunk driving. *Id*. at 201. The Court held that this evidence was not

enough to satisfy intermediate scrutiny: "[I]f maleness is to serve as a proxy for drinking and driving, a correlation of 2% must be considered an unduly tenuous 'fit.'" *Id*. at 201–02.

Young adults purchasing firearms are an even worse proxy for gun violence than "maleness" is for drinking and driving. There is no evidence linking young adults' ability to purchase firearms and their committing gun crimes. To the contrary, more than 98% of the young adults who are subject to the Ban will never commit a violent crime, with or without a gun. App. 148 (Kleck Decl., ECF No. 108-6 ¶ 7.) Accordingly, it stands to reason that fewer than 2% of all young adults will commit a gun crime. The Ban's prohibition on purchasing long guns is an even worse proxy. Long guns are rarely used in crime; they are implicated in only 14.5% of gun crime and fewer than 7.5% of homicides. App.73–74. (English Decl., ECF No. 108-4 ¶ 8.)

Moreover, just as Oklahoma failed to connect sales of low-alcohol beer and drunk driving, Appellee failed to connect firearm sales—as opposed to the many other legal and illegal means to obtain a firearm—and crimes committed by young adults. Appellee's failure is not surprising. Approximately 90% of firearms used in crime are obtained through illegal means, not through regulated sales involving background checks. App. 73–74 (English Decl., ECF No. 108-4, ¶ 8.) Statistical evidence strongly confirms that "[a]ge-based restrictions on purchase and possession of firearms . . . have no detectable crime-reducing effect." App. 149 (Kleck Decl.,

ECF No. 108-6, ¶ 11); *see also* App. 73–74 (English Decl., ECF No. 108-4, ¶ 8); *see also* Gary Kleck, *Regulating Guns Among Young Adults*, Am. J. of Crim. Just. 44:689–704, 699 ("The federal ban on 18–20-year-olds purchasing handguns from licensed dealers . . . does not appear to have reduced the 18–20-year-old share of violent crime . . . . [T]he ban was apparently ineffective in reducing criminal violence.").

The Fourth Circuit examined the data regarding young adults and firearm crime and concluded that "an exceedingly small percentage, around 0.3% and definitely less than 1%, of the 13 million young adults in this group commit [violent] crimes. This alone cannot justify restricting the entire group's rights." *Hirschfeld*, 2021 WL 2934468, at *31 (collecting data). Young adults are overwhelmingly law-abiding, responsible citizens.

In *BATFE I*, the Fifth Circuit upheld under intermediate scrutiny a federal law that prohibits FFLs from selling handguns to those under the age of 21. 700 F.3d at 204. *BATFE I* is in direct conflict with *Hirschfeld*, which held that the law violates the Second Amendment under intermediate scrutiny. 2021 WL 2934468, at *23 ("Eighteen- to twenty-year-olds have Second Amendment rights, and the challenged laws impermissibly burden those rights."). That conflict and the courts' decisions to apply intermediate scrutiny are beside the point here because the Ban is far more restrictive than the federal law at issue in *BATFE I* and *Hirschfeld*. Whereas the

federal law prohibits FFLs from selling handguns to those under the age of 21, the Ban bans all young adults from purchasing **any** firearm from **any** seller. *BATFE I* upheld the restriction on handgun sales by FFLs because private handgun sales and all types of long gun sales were permitted. 700 F.3d at 190–91, 211.

The Ban's lack of tailoring demonstrates that it is ill-suited for its stated purpose. As the District Court observed: the Ban is a "blunt instrument," App. 230 (Order, at 43), that "will have little impact on many, if not most, 18-to-20-year-old Floridians. In short, then, it is not clear how much the Act does to prevent tragedies like the one at Marjory Stoneman Douglas High School," App. 232 (Order, at 45.)

The Ban prohibits the exercise of an ancillary right necessary to the realization of the core right to possess a firearm for self-defense. It therefore triggers strict scrutiny. But in any event, Florida's categorical ban on young adults' right to purchase—enacted without any tailoring or evidence that it will accomplish its purpose—cannot satisfy any level of scrutiny.

## II. The Ban violates young adults' Fourteenth Amendment right to equal protection of the law because it fails both strict scrutiny and even rational basis review.

"The Equal Protection Clause requires that the government treat similarly situated persons in a similar manner. If a fundamental right or a suspect class is involved, the court reviews the classification under strict scrutiny." *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002) (holding legislative

43

classifications that interfere with the exercise of a fundamental right demand strict scrutiny) (citations omitted). For the reasons detailed on pages 14–32, the Ban involves the fundamental right to keep and bear arms. Strict scrutiny is required and, for the reasons detailed on pages 33–35, the Ban fails strict scrutiny.

The Ban cannot survive even rational basis review, which requires "the classification drawn by the statute [be] rationally related to a legitimate state interest." *Gary*, 311 F.3d at 1339. The Ban is internally inconsistent. It categorically prohibits all young adults from purchasing firearms—implicitly declaring all young adults untrustworthy with firearms—while simultaneously allowing young adults to possess and acquire firearms through non-purchases. The legislature discriminates between young adults privileged enough to be gifted or loaned a firearm from those not so privileged. The former are somehow fit for firearm ownership while the latter are not. This distinction irrationally and unfairly burdens the unprivileged young adults who do not have access to firearms through family members. As the District Court noted:

> [I]t is likely that these particular 18-to-20-year-olds are the ones who actually need firearms to defend themselves: they are likely independent, likely to live in dangerous neighborhoods, and likely to have families and children of their own. Why should the 20-year-old single mother living on her own be unable to obtain a firearm for self-defense when a 20-year-old living with their parents can easily obtain one?

App. 232–33 (Order, at 45–46.) The District Court did not answer its question. *Id*. The record does not provide an answer either.

Furthermore, the Ban removes **all** firearm transfers to young adults from the NICS background check process, making it impossible to determine if a young adult acquiring a firearm would be prohibited from doing so on some other basis, such as a felony conviction or adjudication of mental illness. How this approach could possibly improve public safety is not addressed by Appellee, and it is irrational on its face.

State law demonstrates the irrationality of the Ban. Florida law allows young adults—those it categorically deems unlawful and irresponsible—to serve in the military and in law enforcement. *Supra* 23. It also allows young adults to serve on a jury, enter into contracts, sue and be sued, get married, and own property. *Id*. Florida at once deems young adults to be law-abiding and responsible enough to enforce the law but not law-abiding and responsible enough to be trusted to follow it. As the Fourth Circuit stated:

> The irony does not escape us that, under the government's reasoning, the same 18-to 20-year-old men and women we depend on to protect us in the armed forces and who have since our Founding been trusted with the most sophisticated weaponry should nonetheless be prevented from purchasing a handgun from a federally licensed dealer for their own protection at home.

*Hirschfeld*, 2021 WL 2934468, at *33 (not analyzing equal protection claim). The Ban goes even further than the ban at issue in *Hirschfeld* (which only prohibited

FFLs from selling handguns to young adults) by irrationally prohibiting all types of purchases of all kinds of firearms by all young adults. The tenuous connection between this "blunt instrument" and its stated purposes cannot overcome its irrational consequences.

## CONCLUSION

For the reasons stated above, Appellee failed to meet his burden that the Ban satisfies both the Second and Fourteenth Amendments to the United States Constitution. The undisputed facts demonstrate it does not. Accordingly, Appellants respectfully request that this Court **reverse** the judgment of the District Court and **remand** the case with instructions to enter judgment for Appellants.

Dated: August 18, 2021            Respectfully submitted,


                                  */s/ John Parker Sweeney*
                                  John Parker Sweeney
                                  James W. Porter, III
                                  Marc A. Nardone
                                  Connor M. Blair (*Pro Hac Vice pending*)
                                  BRADLEY ARANT BOULT CUMMINGS LLP
                                  1615 L Street, NW
                                  Washington, DC 20036
                                  Telephone: (202) 393-7150
                                  Fax: (202) 347-1684
                                  jsweeney@bradley.com

                                  *Counsel for Appellants*

46

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies that this Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 10,947 words, exempting those portions excludes by Rule 32(f). The undersigned counsel also certifies that this Brief complies with the typeface and type-style requirements of Eleventh Circuit Rule 32 and Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: August 18, 2021                    Respectfully submitted,

                                          */s/ John Parker Sweeney*
                                          John Parker Sweeney
                                          *Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2021, I filed the foregoing with the Clerk of the Court via CM/ECF, which will electronically serve all counsel of record. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: August 18, 2021

Respectfully submitted,

*/s/ John Parker Sweeney*
John Parker Sweeney
*Counsel for Appellants*