# In the United States Court of Appeals for the Eleventh Circuit

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ET AL.,

*Appellants*,

v.

RICHARD SWEARINGEN, IN HIS OFFICIAL CAPACITY AS
COMMISSIONER OF THE FLORIDA DEPARTMENT OF LAW ENFORCEMENT,

*Appellee*.

## APPELLEE'S BRIEF

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
NO. 4:18-CV-137

ASHLEY MOODY
ATTORNEY GENERAL

HENRY C. WHITAKER
*Solicitor General*
DANIEL W. BELL
*Chief Deputy Solicitor General*
CHRISTOPHER J. BAUM, B.C.S.
*Senior Deputy Solicitor General*
Office of the Attorney General
1 SE 3rd Avenue
Miami, FL 33131
(978) 460-1314; (850) 410-2672 (fax)
*christopher.baum@myfloridalegal.com*
*Counsel for Defendant/Appellee*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Counsel for Richard Swearingen, in his official capacity as Commissioner of the Florida Department of Law Enforcement, certifies that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3.:

1. Baum, Christopher J., *Counsel for Defendant/Appellee*

2. Bell, Daniel, *Counsel for Defendant/Appellee*

3. Blair, Connor M., *Counsel for Plaintiffs/Appellants*

4. Bradley Arant Boult Cummings LLP, *Counsel for Plaintiffs/Appellants*

5. Fant, Radford, *Plaintiff/Appellant*

6. Fitzpatrick, Hon. Martin A., *United States Magistrate Judge*

7. Florida Attorney General's Office

8. Florida Department of Law Enforcement

9. Golembiewski, Kevin, *Counsel for Defendant/Appellee*

10. Nardone, Marc A., *Counsel for Plaintiffs/Appellants*

11. National Rifle Association of America, Inc., *Plaintiff/Appellant*

12. Newhall, Timothy, *Counsel for Defendant/Appellee*

13. Percival, James H., *Counsel for Defendant/Appellee*

14. Porter, James W., *Counsel for Plaintiffs/Appellants*

15.     Swearingen, Richard, in his official capacity as Commissioner of the Florida Department of Law Enforcement, *Defendant/Appellee*

16.     Sweeney, John Parker, *Counsel for Plaintiffs/Appellants*

17.     Teegen, Elizabeth, *Counsel for Defendant/Appellee*

18.     Walker, Hon. Mark E., *United States District Judge*

19.     Whitaker, Henry, *Counsel for Defendant/Appellee*

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

**STATEMENT REGARDING ORAL ARGUMENT**

Appellee agrees with Appellants that oral argument would aid the Court in deciding this case, which presents an important constitutional question.

# TABLE OF CONTENTS

**Page(s)**

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF CONTENTS .............................................................. ii

TABLE OF CITATIONS ............................................................. iii

STATEMENT OF JURISDICTION ......................................................1

STATEMENT OF THE ISSUES .......................................................1

STATEMENT OF THE CASE .........................................................1

    I.    BACKGROUND.................................................................1

    II.   STANDARD OF REVIEW .......................................................6

SUMMARY OF THE ARGUMENT ..................................................6

ARGUMENT ........................................................................9

    I.    THE COURT SHOULD AFFIRM THE DISTRICT COURT'S RULING THAT
           SECTION 790.065(13) DOES NOT BURDEN CONDUCT PROTECTED BY THE
           SECOND AMENDMENT...................................................9

          A.   Section 790.065(13) is a longstanding regulation that is consistent
               with the Second Amendment. ...................................10

          B.   Section 790.065(13) is analogous to other firearms regulations
               courts have concluded are consistent with the Second
               Amendment. ................................................18

          C.   If the Court concludes that Section 790.065(13) burdens conduct
               protected by the Second Amendment, it should remand for the
               district court to analyze Appellants' claims under step two........22

    II.   APPELLANTS' EQUAL PROTECTION CLAIM FAILS BECAUSE SECTION
           790.065(13) PASSES RATIONAL BASIS REVIEW. ....................24

CERTIFICATE OF COMPLIANCE ...................................................29

CERTIFICATE OF SERVICE........................................................30

# TABLE OF CITATIONS

**Page(s)**

<u>**Cases**</u>

*Bartholomew v. AGL Resources, Inc.*,
   361 F.3d 1333 (11th Cir. 2004)................................................................23, 24

*Biffer v. City of Chicago*,
   116 N.E. 182 (Ill. 1917) ........................................................................16

*Callahan v. U.S. Dep't of Health & Hum. Servs.*,
   939 F.3d 1251 (11th Cir. 2019)..............................................................22, 23

*Carter v. City of Melbourne*,
   731 F.3d 1161 (11th Cir. 2013).................................................................6

**\*District of Columbia v. Heller*,
   554 U.S. 570 (2008) .......................................................................passim

*Drake v. Filko*,
   724 F.3d 426 (3d Cir. 2013)....................................................................18

*FCC v. Beach Commc'ns, Inc.*,
   508 U.S. 307 (1993) ..........................................................................25

*Flick v. Att'y Gen.*,
   812 F. App'x 974 (11th Cir. 2020) ..........................................................5, 21

*Fyock v. Sunnyvale*,
   779 F.3d 991 (9th Cir. 2015)..................................................................11

*GeorgiaCarry.Org, Inc. v. Georgia*,
   687 F.3d 1244 (11th Cir. 2012)................................................................3, 9

*GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*,
   788 F.3d 1318 (11th Cir. 2015).................................................................9

*Heller v. District of Columbia*,
   670 F.3d 1244 (D.C. Cir. 2011) .............................................................18, 19

*Hirschfeld v. BATFE*,
   5 F.4th 407 (4th Cir. 2021)......................................................................7

*Horsley v. Trame*,
   808 F.3d 1126 (7th Cir. 2015).................................................................26

*In re J.M.*,
   144 So. 3d 853 (La. 2014).....................................................................18

*Jones v. Becerra*,
   498 F. Supp. 3d 1317 (S.D. Cal. 2020) ...............................................................18

*Khoury v. Miami-Dade Cty. Sch. Bd.*,
   4 F.4th 1118 (11th Cir. 2021)...............................................................................6

*Kimel v. Fla. Bd. of Regents*,
   528 U.S. 62 (2000) ..............................................................................24, 25, 26

*Lara v. Evanchick*,
   No. 2:20-cv-1582, --- F. Supp. 3d. ---,
   2021 WL 1432802 (W.D. Penn. Apr. 16, 2021) ................................................18

*Leib v. Hillsborough Cty. Pub. Transp. Comm'n*,
   558 F.3d 1301 (11th Cir. 2009).........................................................................24

*Mai v. United States*,
   974 F.3d 1082 (9th Cir. 2020).........................................................................12

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ...........................................................................................4

*McGowan v. Maryland*,
   366 U.S. 420 (1961) ...................................................................................24, 27

*Mitchell v. Atkins*,
   483 F. Supp. 3d 985 (W.D. Wash. 2020)...........................................................18

*\*NRA v. BATFE*,
   700 F.3d 185 (5th Cir. 2012)......................................................................passim

*NRA v. McCraw*,
   719 F.3d 338 (5th Cir. 2013)..............................................................................18

*Parman v. Lemmon*,
   244 P. 227 (Kan. 1925) ....................................................................................16

*People v. Mosley*,
   33 N.E. 3d 137 (Ill. 2015) .................................................................................18

*Powell v. Tompkins*,
   926 F. Supp. 2d 367 (D. Mass. 2013) .........................................................12, 14

*State v. Callicutt*,
   69 Tenn. 714 (1878)..........................................................................................16

*U.S. R.R. Ret. Bd. v. Fritz*,
   449 U.S. 166 (1980) ..........................................................................................25

*United States v. Bolatete*,
977 F.3d 1022 (11th Cir. 2020)............................................................9

*United States v. Booker*,
644 F.3d 12 (1st Cir. 2011) ...............................................................11

*United States v. Dugan*,
657 F.3d 998 (9th Cir. 2011) ............................................................19

*\*United States v. Focia*,
869 F.3d 1269 (11th Cir. 2017)...............................................5, 9, 21

*United States v. Marzzarella*,
614 F.3d 85 (3d Cir. 2010) ...............................................................10

*United States v. Rene E.*,
583 F.3d 8 (1st Cir. 2009) ..........................................7, 13, 18, 19

*\*United States v. Rozier*,
598 F.3d 768 (11th Cir. 2010) .......................................................5, 21

*United States v. Seay*,
620 F.3d 919 (8th Cir. 2010)............................................................19

*United States v. Skoien*,
614 F.3d 638 (7th Cir. 2010)......................................................11, 12

*\*United States v. White*,
593 F.3d 1199 (11th Cir. 2010)........................................5, 19, 20, 21

## **Statutes**

§ 2, 1856 Tenn. Acts 92 .......................................................................13

§ 2, 1881 Ill. Laws 73...........................................................................13

§ 790.06, Fla. Stat.................................................................................17

§ 790.065, Fla. Stat.........................................................................passim

1 Stat. 271, § 1, Militia Act ..................................................................14

18 U.S.C. § 922 .........................................................................16, 17, 22

2 WILLIAM T. DORTCH, JOHN MANNING, JOHN S. HENDERSON, THE CODE OF NORTH
CAROLINA § 3168 (1883) ..................................................................15

28 U.S.C. § 1291 .....................................................................................1

28 U.S.C. § 1331 .....................................................................................1

An Act for regulating, governing, and training the Militia of this Commonwealth, ch. CVII, § 28, 1810 Mass. Laws 151 .................................................................15

An Act for the forming, arranging and regulating the militia, 2 NEW HAMPSHIRE LAWS ENACTED SINCE JUNE 1, 1815 51 (1824) ..................................................15

An Act For the Organization, Discipline, and Regulation of the Militia of the Commonwealth of Pennsylvania, No. 211, § 1, 1864 Pa. Laws 221 ...................15

An Act for the Regulation of the Militia of the Commonwealth of Pennsylvania, ch. MDCXCVI, §§ I-II (1793) ...........................................................................14

An Act for the reorganization of the military forces of the State of Michigan, tit. VII, ch. XIII, § 6, JAMES S. DEWEY, ED., 1 THE COMPILED LAWS OF THE STATE OF MICHIGAN 317 (1872) ..................................................................................15

An Act to establish an Uniform Militia throughout this State, ch. XLIX, §§ 1-2, 4 (Del. 1807) ...........................................................................................14

An Act to exempt minors from Militia Duty in time of peace (N.J. 1829) .............14

An Act to organise, govern, and discipline the Militia, art. IV, § 22, 2 LAWS OF A PUBLIC AND GENERAL NATURE OF THE STATE OF MISSOURI 512 (1842).............15

An Act to organize, govern, and discipline the Militia of this State, ch. CLXIV, § 34, 1821 Me. Laws 687 .............................................................................15

An Act to organize, govern, and discipline the Militia, ch. I, § 24, 1825 Mo. Laws 533 ...........................................................................................................15

An Act to regulate the Militia, § 2, 1843 Ohio Acts 53 .........................................14

An Act, for regulating and governing the militia of this State, ch. LXXXI, No. 1, § 15, 2 LAWS OF THE STATE OF VERMONT DIGESTED AND COMPILED 122 (1808) ..15

Ch. 135, § 1, 1882 W. Va. Acts 421......................................................................13

Ch. 155, § 1, 1897 Tex. Gen. Laws 221 ................................................................13

Ch. 159, §5, 27 Stat. 116 (1892) ..........................................................................13

Ch. 2018-3, § 2, Laws of Fla.....................................................................................2

Ch. 329, §§ 1-2, 1883 Wis. Laws 290....................................................................13

Ch. 424, § 2, 1882 Md. Laws 656 ..........................................................................13

Ch. 51, § 1, 1885 Nev. Stat. 51 .............................................................................13

Ch. 514, § 1, 1893 N.C. Pub. L. & Res. 468 ..........................................................13

Ch. 548, § 1, 16 Del. Laws 716 (1881) ..................................................................13

Ch. 66, §§ 1-2, 1878 Miss. Laws 175........................................13

Ch. 78, § 1, 1884 Iowa Acts And Resolutions 86 ....................13

Ch. CV, §§ 1-2, 1883 Kan. Sess. Laws 159 ............................13

Ch. XL, § 1, 1875 Ind. Laws 59 ..............................................13

Ky. Gen. Stat. ch. 29, art. 29, § 1 (1873).................................13

Mo. Rev. Stat. § 1274 (1879) ..................................................13

No. 26, § 1, 1856 Ala. Acts 17 .................................................13

No. 46, § 1, 1890 La. Acts 39...................................................13

No. CXXVIIII (O. No. 63.), § 1, 1876 Ga. Acts And Resolutions 112 .................13

Pt. 1, tit. 11, ch. 2, §§ 981, 1026 (Ga. 1861) ...........................14

Wyo. Rev. Stat. § 5052 (1899).................................................13

## Constitutional Provisions

Kan. Const. of 1859, art. 8, § 1 ...............................................14

N.C. Const. of 1868, art. XII, § 1 ............................................14

## Other Authorities

Allen Rostrom, *The Second Amendment on Campus*, 14 Geo. J.L. & Pub. Pol'y 245 (2016) ................................................17

Black's Law Dictionary (11th ed. 2019) ..................................13

Clayton E. Cramer & David B. Kopel, *"Shall Issue": The New Wave of Concealed Handgun Permit Laws*, 62 Tenn. L. Rev. 679 (1995).........................17

Thomas M. Cooley, *Treatise on Constitutional Limitations* (5th ed. 1883) ..........16

William Blackstone, 1 *Commentaries on the Laws of England* (1769) .................13

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Appellants' federal constitutional claims under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291 to review the district court's final judgment of June 24, 2021, denying Appellants' motion for summary judgment and granting Appellee's motion for summary judgment on all claims. DE137, DE138. Appellants' notice of appeal was timely filed on July 7, 2021. DE139.

## STATEMENT OF THE ISSUES

1.     Whether Section 790.065(13), which prohibits those under 21 from purchasing a firearm, is a presumptively lawful longstanding regulation that does not violate the Second Amendment.

2.     Whether Section 790.065(13) survives rational-basis review under the Equal Protection Clause.

## STATEMENT OF THE CASE

### I.     BACKGROUND

On February 14, 2018, a 19-year-old used a lawfully purchased firearm to kill 17 students and faculty members, and to injure many others, at Marjory Stoneman Douglas High School in Parkland, Florida. Responding to that and other incidents of gun violence, the Florida Legislature enacted the Marjory Stoneman Douglas High School Public Safety Act, which, among other things, generally prohibits the purchase of firearms by persons under the age of 21. The full text of Section

790.065(13), the principal provision at issue here, provides that:

> A person younger than 21 years of age may not purchase a firearm. The sale or transfer of a firearm to a person younger than 21 years of age may not be made or facilitated by a licensed importer, licensed manufacturer, or licensed dealer. A person who violates this subsection commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. The prohibitions of this subsection do not apply to the purchase of a rifle or shotgun by a law enforcement officer or correctional officer, as those terms are defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9), or a servicemember as defined in s. 250.01.

In enacting this age qualification, the Legislature expressly found "a need to comprehensively address the crisis of gun violence, including but not limited to, gun violence on school campuses." Ch. 2018-3, § 2, Laws of Fla.

Shortly after Section 790.065(13)'s enactment, the National Rifle Association of America, Inc., sued Appellee and the Attorney General of Florida. The NRA's original complaint alleged that Florida's age qualification violated the Second Amendment and Equal Protection Clause of the United States Constitution on both facial and as-applied bases. DE1.[1] The operative complaint at the summary judgment stage (the Second Amended Complaint (DE54)) added a new plaintiff, Radford Fant, and dropped the as-applied claims. In the Second Amended Complaint, Appellants claimed only that Section 790.065(13) was facially unconstitutional under both the

---

[1] At first, the NRA sought leave to add individual plaintiffs proceeding under pseudonyms. The district court denied the NRA leave (DE32), however, and the NRA voluntarily dismissed its appeal from that order; the NRA then amended its complaint. DE54.

Second Amendment and the Equal Protection Clause of the U.S. Constitution. DE54 ¶¶ 25-33.

Appellee moved to dismiss, arguing that Appellants failed to state a claim and that the Attorney General of Florida was an improper defendant. DE73. The district court dismissed the Attorney General for lack of subject-matter jurisdiction, but otherwise denied the motion. DE94. Appellants disclosed two expert witnesses, while Appellee disclosed one; after expert depositions, Appellants and Appellee each filed motions for summary judgment and motions in limine seeking to strike the other side's expert witnesses or limit their testimony. DE125; DE126; DE127. The district court did not rule on those motions before ruling on the parties' cross-motions for summary judgment.

The district court denied Appellants' motion for summary judgment and granted Appellee's motion as to each of Appellants' claims. The court assessed Appellants' Second Amendment claim under this Court's two-step test, asking at step one "if the restricted activity is protected by the Second Amendment in the first place." DE137, at 8 (quoting *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1260 n.34 (11th Cir. 2012)). To start, the court analyzed the historical evidence, starting at the Founding, and concluded that it could not "say definitively from Founding-Era sources whether the Second Amendment protects the purchase of firearms by 18-to-20-year-olds." DE137, at 21. Next, the court assessed "whether

3

restrictions on 18-to-20-year-olds are longstanding" and thus presumptively lawful, and "examine[d] the entire historical background supporting such restrictions." *Id.* In so doing, the court asked whether "restrictions on the purchase of firearms by 18-to-20-year-olds are longstanding in time when compared to the other restrictions listed in [*District of Columbia v. Heller*, 554 U.S. 570 (2008)] *and* are sufficiently analogous to those restrictions." DE137, at 28.

After assessing the relevant historical evidence, the district court concluded that "restrictions on the purchase of firearms by 18-to-20-year-olds . . . [are]—at least relative to the other prohibitions listed in *Heller*—longstanding in time." DE137, at 32-33. Indeed, the court pointed out, "[o]f the 'longstanding' regulations listed in *Heller* and [*McDonald v. City of Chicago*, 561 U.S. 742 (2010)], three out of the four arose in the early- to mid-twentieth century," and "only prohibitions on carrying firearms in sensitive places predate prohibitions on the sale of firearms to 18-to-20-year-olds." DE137, at 32-33. The court next concluded that as well as being "longstanding," restrictions on 18-to-20-year-olds are "analogous" to the restrictions listed in *Heller*, noting that it could "identify no meaningful difference" between them. DE137, at 36. As a result, the court held that Section 790.065(13) was presumptively valid. DE137, at 40.

Finally, the district court held that this Court's precedents foreclosed Appellants from overcoming that presumption of validity. DE137, at 41-42 (citing

*United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010), *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010), *United States v. Focia*, 869 F.3d 1269, 1286-87 (11th Cir. 2017), and *Flick v. Att'y Gen.*, 812 F. App'x 974, 975 (11th Cir. 2020)). Because the district court concluded that Appellants' challenge failed at step one of the analysis, it did not proceed to step two and "apply an appropriate form of means-end scrutiny," DE137, at 8 (quoting *Focia*, 869 F.3d at 1285), or decide what level of scrutiny would apply to Appellants' claims at step two. *See* DE137, at 42.

As for Appellants' Equal Protection claims, the district court held that because age is not a suspect class and because Section 790.065(13) did not violate the Second Amendment, rational-basis review applied. DE137, at 42-43. And the court could not "say that [Section 790.065(13)'s] connection to Florida's stated purpose" of promoting public safety "is so tenuous as to render Florida's actions irrational." DE137, at 43.

In their Statement of the Case, Appellants discuss testimony and opinions from expert witnesses. Init. Br. 11-13. But the district court has not yet resolved whether that expert testimony—relevant only to step two of the analysis—is admissible or undisputed because it denied as moot the motions in limine seeking to strike the expert witnesses. DE137, at 47 & n.32. Instead, the district court concluded only that because it was deciding the case at step one, and "because any potential factual disputes in this case implicate the Act's 'fit' at step two, there are no material

facts in dispute for the purposes of the parties' motions." DE137, at 42. As a result, the "[u]ndisputed facts" to which Appellants point (Init. Br. 13), gleaned from their proposed expert testimony, may not even be—and indeed, are likely not—admissible, and certainly cannot be relied upon in this appeal.

## II.   STANDARD OF REVIEW

The Court "review[s] de novo" the district court's order granting summary judgment for Appellee, "applying the same legal standards applied by the district court in the first instance." *Khoury v. Miami-Dade Cty. Sch. Bd.*, 4 F.4th 1118, 1124 (11th Cir. 2021). "Summary judgment should be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)). The Court also reviews de novo the district court's denial of Appellants' motion for summary judgment. *Carter v. City of Melbourne*, 731 F.3d 1161, 1166 (11th Cir. 2013).

## SUMMARY OF THE ARGUMENT

**I.**  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court recognized that the Second Amendment protects an individual right to bear arms, but cautioned that its opinion did not "cast doubt on longstanding prohibitions" such as "possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings."

*Id.* at 626. The question here is whether Florida's decision to restrict persons under the age of 21 from purchasing firearms in Section 790.065(13) is such a regulation.

Courts that have considered similar claims have held that such age qualifications are constitutionally valid. *See*, *e.g.*, *NRA v. BATFE*, 700 F.3d 185, 188 (5th Cir. 2012); *United States v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009).[2] Those courts have concluded that age restrictions like Florida's have a longer historical pedigree than most of the presumptively lawful restrictions identified in *Heller*. *See BATFE*, 700 F.3d at 202-03. By the end of the 19th century, nineteen states and the District of Columbia had enacted similar age restrictions. *Id.* at 202. Other historical sources, including courts and prominent scholars, support the understanding that age restrictions do not violate the Second Amendment. *See id.* at 202-03

Florida's law is not only longstanding but also analogous to the laws *Heller* identified as consistent with the Second Amendment. As with those measures, Section 790.065(13) limits the access of a select group for the purpose of promoting public safety. But whether Section 790.065(13) is simply longstanding or both longstanding and analogous to those restrictions, under *Heller* and this Court's

---

[2] Earlier this year, the Fourth Circuit reached a different conclusion regarding a provision of federal law making it unlawful for federal firearms licensees to sell handguns to people under 21 years of age, but its decision has been vacated as moot. *See Hirschfeld v. BATFE*, 5 F.4th 407, 416-18 (4th Cir. 2021), *vacated as moot by Hirschfeld v. BATFE*, --- F.4th ---, 2021 WL 4301564 (4th Cir. Sept. 22, 2021).

precedents, it is presumptively lawful and it therefore does not burden conduct protected by the Second Amendment.

If this Court nonetheless disagrees with the district court's ruling granting Florida summary judgment, it should remand for further proceedings. Under this Court's precedents, if a law burdens conduct protected by the Second Amendment, then the Court asks, at the second step of the analysis, whether the law survives an appropriate form of means-ends constitutional scrutiny. The district court did not decide which form of means-end scrutiny would apply at step two; it did not rule on the admissibility of expert testimony that it considered to be relevant only at step two; it did not hold that no genuine dispute of material fact existed as to step two; and it did not analyze step two. If the Court disagrees with the district court's step-one analysis, it should thus leave those fact-sensitive determinations to the district court in the first instance.

**II.** Appellants' Equal Protection claim fails as well. Considered apart from Appellants' Second Amendment claim, age is not a suspect class. Thus, the district court properly applied rational-basis review and concluded that Section 790.065(13) survives that level of scrutiny. It was at least rational for the Florida Legislature to rely on age as a proxy for characteristics relevant to its interest in promoting public safety, and Florida pointed to statistical evidence confirming that age is a reliable proxy here.

For these reasons, the Court should affirm.

## ARGUMENT

### I. THE COURT SHOULD AFFIRM THE DISTRICT COURT'S RULING THAT SECTION 790.065(13) DOES NOT BURDEN CONDUCT PROTECTED BY THE SECOND AMENDMENT.

Appellants claim that Florida law violates the Second Amendment in generally prohibiting individuals under the age of 21 from purchasing firearms. As the district court concluded, however, Florida's law is not meaningfully different from a variety of regulations on the right to bear arms that the Supreme Court, this Court, and other courts have held are "longstanding and presumptively valid" under the Second Amendment as construed by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008). DE137, at 22-38.

Appellants maintain that their Second Amendment claim should be analyzed under an amorphous "text, history, and tradition" divined from *Heller*. Init. Br. 31-35. But this Court's precedents establish "a two-step inquiry when deciding a Second Amendment issue." *United States v. Bolatete*, 977 F.3d 1022, 1036 (11th Cir. 2020).[3] At step one, this Court asks "if the restricted activity is protected by the Second Amendment in the first place." *United States v. Focia*, 869 F.3d 1269, 1285 (11th

---

[3] *Accord United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017); *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1324 (11th Cir. 2015); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1260 n.34 (11th Cir. 2012).

Cir. 2017). "If the challenged regulation does not burden conduct within the scope of the Second Amendment as historically understood, then the law comports with the Second Amendment." *Id.* Because Florida's law is valid under step one, this Court can and should uphold the constitutionality of that law without applying "an appropriate form of means-end scrutiny." *Id.*

**A.  Section 790.065(13) is a longstanding regulation that is consistent with the Second Amendment.**

In *Heller*, the Supreme Court held that the Second Amendment guarantees an individual right to bear arms. In doing so, however, the Court disclaimed any intent to "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27. The Court cautioned that "these presumptively lawful regulatory measures" were "only . . . examples," and that its "list does not purport to be exhaustive." *Id.* at 627 n.26; *see United States v. Marzzarella*, 614 F.3d 85, 92-93 (3d Cir. 2010) ("*Heller*'s list of presumptively lawful regulations is not exhaustive . . . and accordingly, the Second Amendment appears to leave intact additional classes of restrictions."). Florida's law is valid because it is both longstanding and analogous to the regulatory measures *Heller* and this Court have indicated are consistent with the Second Amendment.

Comparing restrictions on the purchase of firearms by 18-to-20-year-olds to the types of longstanding restrictions identified in *Heller* and to those upheld as longstanding by other courts of appeals shows that that Section 790.065(13)'s restrictions are similarly "longstanding." "*Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue." *BATFE*, 700 F.3d at 196; *accord United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (interpreting *Heller* as explaining that "statutory prohibitions on the possession of weapons by some persons are proper—and, importantly for current purposes, that the legislative role did not end in 1791"). As Judge Easterbrook explained in a Seventh Circuit en banc decision, the categorical "exclusions" described in *Heller* "need not mirror limits that were on the books in 1791." *Skoien*, 614 F.3d at 641.

To begin with, "*Heller* considered firearm possession bans on felons and the mentally ill to be longstanding, yet the current versions of those bans are of mid-20th century vintage." *BATFE*, 700 F.3d at 196; *Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015); *Skoien*, 614 F.3d at 640-41. Indeed, the federal felony firearm-disqualification law, which courts have repeatedly upheld, "is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011). As the district court recounted, "restrictions on the possession of firearms by

felons do not appear to have emerged until the early twentieth century," and "only a handful of states restricted the Second Amendment rights of felons prior to 1938, when the Federal Firearms Act . . . was introduced." DE137, at 30, 31 (citing *Skoien*, 614 F.3d at 640). What is more, "the nationwide total ban on felons' possession of firearms arrived only with 1961 amendments to the Federal Firearms Act and took its modern form in the Safe Streets Act, codified at 18 U.S.C. § 922(g)(1)." DE137, at 31. Likewise, "[t]he earliest restriction on the possession of firearms by the mentally ill appears to be the 1930 Uniform Firearms Act, which prohibited giving a pistol to someone of 'unsound' mind," and such prohibitions were not widespread until the passage of the Safe Streets Act. DE137, at 31 (citing *Mai v. United States*, 974 F.3d 1082, 1089 (9th Cir. 2020) (Bumatay, J., dissenting from denial of rehearing en banc)). And commercial restrictions were "of early twentieth century vintage." DE137, at 32.

Laws restricting 18-to-20-year-olds from purchasing firearms are similarly longstanding. "[B]y the end of the 19th century, nineteen States and the District of Columbia had enacted laws expressly restricting the ability of persons under 21 to purchase or use particular firearms, or restricting the ability of 'minors' to purchase or use particular firearms while the state age of majority was set at age 21." *BATFE*, 700 F.3d at 202 & n.14; *Powell v. Tompkins*, 926 F. Supp. 2d 367, 387 (D. Mass. 2013) ("Case law from jurisdictions across the country confirms that during the late

nineteenth and early twentieth centuries, minors' capacity to purchase and own firearms was significantly curtailed.").[4] Often, these prohibitions expressly targeted handguns—which *Heller* characterized as "the quintessential self-defense weapon," 554 U.S. at 629—and some criminalized their "mere possession," *Rene E.*, 583 F.3d at 14.

Importantly, 21 was the age of majority at the time these early statutes were enacted; it was not until the 1970s that states enacted legislation to lower the age of majority to 18. *BATFE*, 700 F.3d at 201, 204; William Blackstone, 1 *Commentaries on the Laws of England* 55 (1769) ("So that full age in male or female, is twenty-one years . . . , who till that time is an infant, and so styled in law."); Black's Law Dictionary (11th ed. 2019) (describing "infant" as "a person under the age of twenty-one years, and at that period . . . he or she is said to attain majority"). Those under 21 were considered "minors" until the late 20th century. *BATFE*, 700 F.3d at 201. The fact that individuals under the age of 21 at the time of the Founding had fewer

---

[4] *See* No. 26, § 1, 1856 Ala. Acts 17; Ch. 548, § 1, 16 Del. Laws 716 (1881); Ch. 159, §5, 27 Stat. 116-17 (1892); No. CXXVIIII (O. No. 63.), § 1, 1876 Ga. Acts And Resolutions 112; § 2, 1881 Ill. Laws 73; Ch. XL, § 1, 1875 Ind. Laws 59; Ch. 78, § 1, 1884 Iowa Acts And Resolutions 86; Ch. CV, §§ 1-2, 1883 Kan. Sess. Laws 159; Ky. Gen. Stat. ch. 29, art. 29, § 1, at 359 (1873); No. 46, § 1, 1890 La. Acts 39, 39; Ch. 424, § 2, 1882 Md. Laws 656; Ch. 66, §§ 1-2, 1878 Miss. Laws 175; Mo. Rev. Stat. § 1274 (1879); Ch. 51, § 1, 1885 Nev. Stat. 51; Ch. 514, § 1, 1893 N.C. Pub. L. & Res. 468; § 2, 1856 Tenn. Acts 92; Ch. 155, § 1, 1897 Tex. Gen. Laws 221-22; Ch. 135, § 1, 1882 W. Va. Acts 421-22; Ch. 329, §§ 1-2, 1883 Wis. Laws 290; Wyo. Rev. Stat. § 5052 (1899).

rights under the law for a variety of purposes reinforces that these longstanding laws were not thought to violate the Second Amendment.

Appellants err in suggesting that at the Founding, "the age of majority for keeping and bearing arms was 18." Init. Br. 21. Appellants note that the age of militia service for some at the time of the Founding in some states was less than age 21. Init. Br. 21-24. Yet as the district court explained, "there was no uniform age for militia service . . . [i]n times of war, the age for service in the militia crept downward towards sixteen; in times of peace, it crept up towards twenty-one." DE137, at 19 (citing *BATFE*, 700 F.3d at 204; *Tompkins*, 926 F. Supp. 2d at 387); *see also* DE137, at 15-19 (canvassing militia requirements).[5] Indeed, by allowing states to exempt those under 21 in the Militia Act, the federal government recognized that those under 21 were not universally expected to serve in the militia. *See* 1 Stat. 271, § 1, Militia Act; *id.* at 272, § 2. Several states did exempt those under 21,[6] while others required

---

[5] Notably, Appellants do not appear to suggest that because 16- and 17- year-olds also served in the militia in some states that Florida may not restrict those individuals from purchasing firearms.

[6] *See* An Act to establish an Uniform Militia throughout this State, ch. XLIX, §§ 1-2, 4 (Del. 1807); Pt. 1, tit. 11, ch. 2, §§ 981, 1026, at 189, 199 (Ga. 1861); Kan. Const. of 1859, art. 8, § 1; An Act to exempt minors from Militia Duty in time of peace (N.J. 1829); N.C. Const. of 1868, art. XII, § 1; An Act to regulate the Militia, § 2, 1843 Ohio Acts 53, 53; An Act for the Regulation of the Militia of the Commonwealth of Pennsylvania, ch. MDCXCVI, §§ I-II (1793); An Act For the

parents to furnish arms for those under 21,[7] and some even required parental consent for those under 21.[8] In any event, "the right to arms is not co-extensive with the duty to serve in the militia." *BATFE*, 700 F.3d at 204 n.17 (citing *Heller*, 554 U.S. at 589-94). A historically fluctuating and non-uniform age requirement for a subset of male citizens for militia service does not establish that the age of majority for this purpose was 18.

In asking whether the Florida's law is longstanding, the Court should also examine "how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century," which represents "a critical tool of constitutional interpretation." *Heller*, 554 U.S. at 605. "[T]he judge and professor

---

Organization, Discipline, and Regulation of the Militia of the Commonwealth of Pennsylvania, No. 211, § 1, 1864 Pa. Laws 221, 221-22.

[7] *See* An Act to organize, govern, and discipline the Militia of this State, ch. CLXIV, § 34, 1821 Me. Laws 687, 716; An Act for regulating, governing, and training the Militia of this Commonwealth, ch. CVII, § 28, 1810 Mass. Laws 151, 176; An Act to organize, govern, and discipline the Militia, ch. I, § 24, 1825 Mo. Laws 533, 554; An Act for the forming, arranging and regulating the militia, 2 NEW HAMPSHIRE LAWS ENACTED SINCE JUNE 1, 1815 51, 80 (1824); 2 WILLIAM T. DORTCH, JOHN MANNING, JOHN S. HENDERSON, THE CODE OF NORTH CAROLINA § 3168, at 346-47 (1883); An Act, for regulating and governing the militia of this State, ch. LXXXI, No. 1, § 15, 2 LAWS OF THE STATE OF VERMONT DIGESTED AND COMPILED 122, 131-32 (1808).

[8] *See* An Act for the reorganization of the military forces of the State of Michigan, tit. VII, ch. XIII, § 6, JAMES S. DEWEY, ED., 1 THE COMPILED LAWS OF THE STATE OF MICHIGAN 317, 320 (1872); An Act to organise, govern, and discipline the Militia, art. IV, § 22, 2 LAWS OF A PUBLIC AND GENERAL NATURE OF THE STATE OF MISSOURI 512, 521 (1842).

Thomas Cooley, who wrote a massively popular 1868 Treatise on Constitutional Limitations," *id.* at 616, wrote that "the State may prohibit the sale of arms to minors," Thomas M. Cooley, *Treatise on Constitutional Limitations* 740 n.4 (5th ed. 1883); *see Heller*, 554 U.S. at 616-17 (relying on Cooley's interpretations as persuasive). Several courts concurred with Cooley's assessment. In *State v. Callicutt*, the Tennessee Supreme Court—whose understanding of the right to arms *Heller* repeatedly endorsed, *see* 554 U.S. at 603, 608, 613-14, 629—upheld a state law that criminalized the selling, giving, or loaning of pistols to minors. 69 Tenn. 714, 714-15 (1878). Similarly, the Supreme Court of Kansas rejected a constitutional challenge to a law that prohibited giving "dangerous weapons to minors," including "any pistol, revolver or toy pistol." *Parman v. Lemmon*, 244 P. 227, 228, 231 (Kan. 1925). And the Illinois Supreme Court held that an ordinance effectively banning minors from purchasing handguns was consistent with the Second Amendment and the Illinois Constitution's right-to-arms guarantee. *Biffer v. City of Chicago*, 116 N.E. 182, 184-85 (Ill. 1917).

Current federal and state laws confirm that an age qualification for purchasing firearms—and a 21-year-old age qualification, in particular—is well-established. Since 1968, federal law has prohibited those under 21 from purchasing handguns from licensed dealers and—with narrow exceptions—prohibits those under 18 years of age from possessing them. *See* 18 U.S.C. § 922(b)(1); 18 U.S.C. § 922(x)(2), (3)

(5). It also prohibits dealers from selling any firearm to those under the age of 18. 18 U.S.C. § 922(b)(1). The district court noted that several states have similar restrictions. *See* DE137, at 33 n.27 (collecting state age restrictions on firearms).

Moreover, in enacting permissive concealed-carry regimes, Florida, like most shall-issue states, requires licensees to be 21 years of age; few states allow concealed carry by those under 21. *See* § 790.06(2)(b), Fla. Stat.; Clayton E. Cramer & David B. Kopel, *"Shall Issue": The New Wave of Concealed Handgun Permit Laws*, 62 Tenn. L. Rev. 679, 688-706 (1995); Allen Rostrom, *The Second Amendment on Campus*, 14 Geo. J.L. & Pub. Pol'y 245, 259 n.101 (2016). This reflects a well-established view among the states that the Second Amendment permits gun-related regulations on minors under the age of 21.

In sum, the district court correctly concluded that restrictions on the sale of firearms to 18-to-20-year-olds are "longstanding in time" because, of the "longstanding" prohibitions listed in *Heller*, "only prohibitions on carrying firearms in sensitive places predate prohibitions on the sale of firearms to 18-to-20-year-olds." DE137, at 32-33. Indeed, "the established consensus of federal appellate and district courts from around the country is that age-based restrictions limiting the rights of 18-[to-]20-year-old adults to keep and bear arms fall under the 'longstanding' and 'presumptively lawful' measures recognized by the Supreme Court in *Heller* as evading Second Amendment scrutiny." *Lara v. Evanchick*, No.

2:20-cv-1582, --- F. Supp. 3d. ---, 2021 WL 1432802, at *10 (W.D. Penn. Apr. 16, 2021).[9]

## B. Section 790.065(13) is analogous to other firearms regulations courts have concluded are consistent with the Second Amendment.

Appellants contend that this Court should still invalidate Florida's law, despite its historical support, because they do not find an age restriction "analogous to longstanding prohibitions on the possession of firearms by convicted felons and individuals adjudicated to be mentally ill." Init. Br. 25. But a firm grounding in the historical record is what tends to make a law constitutional. The Second Amendment is no different. *See*, *e.g.*, *Heller*, 554 U.S. at 614-19 (relying on post-Civil-War case law and commentary in interpreting the Second Amendment); *Drake v. Filko*, 724 F.3d 426, 434 (3d Cir. 2013) (explaining that "certain longstanding regulations are 'exceptions' to the right to keep and bear arms, such that the conduct they regulate is not within the scope of the Second Amendment" and upholding law as a "longstanding regulation").[10] "[A] regulation that is 'longstanding,' which

_____

[9] *See BATFE*, 700 F.3d at 203; *NRA v. McCraw*, 719 F.3d 338, 347 (5th Cir. 2013); *Rene E.*, 583 F.3d at 12; *Jones v. Becerra*, 498 F. Supp. 3d 1317, 1327 (S.D. Cal. 2020); *Mitchell v. Atkins*, 483 F. Supp. 3d 985, 993 (W.D. Wash. 2020); *People v. Mosley*, 33 N.E. 3d 137, 155 (Ill. 2015); *In re J.M.*, 144 So. 3d 853, 862 (La. 2014).

[10] *See also Heller v. District of Columbia*, 670 F.3d 1244, 1254 (D.C. Cir. 2011) (upholding regulation as longstanding because it had been "accepted for a century in diverse states and cities"); *BATFE*, 700 F.3d at 196 ("a longstanding, presumptively lawful regulatory measure—whether or not it is specified on *Heller*'s illustrative list—would likely fall outside the ambit of the Second Amendment; that

18

necessarily means it has long been accepted by the public, is not likely to burden a constitutional right." *Heller v. District of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011).

In any event, age restrictions like Section 790.065(13) are indeed analogous to other regulations held to be consistent with the Second Amendment. As with prohibitions regarding felons and the mentally ill, it "is consistent with a longstanding tradition of targeting select groups' ability to access and to use arms for the sake of public safety." *BATFE*, 700 F.3d at 203; *see also Rene E.*, 583 F.3d at 15. In *United States v. White*, this Court upheld 18 U.S.C. § 922(g)(9)'s prohibition against those convicted of misdemeanor domestic violence from possessing firearms. 593 F.3d 1199 (11th Cir. 2010). The Court explained that to promote public safety, Congress sought to keep firearms "out of the hands of" a select group: "domestic abusers." *Id.* at 1205-06. Other provisions of section 922(g), targeting select groups for the sake of public safety, have also been upheld as longstanding. *E.g.*, *United States v. Seay*, 620 F.3d 919, 924-25 (8th Cir. 2010) (illegal drug users); *United States v. Dugan*, 657 F.3d 998, 999-1000 (9th Cir. 2011) (same). Just as with those restrictions, age restrictions are targeted at limiting a select

---

is, such a measure would likely be upheld at step one of our framework"); *but see Hirschfeld*, 5 F.4th at 416-18.

group's ability to access firearms for the sake of public safety—and are far more longstanding.

Appellants counter that the restrictions recognized in *Heller* are different because they require some adjudication that a particular individual is either a criminal or is mentally ill. Init. Br. 26-27. But that an individual is convicted of a felony, or is adjudicated mentally ill, does not mean that person is necessarily dangerous or that restricting his access to firearms would promote public safety: "[B]oth an armed robber and tax evader lose their right to bear arms on conviction under § 922(g)(1)." *White*, 593 F.3d at 1206. *Heller* permits legislatures to regulate within longstanding exceptions to the Second Amendment for *categories* of people that may pose a risk to public safety.

Finally, Appellants argue that "[t]he right does not vanish for an entire group who share a single characteristic just because some people in that group might commit a crime," and that "[n]o other fundamental right . . . excludes [18-to-20-year-olds] from its protections." Init. Br. 27, 28. But felons, domestic abusers, and mentally ill can be constitutionally restricted based on their single shared characteristic. The distinctive history of the Second Amendment supports that it allows that sort of categorical regulation.

Whether simply longstanding or both longstanding and analogous to the restrictions in *Heller*, age restrictions like Section 790.065(13) fall into *Heller*'s

exception for presumptively lawful regulations. As a result, Section 790.065(13) "do[es] not offend the Second Amendment." *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010). Although Appellants argue that this Court has been "silen[t]" (Init. Br. 30) on whether a presumptively lawful regulation can nonetheless be unconstitutional, that is not so. Instead, in *Rozier*, the Court interpreted *Heller* to "sugges[t] that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id.* at 771. In *Flick v. Attorney General*, the Court concluded that *Rozier* thereby foreclosed an as-applied challenge to section 922(g)(1). 812 F. App'x 974, 975 (11th Cir. 2020). And in *White*, the Court explained that "*Heller* does not cast doubt on the constitutionality of § 922(g)(9)" because the law was a longstanding prohibition. 593 F.3d at 1206; *see also Focia*, 869 F.3d at 1286-87 (ending inquiry after finding restriction longstanding).

Appellants contend that this Court has never held that the presumptive validity of longstanding measures "can never be rebutted." Init. Br. 30. But apart from their mistaken historical arguments, Appellants offer no reason to rebut the preemption as to Florida's law, which is materially indistinguishable from age-restriction laws that have long been considered valid. Appellants' approach is inconsistent with this Court's precedents. Each time this Court has concluded that a firearms regulation is presumptively valid—even those involving newer categories like

section 922(g)(9)—the Court held the measure constitutional without further analysis.

In sum, because Section 790.065(13) is historically grounded and similar to those regulations in *Heller*, Appellants' challenge fails at step one and this Court should affirm the district court's judgment.

C.    **If the Court concludes that Section 790.065(13) burdens conduct protected by the Second Amendment, it should remand for the district court to analyze Appellants' claims under step two.**

Should this Court reject the district court's holding that Appellants' claim fails at step one, reversing its grant of summary judgment in favor of Appellee would require a court to analyze Appellants' claims under step two. In its order on the parties' summary judgment motions, however, the district court did not assess step two or decide what level of scrutiny would apply. Instead, it held that there was no dispute of material fact only as to the analysis under step one, and that Appellants' claims failed at that step. DE137, at 42. And because the parties' motions to strike expert witnesses "would only become relevant at step two," the court denied those motions as moot. DE137, at 47 & n.32.

Remand would therefore be appropriate should the Court disagree with the district court that Florida's law is valid at step one. This Court is, "after all, a court of review, not a court of first view." *Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251, 1266 (11th Cir. 2019). That is particularly true here because all

parties relied on expert witness evidence in their motions for summary judgment—evidence that the district court expressly recognized was "relevant at step two." DE137, at 47 & n.32. Yet whether that evidence may be properly considered at step two is hotly disputed: The parties filed *Daubert* challenges as to each expert witness. *See* DE125; DE126; DE127.

To decide whether Section 790.065(13) is constitutional if the Court concludes that Appellants' claim survives step one, the following questions would still need to be answered: (1) what level of scrutiny applies at step two; (2) whether the expert testimony relied on by the parties is admissible; (3) whether any genuine dispute of material fact relevant to the means-end inquiry exists; and (4) whether Section 790.065(13) survives the applicable means-end scrutiny. These questions are "unavoidably fact-sensitive," and thus "should be addressed first by the district court." *Callahan*, 939 F.3d at 1266.

That is what the Court has done in cases where an alternative basis—not addressed by the district court—for the reversal of a summary judgment order was urged. For example, in *Bartholomew v. AGL Resources, Inc.*, 361 F.3d 1333 (11th Cir. 2004), the Court reversed the district court's holding that plaintiffs' state-law claims were preempted. Defendants argued on appeal that even if those claims weren't preempted, they were still entitled to summary judgment on the merits of those claims. But "[b]ecause the district court did not address their argument in the

first instance, [the Court] decline[d] to do so" on appeal. *Id.* at 1341 n.5. In short, should the Court agree with Appellants that their Second Amendment claim survives step one, remand is the appropriate course.

## II.   APPELLANTS' EQUAL PROTECTION CLAIM FAILS BECAUSE SECTION 790.065(13) PASSES RATIONAL BASIS REVIEW.

Rational-basis review, not strict scrutiny, applies to Appellants' Equal Protection claim. As the district court correctly held, "age is not a suspect classification," *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000), and Section 790.065(13) does not burden conduct protected by the Second Amendment.

The district court correctly held that Section 790.065(13) survives rational-basis review. "The rational basis test asks (1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it. This standard is easily met." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009) (citation omitted). "[W]hen conducting rational basis review," a court "will not overturn" legislation "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Kimel*, 528 U.S. at 84 (internal quotation marks omitted); *see McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961) (explaining that the Equal Protection Clause "is offended only if the classification

rests on grounds wholly irrelevant to the achievement of the State's objective"). And "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). That restraint has "added force 'where,'" as here, "'the legislature must necessarily engage in a process of line-drawing.'" *Id.* (quoting *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980)).

Appellants do not dispute the Legislature's power to regulate firearm purchases. Nor do they dispute that promoting public safety is a legitimate, even compelling, state interest. They argue only that the connection between that legitimate interest and the Legislature's line-drawing here is too "tenuous." Init. Br. 46. But a rational relationship between promoting public safety and prohibiting 18-to-20-year-olds from purchasing firearms does exist. Because age classifications are "presumptively rational," Appellants "bea[r] the burden of proving that the facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Kimel*, 528 U.S. at 84 (citation and internal punctuation omitted). By contrast, Appellee may "rely on age as a proxy for other qualities, abilities, or characteristics that are relevant to the State's legitimate interests." *Id.* at 84.

In fact, the State did more than rely on age as a proxy for this age group's characteristics; it pointed to statistical evidence that this particular age classification

was justified. As the district court explained, "compared to other age groups, 18-to-20-year-olds are far more likely to commit violent crimes." DE137, at 43. "Thus, restricting 18-to-20-year-olds' access to firearms will reduce gun violence by making it more difficult to obtain weapons until a person ages out of this high-risk group." DE137, at 43; *see also Horsley v. Trame*, 808 F.3d 1126, 1133 (7th Cir. 2015) ("The goal of protecting public safety is supported by studies and data regarding persons under 21 and violent and gun crimes."). Appellants thus cannot show that the Legislature "could not reasonably . . . conceiv[e]" it to be true that restricting this high-risk age cohort's access to firearms would promote public safety. *Kimel*, 528 U.S. at 84.

Appellants contend that Section 790.065(13) is "internally inconsistent" because it prohibits purchase or sale but not possession. Init. Br. 44. But that demonstrates only that the Legislature assessed that the lesser step of prohibiting purchase and sale was the appropriate measure for promoting public safety, rather than taking the more extreme step of barring possession altogether. The choice between these options is a quintessential legislative judgment that courts should not second-guess when engaging in rational-basis review.

Appellants also maintain that Section 790.065(13) is irrational because under Florida state law, 18-to-20-year-olds can serve in the military and law enforcement and can "serve on a jury, enter into contracts, sue and be sued, get married, and own

property." Init. Br. 45. Yet the fact that those individuals are entrusted with firearms in the highly regulated and trained environments of law enforcement and the military does not make it irrational to enact a separate, general prohibition on 18-to-20-year-olds from purchasing firearms until they reach 21. In fact, Section 790.065(13) itself contains a carveout for law enforcement officers and servicemembers, recognizing the common-sense proposition that purchases by these particular 18-to-20-year-olds do not present the same risk to public safety. Meanwhile, none of the other activities mentioned by Appellants implicate the compelling public safety concerns that the Legislature intended to address.

Because reducing—even if not wholly eliminating—this high-risk age cohort's access to firearms promotes public safety, the Legislature's line-drawing does not "res[t] on grounds wholly irrelevant to the achievement of the State's objective." *McGowan*, 366 U.S. at 425-26. As the district court put it, "[e]ven if the Act is a blunt instrument to achieve Florida's legitimate end," its connection to the Legislature's purpose of promoting safety is not "so tenuous as to render Florida's actions irrational." DE137, at 43.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's judgment. If, however, the Court concludes that Section 790.065(13) does burden

conduct protected by the Second Amendment, it should remand for the district court to conduct further proceedings.

Respectfully submitted.

ASHLEY MOODY
Attorney General

*/s/ Christopher J. Baum*
HENRY C. WHITAKER
*Solicitor General*
DANIEL W. BELL
*Chief Deputy Solicitor General*
CHRISTOPHER J. BAUM, B.C.S.
*Senior Deputy Solicitor General*

Office of the Attorney General
1 SE 3rd Ave Suite 900
Miami, FL 33131
(978) 460-1314
(850) 410-2672 (fax)
*christopher.baum@myfloridalegal.com*

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limits of Fed. R. App. P. 32 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document 6,834 words.

2.      This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Christopher J. Baum*
Christopher J. Baum

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2021, I electronically filed the foregoing Brief with the Clerk of Court by using the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Christopher J. Baum*
Christopher J. Baum