No. 21-12314

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

NATIONAL RIFLE ASSOCIATION, INC., and RADFORD FANT,

Plaintiffs-Appellants,

v.

COMMISSIONER,
FLORIDA DEPARTMENT OF LAW ENFORCEMENT,

Defendant-Appellee.

_____

On Appeal from the United States District Court
for the Northern District of Florida

No. 4:18-cv-00137-MW
The Honorable Mark Walker

## BRIEF OF AMICI CURIAE ILLINOIS, CALIFORNIA, CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA, HAWAII, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, VIRGINIA, AND WASHINGTON IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE

KWAME RAOUL
Attorney General
State of Illinois

ALEX HEMMER
Deputy Solicitor General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5526
alex.hemmer@ilag.gov

JANE ELINOR NOTZ
Solicitor General

Attorneys for Amici States

*(Additional counsel on signature page)*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, I hereby certify that the following listed persons and entities have an interest in the outcome of this case and were omitted from the Certificates of Interested Persons previously filed in this case:

1. Balderas, Hector (counsel for amicus curiae New Mexico)

2. Bonta, Rob (counsel for amicus curiae California)

3. Bruck, Andrew J. (counsel for amicus curiae New Jersey)

4. Commonwealth of Massachusetts (amicus curiae)

5. Commonwealth of Pennsylvania (amicus curiae)

6. Commonwealth of Virginia (amicus curiae)

7. Connors, Clare E. (counsel for amicus curiae Hawaii)

8. District of Columbia (amicus curiae)

9. Donovan, Jr., Thomas J. (counsel for amicus curiae Vermont)

10. Ellison, Keith (counsel for amicus curiae Minnesota)

11. Ferguson, Robert W. (counsel for amicus curiae Washington)

12. Frosh, Brian E. (counsel for amicus curiae Maryland)

13. Healey, Maura (counsel for amicus Massachusetts)

14. Hemmer, Alex (counsel for amici)

15.    Herring, Mark R. (counsel for Virginia)

16.    James, Letitia (counsel for amicus curiae New York)

17.    Jennings, Kathleen (counsel for amicus curiae Delaware)

18.    Neronha, Peter F. (counsel for amicus curiae Rhode Island)

19.    Nessel, Dana (counsel for amicus curiae Michigan)

20.    Notz, Jane Elinor (counsel for amici)

21.    Racine, Karl (counsel for amicus curiae District of Columbia)

22.    Raoul, Kwame (counsel for amici)

23.    Rosenblum, Ellen F. (counsel for amicus curiae Oregon)

24.    Shapiro, Josh (counsel for amicus curiae Pennsylvania)

25.    State of California (amicus curiae)

26.    State of Connecticut (amicus curiae)

27.    State of Delaware (amicus curiae)

28.    State of Hawaii (amicus curiae)

29.    State of Illinois (amicus curiae)

30.    State of Maryland (amicus curiae)

31.    State of Michigan (amicus curiae)

32.    State of Minnesota (amicus curiae)

33.    State of New Jersey (amicus curiae)

34.    State of New Mexico (amicus curiae)

35.    State of New York (amicus curiae)

36.    State of North Carolina (amicus curiae)

37.    State of Oregon (amicus curiae)

38.    State of Rhode Island (amicus curiae)

39.    State of Vermont (amicus curiae)

40.    State of Washington (amicus curiae)

41.    Stein, Joshua H. (counsel for amicus North Carolina)

42.    Tong, William (counsel for amicus Connecticut)

/s/ Alex Hemmer
ALEX HEMMER

October 25, 2021

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS
    AND CORPORATE DISCLOSURE STATEMENT ..................... C-1

TABLE OF AUTHORITIES ........................................................ ii

IDENTITY AND INTEREST OF AMICI STATES ................................. 1

STATEMENT OF THE ISSUE ................................................... 2

SUMMARY OF ARGUMENT ..................................................... 2

ARGUMENT .................................................................. 4

I.    The Second Amendment Allows States To Enact Varied
      Measures To Promote Gun Safety And Protect Against Gun
      Violence. ........................................................... 4

II.   Florida's Age-Based Regulation Is Consistent With Measures
      Taken By Other States And Upheld By Courts Across The
      Country. ........................................................... 9

III.  Florida Has Demonstrated That Its Age-Based Regulations
      Promote Public Safety And Prevent Gun Violence. ..................... 14

CONCLUSION ................................................................ 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

## CASES

Page(s)

*City of Renton v. Playtime Theatres, Inc.,*
475 U.S. 41 (1986) .................................................................................... 19

*Daytona Grand, Inc. v. City of Daytona Beach, Fla.,*
490 F.3d 860 (11th Cir. 2007) .......................................................... 18, 19

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ............................................................................ 5, 6

*Friedman v. City of Highland Park,*
784 F.3d 406 (7th Cir. 2015) ............................................................. 6, 8

*Harley v. Wilkinson,*
988 F.3d 766 (4th Cir. 2021) .................................................................. 16

*Hirschfeld v. ATF,*
5 F.4th 407 (4th Cir. 2021) .................................................................. 12

*Horsley v. Trame,*
808 F.3d 1126 (7th Cir. 2015) .................................................. 12, 13, 20

*In re Jordan G.,*
33 N.E.3d 162 (Ill. 2015) ...................................................................... 13

*Kolbe v. Hogan,*
849 F.3d 114 (4th Cir. 2017) (en banc) ................................... 1, 5, 8, 18

*Lara v. Evanchick,*
No. 20-cv-1582, 2021 WL 1432802 (W.D. Pa. Apr. 16, 2021) ............ 12

*McDonald v. City of Chicago,*
561 U.S. 742 (2010) ................................................................... 5, 6, 17

*Medtronic, Inc. v. Lohr,*
518 U.S. 470 (1996) ............................................................................. 4

*Nat'l Parks Conservation Ass'n v. Norton,*
    324 F.3d 1229 (11th Cir. 2003) ........................................................... 17

*Nat'l Rifle Ass'n v. ATF,*
    700 F.3d 185 (5th Cir. 2012) ............................................. 13, 15, 16, 20

*Nat'l Rifle Ass'n v. McCraw,*
    719 F.3d 338 (5th Cir. 2013) ........................................................ 13, 20

*N.Y. State Rifle & Pistol Ass'n v. Cuomo,*
    804 F.3d 242 (2d Cir. 2015) ............................................................... 16

*Pena v. Lindley,*
    898 F.3d 969 (9th Cir. 2018) ......................................................... 8, 18

*Peruta v. Cnty. of San Diego,*
    824 F.3d 919 (9th Cir. 2016) (en banc) ............................................. 6

*Powell v. Tompkins,*
    926 F. Supp. 2d 367 (D. Mass. 2013) ............................................... 13

*United States v. Lopez,*
    514 U.S. 549 (1995) .......................................................................... 4

*United States v. Morrison,*
    529 U.S. 598 (2000) .......................................................................... 4

## STATUTES AND RULES

Cal. Penal Code
    § 27505 ........................................................................................... 10
    § 27510 ........................................................................................... 10

Conn. Gen. Stat.
    § 29-34 ........................................................................................... 10
    § 29-36f ......................................................................................... 11

D.C. Code Ann.
    § 7-2502.03 ........................................................................ 11
    § 22-4507 .......................................................................... 10

Del. Code Ann. tit. 24, § 903 ........................................................ 10

Fla. Stat. § 790.065......................................................... 2, 10, 11

Haw. Rev. Stat. Ann.
    § 134-2 ....................................................................... 10, 11
    § 134-4 ........................................................................... 11
    § 134-5 ........................................................................... 11

430 Ill. Comp. Stat.
    65/2 .............................................................................. 11
    65/3 .............................................................................. 10
    65/4 ......................................................................... 10, 11

Iowa Code § 724.22 .................................................................. 10, 11

Mass. Gen. Laws ch. 140
    § 130 ............................................................................. 10
    § 131 ............................................................................. 11
    § 131E ........................................................................... 10

Md. Code Ann., Pub. Safety
    § 5-133 .......................................................................... 11
    § 5-134 .......................................................................... 10

Mich. Comp. Laws § 28.422 ...................................................... 10

Mo. Rev. Stat. § 571.080............................................................ 10

Neb. Rev. Stat.
    § 69-2403 ....................................................................... 10
    § 69-2404 ....................................................................... 10

N.J. Stat. Ann.
    § 2C:58-3........................................................................ 10

iv

§ 2C:58-3.3 ................................................................... 10
§ 2C:58-6.1 ............................................................ 10, 11

N.Y. Penal Law § 400.00 ..................................................... 10, 11

Ohio Rev. Code Ann. § 2923.21 ............................................. 10

R.I. Gen. Laws
§ 11-47-35 ................................................................. 10
§ 11-47-37 ................................................................. 10

Vt. Stat. Ann. tit. 13, § 4020 ................................................ 10

Wash. Rev. Code Ann. § 9.41.240 ...................................... 10, 11

W. Va. Code § 61-7-10 ......................................................... 10

Fed. R. App. P. 29 .............................................................. 1

## OTHER AUTHORITIES

Fed. Bureau of Investigation, *Murder: Crime in the United States 2019*, https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/topic-pages/tables/table-20 ............................................. 7

Fed. Bureau of Investigation, *Uniform Crime Reporting Statistics: Their Proper Use* (May 2017), https://ucr.fbi.gov/ucr-statistics-their-proper-use ................................................................. 7

Giffords Law Center, *Minimum Age to Purchase and Possess*, https://giffords.org/lawcenter/gun-laws/policy-areas/who-can-have-a-gun/minimum-age/ ........................................................ 10, 12

**IDENTITY AND INTEREST OF AMICI STATES**

The amici States of Illinois, California, Connecticut, Delaware, the District of Columbia, Hawaii, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, and Washington submit this brief in support of Defendant-Appellee Rick Swearingen, Commissioner of the Florida Department of Law Enforcement, pursuant to Federal Rule of Appellate Procedure 29(a)(2).

The amici States have a substantial interest in the public health, safety, and welfare of their communities, which includes protecting their residents from the harmful effects of gun violence and promoting the safe use of firearms. *See Kolbe v. Hogan*, 849 F.3d 114, 139 (4th Cir. 2017) (en banc) (States' "interest in the protection of [their] citizenry and the public safety is not only substantial, but compelling"). To serve that compelling interest, the amici States have long exercised their governmental prerogative to implement measures that regulate the sale and use of, and access to, firearms for individuals under the age of 21. Although the amici States have reached different conclusions on how best to regulate in this area, they share an interest in protecting their

right to address the problem of gun violence in a way that is tailored to the specific circumstances in each of their States.  Enjoining Florida's reasonable regulation of the sale of firearms to individuals under the age of 21 would interfere with this interest.  Accordingly, the amici States urge this Court to affirm the district court's judgment.

## STATEMENT OF THE ISSUE

Whether section 790.065(13) of the Marjory Stoneman Douglas High School Public Safety Act violates the Second Amendment.

## SUMMARY OF ARGUMENT

In the wake of the tragic shooting by a 19-year-old individual at Marjory Stoneman Douglas High School in Parkland, Florida, the Florida Legislature enacted the Marjory Stoneman Douglas High School Public Safety Act, which, among other things, prohibits the purchase of firearms by persons under the age of 21.  *See* Fla. Stat. § 790.065(13).

Plaintiffs challenge section 790.065(13), claiming that it unduly infringes upon the Second Amendment rights of young people.  But as the district court correctly held, laws regulating the sale of firearms to young adults are longstanding and presumptively lawful.  App. 225-27. And section 790.065(13) would not violate the Second Amendment even

2

if it did burden conduct within its scope because regulations imposing age-based restrictions on the sale of firearms are reasonably related to Florida's substantial interests in public safety and in preventing gun violence, including mass shootings.

As the amici States explain below, the Second Amendment reserves to the States the ability to exercise their police powers by enacting sensible and varied regulations designed to protect the public. In fact, all States and the District of Columbia have imposed age-based regulations on the sale and use of, and access to, firearms within their borders. Although these regulations differ based on each jurisdiction's needs, at least 19 States and the District of Columbia have enacted a minimum age requirement of 21 for the sale or possession of certain categories of firearms.

Furthermore, the materials relied on by Florida—including legislative findings, social science research, and statistical analyses— demonstrated that section 790.065(13) is reasonably related to its state interests. Plaintiffs' arguments to the contrary are based on an unduly heightened burden that, if applied, would restrict the States' ability to devise local solutions to difficult and evolving problems. For these

3

reasons, and those articulated by Florida, this Court should affirm the decision of the district court.

## ARGUMENT

### I.  The Second Amendment Allows States To Enact Varied Measures To Promote Gun Safety And Protect Against Gun Violence.

The amici States have long exercised their police power to protect the health, safety, and welfare of their residents.  In fact, "the States possess primary authority for defining and enforcing the criminal law," *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotations omitted), and have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (internal quotations omitted).  These responsibilities include enacting measures to promote safety, prevent crime, and minimize gun violence within their borders.  *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

4

These responsibilities are not diminished by the recognition of Second Amendment rights for law-abiding and responsible citizens. Indeed, as Judge Wilkinson explained in a case addressing Maryland's ban on assault weapons and large-capacity magazines, the Supreme Court's recognition of "the 'right of law-abiding, responsible citizens to use arms in defense of hearth and home,'" did not "abrogate" the States' "core responsibility" of "[p]roviding for the safety of citizens within their borders." *Kolbe v. Hogan*, 849 F.3d 114, 150 (4th Cir. 2017) (en banc) (Wilkinson, J., concurring) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). On the contrary, the Supreme Court in *Heller*— and then again in *McDonald v. City of Chicago*, 561 U.S. 742 (2010)— expressly acknowledged the important role that the States play in protecting their residents from the harms of gun violence.

To begin, *Heller* made clear that the Second Amendment right to keep and bear arms is "not unlimited." 554 U.S. at 595; *see also McDonald*, 561 U.S. at 802 ("No fundamental right—not even the First Amendment—is absolute."). Although government entities may not ban handgun possession by responsible, law-abiding individuals in the home or impose similarly severe burdens on the Second Amendment right,

the States still possess "a variety of tools" to combat the problem of gun violence.  *Heller*, 554 U.S. at 636.  They may, for example, implement measures prohibiting certain groups of individuals from possessing firearms, such as "felons and the mentally ill," or "imposing conditions and qualifications on the commercial sale of arms."  *Id.* at 626-27; *see also Peruta v. Cnty. of San Diego*, 824 F.3d 919, 928 (9th Cir. 2016) (en banc) (noting that the *Heller* Court "emphasized the limited scope of its holding, and underscored the tools that remained available to the District of Columbia to regulate firearms").

In *McDonald*, the Court reiterated that the Second Amendment "by no means eliminates" the States' "ability to devise solutions to social problems that suit local needs and values."  561 U.S. at 785.  Rather, it recognized "that conditions and problems differ from locality to locality."  *Id.* at 783; *see also Friedman v. City of Highland Park*, 784 F.3d 406, 412 (7th Cir. 2015) ("the Constitution establishes a federal republic where local differences are cherished as elements of liberty, rather than eliminated in a search for national uniformity").

Indeed, according to the Federal Bureau of Investigation, a wide variety of factors "affect the volume and type of crime occurring from

place to place," including population density, variations in the youth concentration in the composition of the population, poverty level, job availability, available modes of transportation, climate, criminal justice system policies, and educational and recreational characteristics.[1] These factors, which vary from State to State, produce disparities in the number and characteristics of firearm-related murders and other crimes.[2]  Given these unique conditions and needs, the States must be able to implement varied measures to address gun violence and protect the health and safety of their residents, as both *Heller* and *McDonald* acknowledged.

Multiple circuits have applied these principles to confirm the constitutionality of state and local regulations addressing the purchase and possession of firearms.  In *Friedman*, for instance, the Seventh Circuit upheld a local government's ban on assault weapons and large-capacity magazines, noting that although "*Heller* and *McDonald* set

---

[1]  Fed. Bureau of Investigation, *Uniform Crime Reporting Statistics: Their Proper Use* (May 2017), https://ucr.fbi.gov/ucr-statistics-their-proper-use.  All websites were last visited on October 25, 2021.

[2]  *See, e.g.*, Fed. Bureau of Investigation, *Murder:  Crime in the United States 2018, tbl. 20*, https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/tables/table-20.

limits on the regulation of firearms," they did not "take all questions about which weapons are appropriate for self-defense out of the people's hands." 784 F.3d at 412. As the court explained, "the Constitution establishes a federal republic where local differences are cherished as elements of liberty, rather than eliminated in a search for national uniformity." *Id.*

Likewise, in *Kolbe*, the Fourth Circuit rejected a challenge to Maryland's ban on assault weapons and large-capacity magazines. 849 F.3d at 121. In concurrence, Judge Wilkinson highlighted the need for courts to refrain from relying on *Heller*'s limited holding to "disable[] legislatures from addressing the wholly separate subject of assault weapons suitable for use by military forces around the globe." *Id.* at 150 (Wilkinson, J., concurring). In other words, he did not draw from *Heller* or "the profound ambiguities of the Second Amendment an invitation to courts to preempt this most volatile of political subjects and arrogate to themselves decisions that have been historically assigned to other, more democratic, actors." *Id. Accord, e.g.*, *Pena v. Lindley*, 898 F.3d 969, 979 (9th Cir. 2018) (approving of California's "decision to require new semiautomatic gun models manufactured in-

state to incorporate new technology" because "the state must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems").

This Court should apply these same principles—which build on the States' responsibility to protect the health and safety of their residents and their ability to utilize innovative measures when doing so—to the age restrictions at issue in this case.

## II.    Florida's Age-Based Regulation Is Consistent With Measures Taken By Other States And Upheld By Courts Across The Country.

Florida's decision to regulate the sale of firearms to young people is well within the parameters just discussed. As Florida explains, the challenged statutory provision was enacted to promote public safety and reduce gun violence, including in the context of mass shootings, by preventing the unsupervised acquisition of firearms by those in a high-risk group—people between 18 and 21. Fl. Br. 1-2.

Furthermore, the regulatory mechanisms chosen by Florida to achieve its public safety goals are consistent with those implemented across the country and upheld by the courts. Although the States have reached different conclusions on how best to regulate the sale of, use of,

9

and access to firearms—as they are permitted to do, *see supra* Section I—virtually every State and the District of Columbia has determined that imposing *some* age-based restrictions on the sale or use of firearms is necessary to promote public safety and curb gun violence within its borders.[3]

More specifically, many States have imposed very similar age-based restrictions to those enacted by Florida here.  Nineteen States and the District of Columbia generally prohibit the sale of handguns, long guns, or both to those under 21 (subject, in some cases, to exceptions).[4]  Some of these regulations establish more substantial

---

[3]  Giffords Law Center, *Minimum Age to Purchase and Possess*, https://giffords.org/lawcenter/gun-laws/policy-areas/who-can-have-a-gun/minimum-age/ (collecting state laws that impose a minimum age for purchasing and/or possessing handguns and/or long guns).

[4]  Cal. Penal Code §§ 27505(a), 27510; Conn. Gen. Stat. § 29-34(b); D.C. Code Ann. § 22-4507; Del. Code Ann. tit. 24, § 903; Fla. Stat. § 790.065(13); Haw. Rev. Stat. Ann. § 134-2(a), (d), (h); 430 Ill. Comp. Stat. 65/3(a), 65/4(a)(2); Iowa Code § 724.22(2); Mass. Gen. Laws ch. 140, §§ 130, 131E(b); Md. Code Ann., Pub. Safety § 5-134(b); Mich. Comp. Laws § 28.422(3)(b), (12); Mo. Rev. Stat. § 571.080; Neb. Rev. Stat. §§ 69-2403, 69-2404; N.J. Stat. Ann. §§ 2C:58-3(c)(4), 3.3(c), 6.1(a); N.Y. Penal Law § 400.00(1)(a), (12); Ohio Rev. Code Ann. § 2923.21(A)(2); R.I. Gen. Laws §§ 11-47-35(a)(1), 11-47-37; Vt. Stat. Ann. tit. 13, § 4020; Wash. Rev. Code Ann. § 9.41.240; W. Va. Code § 61-7-10(d).

restrictions than those imposed by section 790.065(13).  For instance,

that law exempts rifles and shotguns sold to law enforcement officers,

correctional officers, and servicemembers.  Fla. Stat. § 790.065(13).  By

contrast, other States have determined that no such exemptions are

appropriate—consistent, again, with their authority to tailor local

regulations to local needs.  And, as another example, some States have

concluded that their public safety interests will be best served by

regulating the possession, as well as the purchase, of firearms by young

people.  To that end, nine States and the District of Columbia have set a

minimum age of 21 to possess certain firearms at all (subject again, in

some cases, to exceptions).[5]

   Moreover, of those States that do not regulate purchase or

possession by those under the age of 21, the overwhelming majority

have nonetheless imposed *some* age restriction on firearm access,

---

[5]  Conn. Gen. Stat. § 29-36f; D.C. Code Ann. § 7-2502.03(a)(1); Haw.
Rev. Stat. Ann. §§ 134-2(a), 134-2(d), 134-4, 134-5; 430 Ill. Comp. Stat.
65/2(a)(1), 65/4(a)(2)(i); Iowa Code § 724.22; Md. Code Ann., Pub. Safety
§ 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv); N.J. Stat. Ann.
§ 2C:58-6.1(b); N.Y. Penal Law § 400.00(1)(a); Wash. Rev. Code Ann.
§ 9.41.240.

whether at 16, 17, 18, or even 19.[6]  All of these States, in other words, have made the judgment that it would best serve public safety to limit firearm access in some manner to those sufficiently mature to use firearms responsibly.

Courts across the country have uniformly upheld regulations enacted by States that limit firearm access to people under the age of 21, as the district court recognized.  *See* App. 225-27 (canvassing cases); Fl. Br. 17-18 & n.9 (same); *Lara v. Evanchick*, No. 20-cv-1582, 2021 WL 1432802, at \*9-10 (W.D. Pa. Apr. 16, 2021) (describing the "established consensus" on this point), *appeal docketed*, No. 21-1832 (3d Cir.).[7]  For instance, both federal and state courts have affirmed the constitutionality of an Illinois statutory scheme that requires parental consent for individuals under 21 to obtain a license to possess firearms. *See Horsley v. Trame*, 808 F.3d 1126, 1134 (7th Cir. 2015) (upholding consent requirement for young adults between the ages of 18 and 20); *In*

---

[6]  Giffords Law Center, *supra* note 3.

[7]  Plaintiffs rely heavily on a Fourth Circuit opinion reaching a contrary conclusion with respect to federal restrictions on handgun purchase, but that court subsequently vacated that opinion as moot.  *See Hirschfeld v. ATF*, 5 F.4th 407 (4th Cir.), *vacated as moot*, No. 19-2250, 2021 WL 4301564 (4th Cir. Sept. 22, 2021).

*re Jordan G.*, 33 N.E.3d 162, 168-69 (Ill. 2015) (upholding portions of aggravated unlawful use of a weapon statute that apply to persons under the age of 21 without the requisite license). Illinois enacted these measures, the Seventh Circuit explained, to promote its longstanding interest in public safety and, more specifically, in protecting residents from firearms violence. *Horsley*, 808 F.3d at 1132.

The Fifth Circuit has similarly rejected a constitutional challenge to Texas statutes that prohibit persons aged 18 to 20 from carrying handguns in public. *Nat'l Rifle Ass'n v. McCraw*, 719 F.3d 338, 347 (5th Cir. 2013). In reaching this conclusion, the court relied on a decision upholding the federal ban on commercial handgun sales to individuals under 21, noting that the goal of both regulations was to restrict the use of and access to firearms by young adults to deter crime and promote public safety. *Id.* (citing *Nat'l Rifle Ass'n v. ATF*, 700 F.3d 185 (5th Cir. 2012)); *see also Powell v. Tompkins*, 926 F. Supp. 2d 367, 378-80 (D. Mass. 2013) (rejecting Second Amendment challenge to Massachusetts minimum-age requirement for public carriage), *aff'd*, 783 F.3d 332 (1st Cir. 2015).

In short, Florida's decision to implement age-based restrictions on the sale of firearms is both consistent with other States' approaches and within the constitutional range.

## III. Florida Has Demonstrated That Its Age-Based Regulations Promote Public Safety And Prevent Gun Violence.

In addition to being consistent with regulations imposed by numerous other States, and upheld by the courts, section 790.065(13) is reasonably related to Florida's compelling interests in promoting public safety and preventing gun violence. Although the district court correctly reasoned that section 790.065(13) does not burden conduct protected by the Second Amendment because it is a longstanding and presumptively lawful regulatory measure, App. 225-27, plaintiffs nonetheless urge the Court to strike down the law using either a so-called "text, history, and tradition standard" or, failing that, strict scrutiny, Pls'. Br. 31-46. As Florida suggests, Fl. Br. 22-24, if the Court concludes that the statutory scheme implicates the Second Amendment, it would be appropriate to remand to allow the lower court to consider the parties' evidence on this point in the first instance. If, however, the Court reaches plaintiffs' arguments on this point, it should reject them.

14

At most, intermediate scrutiny should govern plaintiffs' claim, as Florida explained below, Doc. 107 at 19-22. And plaintiffs are likewise wrong to suggest that, if intermediate scrutiny applies, Florida has not satisfied its burden. Pls.' Br. 39-43.

First, plaintiffs are incorrect to suggest that a standard more heightened than intermediate scrutiny might apply here. Although this Court has not yet resolved a case under "step two" of the *Heller* analysis, other circuits have held that "the appropriate level of scrutiny 'depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right,'" *Nat'l Rifle Ass'n v. ATF*, 700 F.3d at 205 (quoting *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010)). And while these circuits have applied strict scrutiny to statutes that threaten "right[s] at the core of the Second Amendment," they have universally applied intermediate scrutiny to statutes imposing lesser burdens on protected conduct, *Nat'l Rifle Ass'n v. ATF*, 700 F.3d at 195—including those that, like section 790.065(13), impose "conditions and qualifications on the commercial sale of arms," *Heller*,

554 U.S. at 626-27 & n.26.[8]  Indeed, to amici's knowledge, every court to

have considered the constitutionality of minimum-age restrictions of

this sort under "step two" of the *Heller* analysis, *see supra* pp. 12-14, has

applied intermediate scrutiny.  This Court should follow that line of

authority here.

Plaintiffs also err in arguing that Florida has not met its burden

under intermediate scrutiny—including, at the outset, by misstating

what that burden entails.  Plaintiffs insist that the Court must assess

whether section 790.065(13) is "narrowly tailored to serve a significant

government interest."  Pls.' Br. 39.  But plaintiffs cite no Second

Amendment case applying that standard.  Instead, courts ask whether

the government can "show a reasonable fit between the law and an

important government objective."  *Nat'l Rifle Ass'n v. ATF*, 700 F.3d at

205; *accord, e.g.*, *Harley v. Wilkinson*, 988 F.3d 766, 768 (4th Cir. 2021)

---

[8]  The Court should thus reject plaintiffs' invitation to analyze section
790.065(13) solely based on the Second Amendment's "text, history, and
tradition."  Pls'. Br. 31-32.  As the Fifth Circuit has explained, the
conclusion that means-ends scrutiny is an appropriate way to analyze
Second Amendment claims follows from "the language of *Heller*."  *Nat'l
Rifle Ass'n v. ATF*, 700 F.3d at 197; *see also, e.g.*, *N.Y. State Rifle &
Pistol Ass'n v. Cuomo*, 804 F.3d 242, 254 & n. 49 (2d Cir. 2015)
(collecting cases applying means-ends scrutiny).

(same); *Drake v. Filko*, 724 F.3d 426, 436 (3d Cir. 2013) (same); *see also Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1244 (11th Cir. 2003) ("Under [intermediate scrutiny], a preference may be upheld so long as it is substantially related to an important governmental objective." (internal quotation marks and citation omitted)).

Nor is it correct, as plaintiffs argue, that Florida must show that a statute "*will actually* further [its] stated interests" to withstand intermediate scrutiny. Pls' Br. 40 (emphasis added). Such an approach would hamstring state legislatures by placing them in the difficult position of showing that a yet-to-be-enacted measure would definitively resolve the problem that the legislatures seek to address. In other words, the States would be rendered unable to innovate, or even tweak past legislative models, when faced with difficult and evolving problems like gun violence and mass shootings. Such a rule would thus directly interfere with the States' right to exercise their police power "to devise solutions to social problems that suit local needs and values." *McDonald*, 561 U.S. at 785. As discussed, *see supra* Section I, permitting state variation on measures addressing gun violence was a central emphasis of both *Heller* and *McDonald*.

Moreover, imposing such a requirement would nullify state legislatures' ability to make predictive judgments, which are an important component of lawmaking. In fact, courts have held that they "must accord substantial deference to the predictive judgments of the legislature." *Kolbe*, 849 F.3d at 140 (citing *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994)). Whereas the legislature is responsible for "weigh[ing] conflicting evidence and mak[ing] policy judgments," the courts' "obligation is simply 'to assure that, in formulating its judgments, the legislature has drawn reasonable inferences based on substantial evidence.'" *Id.* (quoting *Turner*, 512 U.S. at 666); *see also Pena*, 898 F.3d at 979 (legislatures are "not obligated, when enacting their statutes, to make a record of the type that an administrative agency or court does to accommodate judicial review").

When the correct legal and evidentiary framework is applied, Florida has presented evidence that is more than sufficient to meet its burden. To satisfy intermediate scrutiny, a State may rely on any evidence "reasonably believed to be relevant" to substantiate the link between its interests and the means chosen by its legislature. *Daytona Grand, Inc. v. City of Daytona Beach, Fla.*, 490 F.3d 860, 875 (11th Cir.

2007); *accord City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 51-52 (1986).  That evidence may include the enactment's legislative history, but it also may include "evidence gathered by other localities" or "evidence described in a judicial opinion."  *Daytona Grand*, 590 F.3d at 875.  Here, Florida set forth ample evidence from each of those categories, including legislative history, statistical analyses, and social science evidence.  Doc. 107 at 24-29.

That evidence demonstrates that section 790.065(13) is related to Florida's interests in public safety and crime prevention, especially with respect to mass shootings.  Florida showed through legislative history and recent statistics that young adults between the ages of 18 and 20 commit a disproportionately large number of violent crimes.  Doc. 107 at 25-16.  And Florida likewise explained that it had experienced increasingly frequent and deadly mass shootings, that the vast majority of guns used in mass shootings are procured from dealers or other legal sources, and that a large proportion of those shootings were committed by young adults.  *Id.* at 27-28.

This evidence more than suffices to show the connection between restricting firearm access to persons under 21 and the state interests in

public safety and the prevention of violence. In fact, numerous courts across the country have relied on similar evidence in upholding age-based restrictions on the sale and use of, or access to, firearms. *See, e.g.*, *Horsley*, 808 F.3d at 1133 (citing studies and data on "persons under 21 and violent and gun crimes," as well as scholarly research on development through early adulthood); *Nat'l Rifle Ass'n v. McCraw*, 719 F.3d at 348 ("the record in this case emphasize[s] that those under 21 years of age are more likely to commit violent crimes with handguns than other groups"); *Nat'l Rifle Ass'n v. ATF*, 700 F.3d at 206 ("Congress found that persons under 21 tend to be relatively irresponsible and can be prone to violent crime, especially when they have easy access to handguns."). If the Court reaches the question whether the challenged measure satisfies intermediate scrutiny, it should hold that it easily does.

## CONCLUSION

For these reasons, the Court should affirm the judgment below.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

20

JANE ELINOR NOTZ
Solicitor General

/s/ Alex Hemmer
ALEX HEMMER
Deputy Solicitor General
100 West Randolph Street
Chicago, Illinois 60601
(312) 814-5526
alex.hemmer@ilag.gov

ROB BONTA
*Attorney General*
*State of California*
300 South Spring St., Suite 1702
Los Angeles, CA 90013

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

KARL A. RACINE
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

CLARE E. CONNORS
*Attorney General*
*State of Hawaii*
425 Queen Street
Honolulu, HI 96813

BRIAN E. FROSH
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

MAURA HEALEY
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

<div style="display:flex">
<div>

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 MLK Blvd.
St. Paul, MN 55155

HECTOR BALDERAS
*Attorney General*
*State of New Mexico*
Post Office Drawer 1508
Santa Fe, NM 87504

JOSHUA H. STEIN
*Attorney General*
*State of North Carolina*
114 W. Edenton Street
Raleigh, NC 27603

JOSH SHAPIRO
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square
Harrisburg, PA 17120

THOMAS J. DONOVAN, JR.
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
1125 Washington St. SE
Olympia, WA 98504

October 25, 2021

</div>
<div>

ANDREW J. BRUCK
*Acting Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
The Capitol
Albany, NY 12224

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

MARK R. HERRING
*Attorney General*
*Commonwealth of Virginia*
202 North 9th Street
Richmond, VA 23219

</div>
</div>

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because it contains 3,907 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirement of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

/s/ Alex Hemmer
ALEX HEMMER

October 25, 2021

# CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2021, I electronically filed the foregoing Brief of Amici Curiae Illinois et al. with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Alex Hemmer
ALEX HEMMER