**No. 21-12314**

In the

# United States Court of Appeals
## for the Eleventh Circuit

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ET AL.,**

*Plaintiffs-Appellants*,

**v.**

**RICK SWEARINGEN, in his official capacity as Commissioner of the Florida Department of Law Enforcement,**

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of Florida
Case No. 4:18-cv-00137-MW-MAF

### APPELLANTS' REPLY BRIEF

John Parker Sweeney
James W. Porter, III
Marc A. Nardone
Connor M. Blair
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Telephone: (202) 393-7150
jsweeney@bradley.com

*Counsel for Appellants*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

I certify that no person or entity with an interest in the outcome of this case

was omitted from the Certificates of Interested Persons previously filed in this case.

Dated: November 8, 2021　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ John Parker Sweeney*
　　　　　　　　　　　　　　　　　　　John Parker Sweeney
　　　　　　　　　　　　　　　　　　　*Counsel for Appellants*

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................1

ARGUMENT ...................................................................................................4

   I. Appellee fails to demonstrate that law-abiding, responsible young
      adults have no Second Amendment rights..........................................4

     A.  Appellee fails to demonstrate that the Ban is presumptively lawful. ..........4

     B.  Even if the Ban were presumptively lawful, this presumption is
         rebuttable and is rebutted in this case. .........................................................9

     C.  Appellee fails to demonstrate that the Ban is consistent with the
         Second Amendment's text, history, and tradition.....................................11

       1.The Ban is not consistent with the Second Amendment's text or
         Founding Era history and tradition............................................................11

       2.Appellee fails to demonstrate that the Ban is consistent with
         subsequent history and tradition. ...............................................................13

         a. The Ban is not consistent with the 19th Century sources cited by
           Appellee. ...................................................................................................13

         b. The Ban is not consistent with the current federal or Florida laws
           cited by Appellee. .....................................................................................18

  II.  This Court should not remand this case but should hold as a matter
      of law that the Ban is unconstitutional per se and fails any level of
      heightened scrutiny.................................................................................20

  III.  Appellee fails to demonstrate that the Ban does not burden a
      fundamental right, or that it survives rational basis let alone strict
      scrutiny...................................................................................................24

CONCLUSION...............................................................................................26

CERTIFICATE OF COMPLIANCE.......................................................28

CERTIFICATE OF SERVICE ....................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Williams*,
  104 N.E. 659 (Ill. 1914) ...................................................................15

*Aymette v. Tennessee*,
  21 Tenn. 154 (1840) ........................................................................17

*Bassett v. Bassett*,
  521 P.2d 434 (Okla. Civ. App. 1974) ...............................................15

*Blackledge v. Blackledge*,
  866 F.3d 169 (3d Cir. 2017) ............................................................21

*Boyes v. Shell Oil Prods. Co.*,
  199 F.3d 1260 (11th Cir. 2000) .......................................................21

*Connor v. Covil Corp.*,
  996 F.3d 143 (4th Cir. 2021) ...........................................................22

* *Craig v. Boren*,
  429 U.S. 190 (1976) ....................................................................9, 23

* *District of Columbia v. Heller*,
  554 U.S. 570 (2008) .................................................................*passim*

*Edenfield v. Fane*,
  507 U.S. 76 (1993) .............................................................................7

* *Gary v. City of Warner Robins*,
  311 F.3d 1334 (11th Cir. 2002) .......................................................24

* *GeorgiaCarry.Org, Inc. v. Georgia*,
  687 F.3d 1244 (11th Cir. 2012) ..................................................11, 19

*Georgia Power Co. v. Teleport Commc'ns Atlanta, Inc.*,
  346 F.3d 1033 (11th Cir. 2003) .......................................................10

iv

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ..........................................................................20

*Hirschfeld v. BATFE*,
    14 F.4th 322 (4th Cir. 2021) .............................................................................5

\* *Hirschfeld v. BATFE*,
    5 F.4th 407 (4th Cir. 2021) ....................................................................*passim*

*Kanter v. Barr*,
    919 F.3d 437 (7th Cir. 2019) .............................................................................25

\* *McDonald v. City of Chicago*,
    561 U.S. 742 (2010).................................................................................9, 11

\* *Moore v. Madigan*,
    702 F.3d 933 (7th Cir. 2012) ............................................................................11

*Morel v. Sabine Towing & Transp. Co., Inc.*,
    669 F.2d 345 (5th Cir. 1982) ............................................................................21

*NRA v. BATFE*,
    700 F.3d 185 (5th Cir. 2012) ............................................................................18

*Parman v. Lemmon*,
    244 P. 227 (Kan. 1925).....................................................................................18

*Reisse v. Clarenbach*,
    61 Mo. 310 (1875) ...........................................................................................15

*Scott v. United States*,
    890 F.3d 1239 (11th Cir. 2018) .......................................................................10

*Se. Promotions Ltd. v. Conrad*,
    420 U.S. 18 (1975).............................................................................................9

*Skye v. Maersk Line Corp.*,
    751 F.3d 1262 (11th Cir. 2014) .......................................................................21

*Tennessee v. Callicutt*,
    69 Tenn. 714 (1878)...............................................................................16, 17

v

*Travelers Prop. Cas. Co. of Am. v. Moore,*
    763 F.3d 1265 (11th Cir. 2014) ........................................................................15

*United States v. Blakeney,*
    44 Va. 405 (1847) ....................................................................................17, 18

*United States v. Dugan,*
    657 F.3d 998 (9th Cir. 2011) ..................................................................................7

*United States v. Focia,*
    869 F.3d 1269 (11th Cir. 2017) ...............................................................................5

*United States v. Masciandaro,*
    638 F.3d 458 (4th Cir. 2011) ................................................................................21

* *United States v. Rozier,*
    598 F.3d 768 (11th Cir. 2010) .....................................................................9, 10, 24

*United States v. Seay,*
    620 F.3d 919 (8th Cir. 2010) ..................................................................................7

* *United States v. White,*
    593 F.3d 1199 (11th Cir. 2010) .......................................................................7, 9, 10

*Washington v. Glucksberg,*
    521 U.S. 702 (1997).................................................................................................2

**Statutes**

1 Ky. Acts 242 ......................................................................................................15

16 Del. Laws 716 (1881) .....................................................................................15

1856 Ala. Laws 17 ...............................................................................................15

1856 Tenn. Pub. Acts 92 .....................................................................................15

1876 Ga. Laws 112 ..............................................................................................15

1878 Miss. Laws 175 ...........................................................................................15

1881 Ill. Laws 73 .................................................................................................15

1883 Kan. Sess. Laws 159 ...................................................................................15

1883 Mo. Laws 76 ................................................................15

1883 vol. I Wis. Sess. Laws 290 .........................................15

1884 Iowa Acts 86 ...............................................................15

1893 N.C. Sess. Pub. Laws 468 ..........................................15

1897 Reg. Sess. Tex. Gen. Laws 221 ..................................15

**Other Authorities**

Brief of Alabama and 21 other States as Amici Curiae in Support of
Petitioners, *Nat'l Rifle Ass'n of America v. Bureau of Alcohol,
Tobacco, Firearms, and Explosives*, No. 13-137 (2013) .........................2, 12, 13

David B. Kopel & Joseph G.S. Greenlee, *History and Tradition in
Modern Circuit Cases on the Second Amendment Rights of Young
People*, 43 S. Ill. U. L.J. 119 (2018)............................................14, 15

Federal Bureau of Investigation, *2018: Crime in the United States,
Arrests by Sex, 2018*...................................................................8

Madison Lo, *A Domestic Violence Dystopia: Abuse Via the Internet of
Things and Remedies Under Current Law*, 109 Cal. L. Rev. 277
(2021) ...........................................................................................8

Sarah Cohen, Rebecca R. Ruiz & Sarah Childress, *Departments Are
Slow to Police Their Own Abusers*, N.Y. Times, Nov. 23, 2013 ........................8

Thomas M. Cooley, *The General Principles of Constitutional Law in
the United States of America* (1880)..................................................12

Thomas M. Cooley, *Treatise on Constitutional Limitations* (5th ed.
1883) ........................................................................................16, 17

U.S. Department of Justice, Bureau of Justice Statistics, *Household
Poverty and Nonfatal Violent Victimization, 2008-2012* .....................................8

U.S. Department of Justice, Office of Juvenile Justice and
Delinquency Program, Statistical Briefing Book, *Law Enforcement
and Juvenile Crime* ....................................................................8

U.S. Const. amend I ...............................................................................16

U.S. Const. amend II.........................................................................*passim*

U.S. Const. amend. IV .........................................................................16

U.S. Const. amend. XIV ..........................................................................4

**INTRODUCTION**

Appellee does not dispute the dispositive issues demonstrating that Section 790.065(13) of Florida Statutes (the "Ban") is unconstitutional under the Second Amendment:

- Law-abiding, responsible adults have the right to purchase a firearm guaranteed by the Second Amendment.

- 18-to-20-year-old young adults are adults.

- The Ban prohibits law-abiding, responsible young adults from purchasing firearms.

- A ban on protected conduct is per se unconstitutional and cannot survive any level of heightened scrutiny.

The Ban therefore violates the Second Amendment.

To avoid this result, Appellee asks this Court to hold that the Ban does not ban protected conduct because law-abiding, responsible young adults have no Second Amendment rights. Appellee argues that all young adults as a group are like those relatively few individual adults who have been adjudicated felons or mentally ill and are no longer considered law-abiding and responsible. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), and this Court's Second Amendment jurisprudence foreclose Appellee's argument. Florida may not ban law-abiding,

1

responsible citizens from exercising Second Amendment rights based solely on their age.

Appellee also argues that the Ban is consistent with the Second Amendment's history and tradition because it is analogous to other, far less severe restrictions on minors' ability to purchase handguns or carry firearms. But none of these go so far as to ban young adults from purchasing any firearm. The few outlier laws cited by Appellee cannot negate the longstanding tradition allowing young adults to purchase firearms.

Florida previously argued to the Supreme Court the opposite of what it now argues to this Court. *See* Brief of Alabama and 21 other States as Amici Curiae in Support of Petitioners, *Nat'l Rifle Ass'n of America v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, No. 13-137 (2013) (hereinafter "States Amicus"), attached as Exhibit 1, at 8 (asking the Supreme Court to grant certiorari and strike down the federal law preventing young adults from purchasing handguns from federally-licensed firearm dealers). The then-Florida Attorney General joined the States Amicus, agreeing that "adults aged 18, 19, and 20 should have th[e] [right to keep and bear arms]" and that their right to purchase firearms "is guaranteed to them by the federal Constitution." *Id*. at 1–2.

Fundamental rights are immutable and cannot be subject to political whim. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) ("By extending

constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action."). Florida got it right the first time. The right of young adults to purchase firearms is guaranteed by the Second Amendment and cannot be infringed.

Appellee also asks to delay this case even further by remanding for the District Court to resolve the parties' *Daubert* motions and analyze whether the Ban survives heightened scrutiny. A remand is unnecessary because the Ban is precisely the type of wholesale destruction of the right that *Heller* held fails any level of heightened scrutiny no matter what expert testimony is admitted. The parties' proffered expert testimony and the District Court's heightened scrutiny analysis are unnecessary for the Court to resolve this case on its merits.

A remand is also unnecessary because the District Court has already forecasted that the Ban cannot survive even intermediate scrutiny because it is a "blunt instrument," App. 230 (Order, at 43), that likely does not "prevent tragedies like the one at Marjory Stoneman Douglas High School," App. 232 (Order, at 45). Appellee's proffered expert testimony cannot narrowly tailor the Ban and does not provide evidence that the Ban advances public safety. Remand is a transparent attempt to delay resolution of important constitutional questions, Opp., at i (Statement Regarding Oral Argument), raised by Florida's destruction of its young adults' Second Amendment right to purchase firearms.

3

Appellee also does not dispute the dispositive issues that demonstrate the Ban's unconstitutionality under the Fourteenth Amendment right to equal protection of the law. Appellee does not dispute that the Ban involves young adults' fundamental Second Amendment rights, warranting strict scrutiny analysis. Appellee does not argue that the Ban survives strict scrutiny. Moreover, Appellee does not dispute that the Ban is likely to diminish public safety and is internally inconsistent. The evidence demonstrates that the Ban is not even rationally related to Florida's interest in reducing school shootings.

## ARGUMENT

### I. Appellee fails to demonstrate that law-abiding, responsible young adults have no Second Amendment rights.

#### A. Appellee fails to demonstrate that the Ban is presumptively lawful.

The Second Amendment's text, history, and tradition determine who has Second Amendment rights. Appellee does not dispute this, nor does he dispute that adults have the right to purchase firearms guaranteed by the Second Amendment, that Florida citizens aged 18-to-20 are adults, or that a ban on protected conduct is per se unconstitutional under *Heller*. Instead, he attempts to end-run *Heller*'s analysis by arguing that the Ban "does not burden conduct protected by the Second Amendment" because it is analogous to the presumptively lawful prohibitions on individuals convicted of a felony (or violent domestic abuse) or adjudicated mentally ill. Opp., at 7–8 ("The question here is whether [the Ban] is such a regulation.").

4

*Heller* made clear that the Second Amendment distinguishes the law-abiding and responsible from those who are not. *Heller*, 554 U.S. at 635. Appellee asks this Court to hold that all law-abiding, responsible young adults are inherently akin to those relatively few adults who are adjudicated felons (or violent domestic abusers) or mentally ill and are barred from exercising fundamental Second Amendment rights. The Supreme Court has never held that only those over age 20 possess Second Amendment rights. Had the Court intended to exclude a large category of law-abiding, responsible adults from exercising this fundamental right, it would have said so explicitly. *See id.* at 626–27 (listing categories of individuals who can be prohibited from exercising Second Amendment rights because they were adjudicated not law-abiding or responsible).

Appellee asks this Court to create a broad, new exception to the Second Amendment's protections, arguing that "categories of people that may pose a risk to public safety" may be banned from purchasing a firearm and thereby exercising their fundamental rights. Opp., at 20.[1] No circuit court has recognized such a prohibition as presumptively lawful. *See Hirschfeld v. BATFE*, 5 F.4th 407, 416 (4th Cir. 2021) (collecting circuit court case law), *vacated as moot* 14 F.4th 322 (4th Cir. 2021)

---

[1] Appellee does not dispute that the Ban is not a mere commercial regulation. Whereas a ban "completely prohibit[s] [an individual] from selling or buying firearms," a commercial regulation "only minimally affects the ability to acquire a firearm." *United States v. Focia*, 869 F.3d 1269, 1286 (11th Cir. 2017). *See* Appellants' Br., at 28–29.

5

(plaintiff turned 21, mooting her challenge to federal law banning young adults from purchasing handguns from federally licensed firearm dealers).

Appellee's argument is premised upon the incorrect inference that, because the government may prohibit firearms for individuals adjudicated as not law-abiding or responsible, the government may now prohibit broad categories of people who have not yet been and likely never will be so adjudicated. Opp., at 20. Appellee's inference expands *Heller*'s narrow exceptions for felons and the mentally ill into any and all "categories of people that may pose a risk to public safety." *Compare id.* ("*Heller* permits legislatures to regulate . . . categories of people that may pose a risk to public safety.") *with Heller*, 554 U.S. at 627–28, 635 (distinguishing "felons and the mentally ill" from "law-abiding, responsible citizens"). Appellee's position would confer unfettered discretion upon the government to determine whether citizens can exercise fundamental rights that are guaranteed against government intrusion, turning the concept of constitutionally protected rights on its head. *Heller* rejected Appellee's position when it rejected the argument that protected conduct may be banned if it poses a risk to public safety. *Heller*, 554 U.S. at 636 (Banning protected conduct is a policy choice that is "off the table").

The examples Appellee gives of individuals prohibited from exercising their Second Amendment rights under presumptively lawful prohibitions disproves his argument. Appellee cites convicted felons, convicted armed robbers, convicted tax

evaders, convicted domestic abusers, convicted drug abusers, and individuals adjudicated mentally ill. Opp., at 20. As this Court has demonstrated, not all of these individuals pose a risk to public safety, but all were first adjudicated not law-abiding or responsible. *E.g. United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010). The cases Appellee cites are in accord with *White*. Opp., at 19–20 (citing *White*, 593 F.3d 1199, 1205–06; *United States v. Seay*, 620 F.3d 919, 920, 924 (8th Cir. 2010) (individual banned after "conviction for distribution and possession with intent to distribute marijuana" and noting that the mentally ill are those "committed to mental institutions or adjudicated as a mental defective"); *United States v. Dugan*, 657 F.3d 998, 999–1000 (9th Cir. 2011) (individual banned after convicted of using a controlled substance)).

Appellee cites no other law prohibiting entire categories of people who the government has declared may someday be non-law-abiding or responsible from exercising their rights, because no such law exists. Florida could not, for instance, categorically prohibit from purchasing a firearm anyone losing their job, suffering the loss of a loved one, going through a divorce, or otherwise, in the government's view, potentially posing a risk to public safety. *See, e.g.*, *Edenfield v. Fane*, 507 U.S. 761, 770–71, 773 (1993) (Government may not impose a "flat ban" on solicitations by public accountants on the ground that solicitations "create[] the dangers of fraud, overreaching, or compromised independence."). Nor could Florida prohibit from

7

purchasing a firearm all individuals in a "category of people" that generally commit crime at a higher rate than average: men,[2] African Americans,[3] Native Americans,[4] law enforcement officers,[5] or those in poverty.[6] These laws would be as repugnant as they would be unconstitutional, and Appellee's argument for stripping law-abiding, responsible young adults of their Second Amendment rights is no different.

Appellee's argument also fails because young adults do not pose a significant risk to public safety. The Fourth Circuit recently comprehensively examined the evidence, finding undisputed that, "while 18-to-20-year-olds may commit a disproportionate share of violent crime, an exceedingly small percentage, around 0.3% and definitely less than 1%, of the 13 million young adults in this group commit those crimes." *Hirschfeld*, 5 F.4th at 444–45. "This alone cannot justify restricting

---

[2] Federal Bureau of Investigation, *2018: Crime in the United States, Arrests by Sex, 2018*, https://bit.ly/2YeIdgC.

[3] U.S. Department of Justice, Office of Juvenile Justice and Delinquency Program, Statistical Briefing Book, *Law Enforcement and Juvenile Crime*, https://bit.ly/3BMPlPd.

[4] *Id.*

[5] *See* Madison Lo, *A Domestic Violence Dystopia: Abuse Via the Internet of Things and Remedies Under Current Law*, 109 Cal. L. Rev. 277, 311 (2021) ("40 percent of U.S. police officers admitted to being violent with their spouse or children") (citing Alex Roslin, *Police Wife: The Secret Epidemic of Police Domestic Violence* 6–7 (2015); *see also* Sarah Cohen, Rebecca R. Ruiz & Sarah Childress, *Departments Are Slow to Police Their Own Abusers*, N.Y. Times, Nov. 23, 2013, https://nyti.ms/3bJv81Y (investigation of Florida Police Departments found that "nearly 30 percent of the officers accused of domestic violence were still working in the same agency a year later").

[6] U.S. Department of Justice, Bureau of Justice Statistics, Household Poverty and Nonfatal Violent Victimization, 2018-2012, https://bit.ly/3CPzdxu.

the entire group's rights." *Id*. at 445. As the Supreme Court made clear in *Craig v. Boren*, 429 U.S. 190, 201–02 (1976), the dispositive issue is the percentage of the group that uses an item at issue in an impermissible manner, not the disparity between groups or the total impermissible activity each group commits. Appellee's argument that all young adults pose a public safety risk is disproven by the fact that a miniscule 0.3% of young adults are violent criminals. *See Se. Promotions Ltd. v. Conrad*, 420 U.S. 18 546, 559 (1975) ("[A] free society prefers to punish the few who abuse [their] rights … after they break the law than to throttle them and all others beforehand.").

The government cannot strip the people of their fundamental rights based on nothing more than prejudice and speculation. The Second Amendment is not a second-class right. *McDonald v. City of Chicago*, 561 U.S. 742, 782 (2010) (rejecting the argument that the Second Amendment "differs from all of the other provisions of the Bill of Rights because it concerns the right to possess a deadly implement and thus has implications for public safety").

### B. Even if the Ban were presumptively lawful, this presumption is rebuttable and is rebutted in this case.

Appellee incorrectly argues that this Court's dicta in a case regarding a felon and silence in a case regarding a violent domestic abuser establish a bright line holding that all presumptively lawful regulations are per se constitutional. *See* Opp., at 21 (citing *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010); *White*, 593

9

F.3d at 1206). This Court's narrow dicta and silence in readily distinguishable cases do not prevent this Court from holding that the Ban's presumptive lawfulness may be rebutted. *Scott v. United States*, 890 F.3d 1239, 1257 (11th Cir. 2018) (holding that "[w]e of course are not bound by anything that is mere dictum" and stating that a prior panel's reasoning in dictum need not be followed when the prior case's facts are distinguishable). This Court should follow the reasoned decisions of other circuit courts to have considered whether a law's presumptive lawfulness may be rebutted—all of which hold that it may. *See* Appellants' Br., at 31 n.4. This is especially true here, where the law at issue is not one described by *Heller* as presumptively lawful and is not longstanding or analogous to the presumptively lawful prohibitions described in that decision.

In any event, the Court should hold that any such presumption may be rebutted, *e.g.*, *Georgia Power Co. v. Teleport Commc'ns Atlanta, Inc*., 346 F.3d 1033, 1040 (11th Cir. 2003), and is rebutted. The Ban is categorically different from the laws at issue in *Rozier* and *White* in that it bans a category of people from exercising their Second Amendment right to purchase a firearm who have not been adjudicated and likely never will be adjudicated not law-abiding or responsible. *Supra* 9–10.

10

### C. Appellee fails to demonstrate that the Ban is consistent with the Second Amendment's text, history, and tradition.

Appellee incorrectly argues that the Ban is part of a longstanding historical tradition of government prohibiting young adults from exercising their Second Amendment rights. Opp., at 10–18. Appellee's own evidence rebuts his argument.

### 1. The Ban is not consistent with the Second Amendment's text or Founding Era history and tradition.

Appellee does not dispute that the text of the Second Amendment makes no distinction between young adults and all other adults with respect to the right to keep and bear arms and, concomitantly, the right to purchase them.

Nor does Appellee dispute that Founding Era history and tradition confirm that the Second Amendment protects young adults' right to purchase firearms. Appellee takes no issue with the District Court's finding that there is "no case or article suggesting that, during the Founding Era, any law existed that imposed restrictions on 18-to-20-year-olds' ability to purchase firearms." App. 200–01 (Order, at 13–14). Nor does Appellee dispute that the Founding is "the critical year for determining the amendment's historical meaning," even when analyzing a state law. *Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012) (citing *McDonald*, 561 U.S. at 765, n.14). This Court confirmed that the Founding Era is the critical era, even when analyzing a state law. *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1264–65 (11th Cir. 2012) (focusing the historical analysis on "the pre-existing right

11

codified in the Second Amendment" at the time the "Founding Fathers drafted [it]").

Florida previously agreed that "[t]he most important data points for defining the

Second Amendment right are sources contemporaneous with the Bill of Rights'

ratification in 1791." *See* States Amicus, at 8.

Appellee does not dispute the facts establishing the Founding Era tradition,

including that the age for militia service generally was 18 at the time of the

Founding. Opp., at 24–25; *see also Hirschfeld*, 5 F.4th at 428 & App. 1 & 2 ("Every

militia law near the time of ratification required 18-year-olds to be part of the militia

and bring their own arms.") (collecting authority). Appellee incorrectly argues that

this "subset of male citizens for militia service does not establish that the age of

majority for this purpose was 18." Opp., at 15. Appellee's argument disregards

*Heller*'s holding that "the people, from whom the militia must be taken, shall have

the right to keep and bear arms." *Heller*, 554 U.S. at 617 (quoting Thomas M.

Cooley, *The General Principles of Constitutional Law in the United States of

America* 271 (1880)); *see also id*. at 580 (holding that Second Amendment protects

"persons who are part of a national community or who have otherwise developed

sufficient connection with this country to be considered part of that community").

The text of the Second Amendment and the Founding Era tradition

demonstrate that young adults come within the Second Amendment's protections.

## 2. Appellee fails to demonstrate that the Ban is consistent with subsequent history and tradition.

Appellee argues that the Ban is a "longstanding regulation that is consistent with the Second Amendment['s]" subsequent history and tradition because it is analogous to the few, far less severe restrictions on minors' ability to purchase handguns or carry firearms. Opp., at 10. While there is perhaps a historical tradition of limiting minors' right to purchase handguns, there is no historical tradition of completely banning young adults' right to purchase any firearm.

### a. The Ban is not consistent with the 19th Century sources cited by Appellee.

Appellee relies primarily upon 19th Century laws that prohibited minors from purchasing handguns. Opp., at 7, 12–13. Those laws do not help Appellee because they are not analogous to the Ban and are too few to establish a tradition. If anything, their relative paucity demonstrates that those laws were outliers and not the norm. As Florida previously argued, they "evince nothing about what the Second Amendment means," and reliance on them "[i]s highly questionable at best." *See* States Amicus, at 2, 8 (internal quotation omitted).

No historical law was as severe as the Ban. The Ban prohibits all firearm purchases by young adults, including all private and commercial purchases of handguns and long guns. As the District Court correctly held, no state in the 19th Century "ban[ned] the sale of long guns" to young adults. App. 211 (Order, at 24

13

n.22). The Ban is inconsistent even with Appellee's few outlier examples as well as the 19th Century tradition of allowing young adults to purchase firearms.

The historical outliers Appellee relies upon fail to support the Ban just as the historical laws Justice Breyer relied upon in his *Heller* dissent failed to support D.C.'s ban on handgun possession. Justice Breyer argued that D.C.'s ban was consistent with the Second Amendment's history and tradition because several Founding Era laws burdened but did not ban handgun possession. *See Helle*r, 554 U.S. at 684–85 (Breyer, J., dissenting). The *Heller* majority dismissed these laws as not analogous to D.C.'s ban because they burdened but did not entirely prohibit handgun possession. *Id.* at 631–32. Similarly, the 19th Century laws relied upon by Appellee burdened—but did not ban—minors' right to purchase some types of firearms. None are analogous to the Ban, and this Court should dismiss them just as the *Heller* majority dismissed the laws cited by Justice Breyer in his dissent.

The laws offered by Appellee are also too few to establish a tradition and they "contradict the overwhelming weight of other evidence regarding the right to keep and bear arms . . . ." *See id*. at 632. At the turn of the 20th Century, there were 46 states in the Union. None banned the sale of long guns to young adults. Twenty-seven states had no laws restricting handgun purchases to young adults. David B. Kopel & Joseph G.S. Greenlee, *History and Tradition in Modern Circuit Cases on the Second Amendment Rights of Young People*, 43 S. Ill. U. L.J. 119, 121–31

14

(2018). Five states and D.C. restricted (but only partially) firearm purchasing for those under 21. *See* Appellants' Br., at 11.

The other thirteen states' laws regulating handgun purchasing may not actually have applied to 18-to-20-year-olds. Kopel & Greenlee, *supra,* at 121–31. Those laws restricted the right of minors to purchase handguns but did not define who was a minor.[7] Appellee asks this Court to infer that this undefined term included what are now young adults. Not only is this inference impermissible when assessing the grant of Appellee's motion for summary judgment, *see Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014), it is in several instances demonstrably false. For instance, Appellee cites laws from Illinois, Missouri and Oklahoma, but those states set the age of majority at 21 for men and 18 for women. *See Anderson v. Williams*, 104 N.E. 659, 660 (Ill. 1914); *Reisse v. Clarenbach*, 61 Mo. 310, 313 (1875); *Bassett v. Bassett*, 521 P.2d 434, 435 n.2 (Okla. Civ. App. 1974). Alabama's law applied only to males. 1856 Ala. Laws 17, 17. Those laws do not create a strong tradition even for banning young adults from purchasing handguns, much less all types of firearms.

---

[7] Alabama, 1856 Ala. Laws 17, 17; Tennessee, 1856 Tenn. Pub. Acts 92, 92; Kentucky, 1860 vol. 1 Ky. Acts 242, 245; Georgia, 1876 Ga. Laws 112, 112; Mississippi, 1878 Miss. Laws 175, 175; Missouri, 1883 Mo. Laws 76, 76; Delaware, 16 Del. Laws 716, 716 (1881); Illinois, 1881 Ill. Laws 73, 73; Kansas, 1883 Kan. Sess. Laws 159, 159; Wisconsin, 1883 vol. I Wis. Sess. Laws 290, 290; Iowa, 1884 Iowa Acts 86, 86; North Carolina, 1893 N.C. Sess. Pub. Laws 468, 468; and Texas, 1897 Reg. Sess. Tex. Gen. Laws 221, 221.

Even if the term "minor" in those 19th Century laws included 18-to-20-year-olds, those laws did not prohibit firearm purchases by individuals who had reached the age of majority. Florida, contrary to this history, bans firearm purchase by individuals who have reached the age of majority, which now indisputably is age 18. *See* Appellants' Br., at 23.

Moreover, *Heller* instructs that, even if any law were as severe as the Ban and actually applied to 18-to-20-year-olds, it would be outside the Second Amendment's relevant history and tradition. Like the First and Fourth Amendments, the Second Amendment expressly protects the right of "the people." Young adults are included in "the people" under the First and Fourth Amendments. Appellants' Br., at 18–19. *Heller* made clear that the First, Second, and Fourth Amendment protect the same people. *Heller*, 554 U.S. at 579–80. Law-abiding, responsible young adults therefore come within the Second Amendment's protections. Any law that banned law-abiding, responsible young adults from exercising their right to purchase handguns would be inconsistent with the tradition established by *Heller*.

Appellee relies heavily upon a Thomas Cooley treatise saying that "the State may prohibit the sale of arms to minors." Opp., at 16 (quoting Thomas M. Cooley, *Treatise on Constitutional Limitations* 740 n. 4 (5th ed. 1883)). Cooley's quotation is found in a parenthetical in a footnote in his chapter on "The Police Power of the State." The parenthetical describes a case, *Tennessee v. Callicutt*, 69 Tenn. 714

16

(1878), that Cooley cited to support his observation that states imposed "just restraint[s] of an injurious use of property." *Callicutt* was expressly premised upon *Aymette v. Tennessee*, 21 Tenn. 154 (1840), which *Heller* dismissed as providing an "odd reading of the right [and] is, to be sure, not the one we adopt . . . ." 554 U.S. at 613. Furthermore, the law at issue in *Callicutt* allowed minors to purchase firearms, including pistols, for hunting and for defense while traveling, another example of burdening but not extinguishing the right to purchase.

Appellee's reliance on this quote from a parenthetical is contradicted by Cooley's conclusion in a separate chapter of the same treatise on "the Constitutional Protections to Personal Liberty," which expounded upon "the right of the people to keep and bear arms." There, Cooley did not cite *Callicutt* and concluded: "how far it may be in the power of the legislature to regulate the right [to keep and bear arms] we shall not undertake to say." *Treatise on Constitutional Limitations*, at 427 n. 121. "Happily, there neither has been, nor, we may hope, is likely to be, much occasion for an examination of that question by the courts." *Id*. Cooley did not advance *Callicutt* for the proposition for which Appellee uses it.

Nineteenth and 20th Century case law confirms "that at the age of eighteen, a man is capable intellectually and physically of bearing arms." *United States v. Blakeney*, 44 Va. 405, 418 (1847). This view prevailed in all "States of the Union, perhaps without exception." *Id*. Appellee says that "the Supreme Court of Kansas

17

rejected a constitutional challenge to a law that prohibited giving 'dangerous weapons to minors' including 'any pistol, revolver or toy pistol.'" Opp., at 16 (quoting *Parman v. Lemmon*, 244 P. 227, 228, 231 (Kan. 1925)). Appellee fails to mention that the *Parman* Court, in the same volume of the Pacific Reporter, reversed itself on rehearing, making "the dissenting opinion at the time of the first decision . . . the controlling voice of the court," and holding that "dangerous weapons" could be sold to young adults. *Parman*, 244 P. at 233. *Parman* is in accord with *Blakeney*.

### b. The Ban is not consistent with the current federal or Florida laws cited by Appellee.

The Ban is also not consistent with the federal law that restricts young adults from purchasing handguns from federally-licensed firearm dealers. The case Appellee principally relies on, *NRA v. BATFE*, 700 F.3d 185, 207 (5th Cir. 2012), demonstrates the critical differences between that federal law and the Ban. *BATFE* upheld the federal law under intermediate scrutiny because that law allowed multiple, alternative paths for firearm acquisition, including the private purchase of handguns and the commercial and private purchase of long guns. *Id.* at 209. *BATFE* held that the federal law's relative burden warranted and survived intermediate scrutiny because "unlike the D.C. ban in *Heller*, this ban does not disarm an entire community, but instead prohibits commercial handgun sales to 18-to-20-year-olds— a discrete category." *Id.* at 205. The federal law provides a weak "tradition" because it is not longstanding and was recently ruled unconstitutional by the Fourth Circuit

in a case that was vacated but remains persuasive authority. In *Hirschfeld*, the Fourth Circuit demonstrated that young adults have Second Amendment rights and that the federal prohibition cannot survive strict or intermediate scrutiny. 5 F.4th at 410.

Both the federal and Florida's prohibition against minors (individuals under 18 years of age) purchasing firearms are categorically different than the Ban because they apply only to minor children and not the young adults at issue in this case. Similarly, Florida's concealed carry laws are analyzed under a different body of evidence demonstrating the relevant history, tradition, and precedent than the Ban. *Compare GeorgiaCarry.Org*, 687 F.3d at 1264–65 (right to carry case analyzing relevant historical laws) *with* App. 200–12 (Order, at 13–25) (analyzing a different body of relevant laws). The District Court noted correctly that this case involves only law-abiding, responsible young adults who, but for the Ban, would purchase a firearm to protect themselves, their families, and their homes. For example, "the 20-year-old single mother living on her own [who would] obtain a firearm for self-defense." App. 232–33 (Order, at 45–46).

Appellee supports the Ban with outlier historical evidence that fails to contradict the overwhelming tradition of states and the federal government allowing young adults to purchase firearms. The Ban remains an outlier today. No more than a handful of other states come even close to the breadth of Florida's Ban.

## II. This Court should not remand this case but should hold as a matter of law that the Ban is unconstitutional per se and fails any level of heightened scrutiny.

Remanding this case to the District Court is unnecessary because, as Appellee concedes, this Court may determine as a matter of law whether the Ban is consistent with the Second Amendment's text, history, and tradition. This determination is dispositive of Appellants' Second Amendment claim. *See* Appellants' Br., at 32–33. Appellee blithely dismisses as "amorphous" the dispositive test thrice required and thrice applied by the Supreme Court. Opp., at 9. The Supreme Court's test is both required and dispositive and certainly is not amorphous. As now-Justice Kavanaugh wrote in 2011, *Heller* "set forth fairly precise guidance" to govern Second Amendment analyses:

> Gun bans and gun regulations that are longstanding—or, put another way, sufficiently rooted in text, history, and tradition—are consistent with the Second Amendment individual right. Gun bans and gun regulations that are not longstanding or sufficiently rooted in text, history, and tradition are not consistent with the Second Amendment individual right. Our role as a lower court is simply to apply the test announced by *Heller* to the challenged provisions of D.C.'s new gun laws.

*Heller v. District of Columbia*, 670 F.3d 1244, 1285 (D.C. Cir. 2011) (Kavanaugh, J., dissenting); *see also* Appellants' Br., at 32–33 (Justices Alito, Thomas, Gorsuch, and Barrett agree with *Heller*'s standard). No interest balancing or scrutiny analysis is necessary or permissible. *Heller*, 554 U.S. at 636. This case does not tread on the alleged "vast terra incognita" of the Second Amendment. *United States v.*

20

*Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011). It falls squarely within the four corners of *Heller* and its outcome is dictated by that decision.

For the reasons set forth in Appellants' Opening Brief and above, the Ban is unconstitutional per se because it prohibits protected conduct and is inconsistent with the text, history, and tradition of the Second Amendment right.

A remand is also unnecessary because the heightened scrutiny analysis that Appellee seeks must be decided in Appellants' favor as a matter of precedent. Appellee's argument that the Ban could survive heightened scrutiny "is foreclosed by binding precedent of the Supreme Court, and the judgment in his favor cannot stand as a matter of law." *See Skye v. Maersk Line Corp.*, 751 F.3d 1262, 1267 (11th Cir. 2014). "When the outcome is clear as a matter of law[,] remand is not necessary." *Blackledge v. Blackledge*, 866 F.3d 169, 182 (3d Cir. 2017) (quotation omitted); *see, e.g.*, *Morel v. Sabine Towing & Transp. Co., Inc.*, 669 F.2d 345, 346 (5th Cir. 1982) ("The question presented is a matter of law and a remand solely for its consideration is neither in the interest of justice nor judicial economy."). This is particularly true when this Court would review the District Court's ruling de novo in any event. *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1266 n.13 (11th Cir. 2000) (choosing not to remand because issue would be decided de novo on appeal and stating that a remand would only delay resolution of the case).

*Heller* held that D.C.'s ban on handgun possession "would fail constitutional muster" "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights" because it was a "complete prohibition" of protected activity. *Heller*, 554 U.S. at 628–29. *Heller* made clear that no amount of evidence that D.C.'s ban improved public safety would have changed that holding because bans on protected conduct are per se unconstitutional. *See id.* at 629–30, 636. "The Constitution leaves the District of Columbia a variety of tools for [promoting public safety], including some measures regulating handguns. But the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Id.* (internal citations removed). Appellee does not dispute that "[t]he Ban is materially indistinguishable from the ban at issue in *Heller*." Appellants' Br., at 33. The Ban is a complete prohibition of protected activity. It therefore fails under any level of heightened scrutiny.

For this reason, even if all of Appellee's proffered expert testimony is admitted and all of Appellants' proffered expert testimony is excluded, the Ban fails any level of heightened scrutiny. There is simply no reason to remand so the District Court may rule on the parties' *Daubert* motions. *See, e.g.*, *Connor v. Covil Corp.*, 996 F.3d 143, 148 n.6 (4th Cir. 2021) (declining to remand so district could rule on *Daubert* motion because defendant was entitled to summary judgment regardless of the admissibility of the expert testimony).

Admitting the proffered testimony of Appellee's expert would not change the District Court's assessment that the Ban lacks tailoring and fails to advance public safety enough to survive even intermediate scrutiny. The District Court correctly labeled the Ban a "blunt instrument," App. 230 (Order, at 43), that likely does little to "prevent tragedies like the one at Marjory Stoneman Douglas High School," App. 232 (Order, at 45). Appellee's expert does not opine on the legislature's failure to tailor the Ban. And it is already clear that the Ban, when weighing all inferences in Appellee's favor as the District Court did, has little to no positive impact on public safety. *Id.*

Should the Court conduct a heightened scrutiny analysis, it should hold that the Ban cannot survive even intermediate scrutiny because it is insufficiently tailored under *Craig*, 429 U.S. at 201–02. *See supra* 9–10; Appellants' Br., at 39–42. Appellee does not dispute this. Opp., at 22–23. The Court should also hold that the Ban fails any level of heightened scrutiny because it insufficiently advances public safety. The record is devoid of evidence that the Ban improves or is likely to improve public safety. *See* Appellants' Br., at 12–13; Opp., at 22–23. The Ban does not and is unlikely to improve public safety, as confirmed by the publicly-available documents cited by Appellants' experts, App. 95–96, 155, as well as the evidence comprehensively analyzed in *Hirschfeld*, 5 F.4th at 447–52. Appellee does not dispute this either.

23

**III. Appellee fails to demonstrate that the Ban does not burden a fundamental right, or that it survives rational basis let alone strict scrutiny.**

In its Equal Protection argument, Appellee asserts that no protected class is involved but does not dispute that the Ban involves a fundamental right or that equal protection claims involving fundamental rights warrant strict scrutiny even where no specially protected class is involved. In *Gary v. City of Warner Robins*, this Court held that "[i]f a fundamental right or a suspect class is involved, the court reviews the classification under strict scrutiny" and noted that had the ordinance at issue involved a fundamental right, it would have received strict scrutiny. 311 F.3d 1334, 1337–38 (11th Cir. 2002). Appellee does not dispute that the Ban completely prohibits young adults from exercising the right to purchase firearms, which Appellee also does not dispute is a fundamental personal liberty guaranteed by the Second Amendment.

Appellee also does not dispute that strict scrutiny is required regardless of whether Appellants' Second Amendment challenge is successful. Even if young adults for some reason have lesser Second Amendment protections than other adults, their Second Amendment rights are still implicated. *See Rozier*, 598 F.3d 770–71 ("[A felon's] Second Amendment right to bear arms is not weighed in the same manner as that of a law-abiding citizen."); *see also Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting) (individuals may have lesser Second

24

Amendment protections but they never completely lose their fundamental right). The Ban involves young adults' Second Amendment rights and therefore warrants strict scrutiny.

Appellee does not argue, much less present evidence, that the Ban survives strict scrutiny. The Ban cannot survive even the rational basis test. Not only is the Ban a "blunt instrument" that does not discriminate between law-abiders and those who would commit violent crime, App. 230 (Order, at 43), it will not advance public safety. Appellee does not dispute that by allowing young adults to obtain a firearm exclusively through gift or loan, Florida ensures that no firearm transfer to a young adult goes through the national background check process. It is now impossible to determine if a young adult acquiring a firearm would be prohibited from doing so because of a felony conviction, adjudication of mental illness, or some other basis.

Appellee agrees that the Ban may "wholly eliminat[e]" young adults' access to firearms. Opp., at 27. The District Court discerned that the Ban disarms "the ones who actually need firearms to defend themselves: they are likely independent, likely to live in dangerous neighborhoods, and likely to have families and children of their own." App. 232–33 (Order, at 45–46). Demonstrating that the Ban is not rationally related to its stated purpose and is fundamentally unfair, the District Court asked: "Why should the 20-year-old single mother living on her own be unable to obtain a firearm for self-defense when a 20-year-old living with their parents can easily

25

obtain one?" *Id*. Appellee has no answer this question. By discriminating between young adults privileged enough to be gifted or loaned a firearm from those not so privileged, the Ban negatively impacts the ability of Florida's at-risk individuals to defend themselves, which diminishes public safety.

Appellee proffers no evidence that the Ban is rationally related to achieving Florida's claimed interest in reducing school shootings. Likewise, Appellee does not defend the Ban's internal inconsistency that allows young adults to acquire and possess, but not purchase, a firearm. Appellee instead argues only—without citing authority—that this "is a quintessential legislative judgment that courts should not second-guess . . . ." Opp., at 26. Appellee asks this Court to give the government carte blanche to determine which citizens may exercise their constitutional rights. This the government cannot do.

## CONCLUSION

For the reasons stated above and in Appellants' Opening Brief, Appellants respectfully request that this Court reverse the judgment of the District Court and remand the case with instructions to enter judgment for Appellants.

Dated: November 8, 2021          Respectfully submitted,

                                 /s/ John Parker Sweeney
                                 John Parker Sweeney
                                 James W. Porter, III
                                 Marc A. Nardone
                                 Connor M. Blair
                                 BRADLEY ARANT BOULT CUMMINGS LLP
                                 1615 L Street, NW, Suite 1350
                                 Washington, DC 20036
                                 Telephone: (202) 393-7150
                                 jsweeney@bradley.com

                                 Counsel for Appellants

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies that this Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 6,368 words, exempting those portions excludes by Rule 32(f). The undersigned counsel also certifies that this Brief complies with the typeface and type-style requirements of Eleventh Circuit Rule 32 and Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: November 8, 2021                    Respectfully submitted,

                                           */s/ John Parker Sweeney*
                                           John Parker Sweeney
                                           *Counsel for Appellants*

28

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2021, I filed the foregoing with the Clerk of the Court via CM/ECF, which will electronically serve all counsel of record. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: November 8, 2021                    Respectfully submitted,

                                           */s/ John Parker Sweeney*
                                           John Parker Sweeney
                                           *Counsel for Appellants*

29