No. 21-12314

# In the United States Court of Appeals for the Eleventh Circuit

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., ET AL.,

*Appellants*,

v.

MARK GLASS, IN HIS OFFICIAL CAPACITY AS
COMMISSIONER OF THE FLORIDA DEPARTMENT OF LAW ENFORCEMENT,

*Appellee*.

## APPELLEE'S OPPOSITION TO APPELLANTS' MOTION TO SUBSTITUTE, ADD, OR INTERVENE

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
NO. 4:18-CV-137

ASHLEY MOODY
ATTORNEY GENERAL

HENRY C. WHITAKER
*Solicitor General*
JEFFREY PAUL DESOUSA
*Chief Deputy Solicitor General*
CHRISTOPHER J. BAUM, B.C.S.
*Senior Deputy Solicitor General*
Office of the Attorney General
1 SE 3rd Avenue
Miami, FL 33131
(978) 460-1314; (850) 410-2672 (fax)
*christopher.baum@myfloridalegal.com*
*Counsel for Defendant/Appellee*

*National Rifle Association v. Glass*, No. 21-12314

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURES STATEMENT

Counsel for Mark Glass, in his official capacity as Commissioner of the Florida Department of Law Enforcement, certifies that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3.:

1. Baum, Christopher J., *Counsel for Defendant/Appellee*

2. Bell, Daniel, *Counsel for Defendant/Appellee*

3. Blair, Connor M., *Counsel for Plaintiffs/Appellants*

4. Bradley Arant Boult Cummings LLP, *Counsel for Plaintiffs/Appellants*

5. DeSousa, Jeffrey Paul, *Counsel for Defendant/Appellee*

6. Fant, Radford, *Plaintiff/Appellant*

7. Fitzpatrick, Hon. Martin A., *United States Magistrate Judge*

8. Florida Attorney General's Office

9. Florida Department of Law Enforcement

10. Glass, Mark, in his official capacity as Commissioner of the Florida Department of Law Enforcement, *Defendant/Appellee*

11. Kelsey, Dominic, *Non-party*

12. Nardone, Marc A., *Counsel for Plaintiffs/Appellants*

*National Rifle Association v. Glass*, No. 21-12314

13. National Rifle Association of America, Inc., *Plaintiff/Appellant*

14. Newhall, Timothy, *Counsel for Defendant/Appellee*

15. Percival, James H., *Counsel for Defendant/Appellee*

16. Porter, James W., *Counsel for Plaintiffs/Appellants*

17. Sweeney, John Parker, *Counsel for Plaintiffs/Appellants*

18. Teegen, Elizabeth, *Counsel for Defendant/Appellee*

19. Walker, Hon. Mark E., *United States District Judge*

20. Whitaker, Henry, *Counsel for Defendant/Appellee*

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

        Respectfully submitted.

        /s/ *Christopher J. Baum*
        Christopher J. Baum, B.C.S.
        *Counsel for Appellee*

# INTRODUCTION

Appellants Radford Fant and the National Rifle Association have challenged Florida's law restricting the sale of firearms to those under the age of 21 under the Second Amendment. In their motion, they note that Mr. Fant is about to turn 21 and his claim will then become moot. They also worry that the NRA may lack associational standing to sue. *See* Mot. 6. So their motion requests that the Court permit them to add a brand-new 18-year-old plaintiff, Dominic Kelsey, in Mr. Fant's place, either by substituting the new plaintiff for Mr. Fant under Federal Rule of Appellate Procedure 43(b), or by permitting them to add Mr. Kelsey as a plaintiff alongside the other plaintiffs via other rules. Appellants also seek to supplement the record on appeal with a declaration from Mr. Kelsey.

Florida has no objection to Appellants' shoring up the NRA's associational standing with a declaration submitted for the first time on appeal. But their request to substitute or add Mr. Kelsey as a plaintiff is improper. Federal Rule of Appellate Procedure 43(b) provides for substitution of parties only when a party can no longer continue with the litigation and requires a representative to litigate for him, or when a party transfers its interest in the litigation to another party. Yet Mr. Fant is not proposing that Mr. Kelsey represent him. Nor has Mr. Fant transferred his interest in the outcome of this litigation to Mr. Kelsey. And there is no basis for the unusual step of adding Mr. Kelsey as a party for the first time on appeal—Appellants offer

no reason why the NRA is not fully capable of prosecuting this action, particularly if the Court grants Appellants' unopposed request to supplement the record on appeal.

## ARGUMENT

**I.    Appellants' request to substitute Mr. Kelsey is procedurally improper.**

Appellants ask the Court to substitute Mr. Kelsey for Mr. Fant under Federal Rule of Appellate Procedure 43(b). That rule provides that "[i]f a party needs to be substituted for any reason other than death, the procedure prescribed in Rule 43(a) applies." Rule 43(a), in turn, establishes procedures for substituting a party who has died during the pendency of the action. Rule 43(b) thus does not itself establish a standard for when substitution is appropriate—it simply points to the appropriate procedure to use when substitution is otherwise appropriate.

"The vast majority of rule 43 cases deal with substitution necessitated by the death of a party . . . or substitution necessitated by a change in the person occupying a public office." *TOC Retail, Inc. v. Gulf Coast Oil Co. of Mississippi*, 177 F.3d 978 (5th Cir. 1999). But where, as here, a party invokes the catch-all circumstances covered by Rule 43(b), the Court's authority to substitute parties "is more limited." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1131 (11th Cir. 2019).

2

The Court's authority to substitute parties in those limited circumstances is based on Federal Rule of Civil Procedure 25. *Id.* (citing *Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666, 672 n.10 (11th Cir. 1991), *abrogated on other grounds by Saxton v. ACF Indus., Inc.*, 254 F.3d 959 (11th Cir. 2001)); *see* Fed. R. App. P. 43 advisory committee notes. In turn, Rule 25 allows substitution (other than in cases of death or change in officeholder) only when (1) a party becomes incompetent and appoints a representative to litigate in their stead or (2) when a party transfers its interest in the litigation. Fed. R. Civ. P. 25(b), 25(c). Thus, like Rule 25 in the district court, Rule 43(b) allows substitution on appeal only in circumstances "where a party becomes incompetent or a transfer of interest in the company or property involved in the suit has occurred." *Alabama Power Co. v. I.C.C.*, 852 F.2d 1361, 1366 (D.C. Cir. 1988).

In *Alabama Power*, the seminal case interpreting Rule 43(b), the D.C. Circuit concluded that "[t]he most natural reading of subsection (b) is to permit substitution in similar situations" to cases where a party has died or been removed from office and thus "is incapable of continuing the suit." *Id.*[1] As examples, the court pointed to the "substitution of a landlord for a tenant when the suit involved the premises and

---

[1] Rule 43(b) was amended after *Alabama Power* was decided, but the changes were "intended to be stylistic only," and the "substance of the Rule, therefore, remains the same." *AngioDynamics, Inc. v. Biolitec, Inc.*, 775 F.3d 550, 553 (2d Cir. 2015).

3

rights in the property had reverted to the owner," or the substitution of a subsidiary for a parent company when the patents at issue were assigned to the subsidiary. *Alabama Power*, 852 F.2d at 1366.

Following *Alabama Power*, courts have interpreted Rule 43(b) as allowing courts to swap out an incompetent party for his representative, or to swap out a party who has transferred his interest in the litigation to another party.[2] Yet Appellants do not contend that Mr. Fant is about to become incompetent or that Mr. Kelsey will serve as Mr. Fant's representative. And Appellants do not suggest that Mr. Fant's interest in this lawsuit has been transferred to Mr. Kelsey.

## II. Appellants' request to add Mr. Kelsey as a plaintiff should be denied.

Appellants next seek to add Mr. Kelsey as a plaintiff, under either Rule 21 or Rule 24 of the Federal Rules of Civil Procedure. Neither of those suggestions works.

1. As relevant here, Rule 21 says: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party."

---

[2] *See*, *e.g.*, *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 893 (Fed. Cir. 2019) (allowing substitution of successor in interest in patents); *Olaplex, Inc. v. L'Oreal USA, Inc.*, 845 F. App'x 943, 948-49 (Fed. Cir. 2021) (similar); *Maier v. Lucent Techs., Inc.*, 120 F.3d 730, 733 n.1 (7th Cir. 1997) (substituting in former subsidiary to which interest in case had passed); *Fid. & Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P.*, 25 F.3d 484, 486 n.3 (7th Cir. 1994) (similar); *3WL, LLC v. Master Prot., LP*, 851 F. App'x 4, 6 (9th Cir. 2021) (substituting in assignee of interest in litigation); *Pilling v. Virginia Prop. & Cas.*, 95 F. App'x 126, 127-28 (6th Cir. 2004) (similar).

4

Appellants do not contend that there has been any misjoinder here. Instead, they seek to substitute a party. But "[n]othing on the face of Rule 21 allows substitution of parties"; "[t]he rule by its terms creates means to cure '[m]isjoinder of parties.'" *Sable Commc'ns of California Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 191 n.13 (9th Cir. 1989). For example, "[a]n appellate court has the power under Rule 21 to rescue an otherwise valid judgment by dismissing non-diverse parties." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1343 (11th Cir. 2011) (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832-37 (1989)). But the rule is "not designed to swap in new plaintiffs for the sake of securing a judicial determination on the merits where the original plaintiffs no longer have a stake in the outcome." *Bain v. California Tchrs. Ass'n*, 891 F.3d 1206, 1216 (9th Cir. 2018). In particular, Rule 21 was "not enacted as a means for a party to avoid dismissal on mootness grounds." *Fox v. Bd. of Trustees of the State Univ. of New York*, 148 F.R.D. 474, 484 (N.D.N.Y. 1993), *aff'd*, 42 F.3d 135 (2d Cir. 1994). If it were, "no case would ever become moot because a party who no longer had the requisite personal stake in the litigation . . . would only have to move under Rule 21 for substitution of a party who could satisfy the requirement," and "[t]hat was not the purpose underlying the adoption of Rule 21." *Id.*

5

Appellants point to *Rogers v. Paul*, 382 U.S. 198 (1965) (per curiam), in which the Supreme Court granted a motion to add additional students as plaintiffs in a desegregation case where the named plaintiffs had either graduated or were about to graduate. But unlike this case, *Rogers* was a class action, and the new plaintiffs (younger students) were "members of the class." *Id.* at 199; *see Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) (explaining that "a live controversy may continue to exist" in a class-action case "even after the claim of the named plaintiff becomes moot"). Appellants also cite *Mullaney v. Anderson*, 342 U.S. 415 (1952), where the plaintiffs (a union and its secretary-treasurer) were "authorized by the nonresident union members to bring th[e] action in their behalf." *Id.* at 417. When defendants challenged the original plaintiffs' standing for the first time in the Supreme Court, plaintiffs moved to add the nonresident union members, which "merely pu[t] the principal, the real party in interest, in the position of his avowed agent." *Id.* This case does not present anything like those "rar[e] . . . special circumstances." *Id.*

Moreover, that Mr. Fant's claims may well become moot does not mean that the NRA's claims will become moot. Thus, even if impending mootness were a sufficient reason to add a party on appeal under Rule 21, it does not provide authority to do so here.

6

2. Nor is Mr. Kelsey entitled to intervene on appeal. Appellants are incorrect that Federal Rule of Civil Procedure 24 governs appellate intervention—courts do not "apply a liberal policy in favor of intervention" (Mot. 11) on appeal. *See Cook Cty., Illinois v. Texas*, 37 F.4th 1335, 1342 (7th Cir. 2022) (noting that "the standards for district court intervention under Rule 24 and appellate intervention are different" (citing *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1010 (2022))). Instead, "[a] court of appeals may, but only in an exceptional case for imperative reasons, permit intervention where none was sought in the district court." *Hall v. Holder*, 117 F.3d 1222, 1231 (11th Cir. 1997); *see Richardson v. Flores*, 979 F.3d 1102, 1104 (5th Cir. 2020) (explaining that "motions to intervene on appeal are reserved for truly exceptional cases"). Because decisions by district courts regarding permissive intervention are subject to review only for abuse of discretion, if courts of appeals "analyzed motions to intervene on appeal using the same framework . . . , litigants would effectively have *de novo* review of their intervention motion." *Richardson*, 979 F.3d at 1105. So "there must be a steep threshold for allowing intervention on appeal." *Id.*

Recently, the Supreme Court addressed whether a state attorney general should be permitted to intervene on appeal to defend a statute. *Cameron*, 142 S. Ct. at 1010. Although the Court cautioned that it was "not attempt[ing] to set out a

7

general rule governing the right of non-parties . . . to move for appellate intervention," *id.*, the case is nevertheless instructive. The Court set forth some of the factors it has previously considered, among them the "'policies underlying intervention' in the district courts, including the legal 'interest' that a party seeks to 'protect' through intervention on appeal." *Id.* (citations omitted). "Timeliness is an important consideration" as well; it is "to be determined from all the circumstances," and particularly relevant is whether a party seeks to intervene "as soon as it became clear" that their interests "'would no longer be protected' by the parties in the case." *Id.* at 1012. The Court also considered prejudice to the existing parties. *Id.* at 1013.

This case is quite unlike *Cameron*. There, the Court held that a state attorney general had asserted a "substantial legal interest" in seeking to defend a state law when no one else would. 142 S. Ct. at 1010. Here, however, the NRA is available to protect Mr. Kelsey's interests in this litigation. The NRA has asserted associational standing to sue in this case and Florida has not challenged the NRA's standing in that regard. Indeed, the NRA premises its associational standing on the fact that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Mot. 7-8. If Mr. Kelsey is set on "vindicat[ing] his Second Amendment rights individually" (Mot. 17), he should do so by filing his own lawsuit.

8

### III. Appellee does not oppose supplementation of the record with Mr. Kelsey's declaration.

Finally, Appellants move to supplement the record on appeal with material not presented to the district court—Mr. Kelsey's declaration. Appellee does not oppose supplementation of the record with that declaration. *See Ross v. Kemp*, 785 F.2d 1467, 1474-75 (11th Cir. 1986) (describing the Court's inherent equitable authority to supplement the record on appeal).

### CONCLUSION

For these reasons, Appellants' motion to substitute, add, or intervene should be denied. Appellee does not oppose Appellants' motion to supplement the record.

Respectfully submitted.

ASHLEY MOODY
ATTORNEY GENERAL

/s/ *Christopher J. Baum*
Christopher J. Baum, B.C.S.
*Senior Deputy Solicitor General*
Office of the Attorney General
1 SE 3rd Ave, Suite 900
Miami, FL 33131
(978) 460-1314
christopher.baum@myfloridalegal.com

*Counsel for Appellee*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been furnished by electronic service via CM/ECF on this 13th day of October, 2022, to all parties required to be served.

/s/ *Christopher J. Baum*
Christopher J. Baum, B.C.S.

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limits of Fed. R. App. P. 27(d)(2)(A) because this document contains 1,972 words.

2. This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

<i>/s/ Christopher J. Baum</i><br>
Christopher J. Baum, B.C.S.