No. 21-12314

In the
# United States Court of Appeals
# for the Eleventh Circuit

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.,
et al.,**

*Plaintiffs-Appellants,*

**v.**

**PAM BONDI, In her official capacity as Attorney General of Florida, et al.,**

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Florida
Case No. 4:18-cv-00137-MW-MAF

## PETITION FOR REHEARING EN BANC

John Parker Sweeney
James W. Porter, III
Marc A. Nardone
Connor M. Blair
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Telephone: (202) 393-7150
jsweeney@bradley.com

*Counsel for Plaintiffs-Appellants*

**Certificate of Interested Persons and Corporate Disclosure Statement**

I certify that the following trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations have an interest in the outcome of this case or appeal:

1.  Baum, Christopher J. (Counsel for Defendants-Appellees)

2.  Bell, Daniel (Counsel for Defendants-Appellees)

3.  Blair, Connor M. (Counsel for Plaintiffs-Appellants)

4.  Bondi, Pam, in her official capacity as Attorney General of Florida (Defendant-Appellee) (substituted for Defendant-Appellee Moody who was dismissed by the District Court)

5.  Bradley Arant Boult Cummings LLP (Law Firm Representing Plaintiffs-Appellants)

6.  Fant, Radford (Plaintiff-Appellant) (dismissed on appeal by this Court's panel on motion to substitute Plaintiff-Appellant Kelsey)

7.  Fitzpatrick, Martin A., Hon. (Magistrate Judge Below)

8.  Glass, Mark, in his official capacity as Florida Department of Law Enforcement Commissioner (Defendant-Appellee) (substituted for Defendant-Appellee Swearingen on appeal)

9.  Golembiewski, Kevin (Counsel for Defendants-Appellees)

10.  Kelsey, Dominic (Plaintiff-Appellant) (substituted for Plaintiff-Appellant Fant on appeal by this Court's panel)

11.  Moody, Ashley, in her official capacity as Attorney General of Florida (Defendant-Appellee) (dismissed by the District Court)

12.  Nardone, Marc A. (Counsel for Plaintiffs-Appellants)

13.  National Rifle Association of America, Inc. (Plaintiff-Appellant)

14.     Newhall, Timothy (Counsel for Defendants-Appellees)

15.     Percival, James H. (Counsel for Defendants-Appellees)

16.     Porter, James W. (Counsel for Plaintiffs-Appellants)

17.     Swearingen, Rick, in his official capacity as Commissioner of the Florida Department of Law Enforcement (Defendant-Appellee)

18.     Sweeney, John Parker (Counsel for Plaintiffs-Appellants)

19.     Teegen, Elizabeth (Counsel for Defendants-Appellees)

20.     Walker, Mark E., Hon. (Chief United States District Judge below)

21.     Whitaker, Henry (Counsel for Defendants-Appellees)

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Dated: March 30, 2023                     Respectfully submitted,

                                          */s/ John Parker Sweeney*
                                          John Parker Sweeney
                                          *Counsel for Plaintiffs-Appellants*

## Rule 35(b) and 11th Cir. Rule 35-5(c) Statement

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States and the precedent of this Court and that consideration by the full Court is necessary to secure and maintain uniformity of the Court's decisions: *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022); *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves two questions of exceptional importance: (1) whether the panel's decision establishes precedent for reviewing Second Amendment claims in this Circuit that is contrary to Supreme Court decisions and this Court's precedent; and (2) whether the Second Amendment includes within its scope the right of law-abiding, responsible young adults to purchase firearms.

*/s/ John Parker Sweeney*
John Parker Sweeney
*Attorney of Record for Plaintiffs-Appellants*

# Table of Contents

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement ..................... i

Rule 35(b) and 11th Cir. Rule 35-5(c) Statement ..................................................... iii

Table of Citations .......................................................................................................... v

Issues Asserted to Merit En Banc Consideration ..................................................... 1

Introduction ................................................................................................................... 1

Course of Proceedings and Disposition of the Case ................................................ 3

Facts Necessary to Argument of the Issues .............................................................. 4

Argument ......................................................................................................................... 6

    I.    The panel Opinion is contrary to Supreme Court decisions and this Court's precedent. ................................................................................... 6

        A.    The Opinion is contrary to *Bruen*, *Heller*, *McDonald*, *Caetano*, and *GeorgiaCarry*, which make clear that evidence from the Founding Era is more probative than that from the Reconstruction Era when determining whether a state law violates the Second Amendment. ............................... 6

        B.    The Opinion disregards *Bruen*'s "fairly straightforward" analysis that requires striking the Ban for lack of any historical ban on all firearm purchase by young adults. .......... 11

        C.    The Opinion disregards *Bruen*'s requirements for when to resort to a "more nuanced" analysis and how to determine if a historical law is relevantly similar to a challenged law. ....... 13

    II.    This appeal presents questions of exceptional importance. ............... 15

        A.    Rehearing en banc is necessary to right the course for courts in this Circuit applying *Bruen*. ................................................. 15

        B.    Rehearing en banc is necessary to restore the Second Amendment rights of Florida's law-abiding, responsible young adults to purchase firearms. .......................................... 15

Conclusion ....................................................................................................................... 16

Certificate of Compliance ............................................................................................ 18

Certificate of Service .................................................................................................... 19

iv

# Table of Citations

Page(s)

**Cases**

*Bruesewitz v. Wyeth LLC,*
  562 U.S. 223 (2011)........................................................................8

*Caetano v. Massachusetts,*
  136 S. Ct. 1027 (2016)....................................................... iii, 2, 6, 9

*District of Columbia v. Heller,*
  554 U.S. 570 (2008)................................................................*passim*

*GeorgiaCarry.Org, Inc. v. Georgia,*
  687 F.3d 1244 (11th Cir. 2012) ..............................................*passim*

*McDonald v. City of Chicago,*
  561 U.S. 742 (2010)................................................................*passim*

*Moore v. Madigan,*
  702 F.3d 933 (7th Cir. 2012) ........................................................8

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  142 S. Ct. 2111 (2022)............................................................*passim*

*United States v. Rozier,*
  598 F.3d 768 (11th Cir. 2010) ....................................................10

*United States v. Vaello Madero,*
  142 S. Ct. 1539 (2022)..................................................................7

*Watson v. Geren,*
  587 F.3d 156 (2d Cir. 2009) (en banc) .......................................15

**Statutes**

Fla. Stat. § 775.082 ........................................................................5

Fla. Stat. § 775.083 ........................................................................5

Fla. Stat. § 790.065(13)....................................................................5

Haw. Rev. Stat. Ann. § 134-2(d) ....................................................15

## Issues Asserted to Merit En Banc Consideration

Florida completely bans its law-abiding, responsible young adults (ages 18 to 20) from purchasing firearms of any kind, including long guns (the "Ban"). The as-corrected March 9, 2023 panel opinion ("Opinion") assumed that young adults have the Second Amendment right to purchase firearms but upheld the Ban, relying on Reconstruction Era statutes that restricted young adults from purchasing handguns but not long guns. The Opinion is contrary to Supreme Court decisions and this Court's precedent.

The issue presented is whether the Supreme Court's decision in *Bruen* permits Florida to deprive law-abiding, responsible young adults of their Second Amendment right to purchase firearms.

## Introduction

After the parties had briefed and argued this case before the panel, the Supreme Court issued *Bruen*, which "made the constitutional standard endorsed in *Heller* more explicit" and abrogated step two of this Circuit's two-step approach for analyzing Second Amendment claims. 142 S. Ct. at 2127, 2134 & n. 4 (citing *GeorgiaCarry*, 687 F.3d at 1260 n.34 and noting that "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history"). Reinforcing prior Supreme Court decisions, *Bruen* made clear that "when the Second Amendment's plain text

covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. at 2126.

Under *Bruen*, the first question a Court must ask in analyzing the Ban is whether Florida's young adults fit within the Second Amendment's definition of "people" whose "right to keep and bear arms shall not be abridged." *Id*. at 2132. If the answer to that question is yes (the panel assumed it is, Appellees do not dispute it is, and it plainly is), the Court must then ask whether young adults have a right to purchase firearms. If the answer to that question is yes (which the panel held it is, Appellees do not dispute it is, and it plainly is since one can neither "keep" nor "bear" what one cannot purchase in the first place), the Court must then ask whether the Ban is consistent with this Nation's historical tradition of firearm regulation. If the answer to that question is no (which it plainly is under Supreme Court decisions and this Court's precedent), then the inquiry is over and the statute is invalid.

The Opinion is contrary to the Supreme Court's decisions in *Bruen*, *Heller*, *McDonald*, and *Caetano* as well as this Court's *GeorgiaCarry* precedent. First, the panel held incorrectly that historical evidence from the Reconstruction Era is more probative than that from the Founding Era when determining if a state law violates the Second Amendment. Second, the panel compounded its error by failing to apply *Bruen*'s "fairly straightforward" analysis that is required here and is dispositive because restrictions on firearm purchases by young adults—as a means of addressing

2

what the panel acknowledged was a persistent and longstanding problem of young adult criminal misuse of firearms—was unknown at the Founding. Finally, the panel upheld the Ban by applying *Bruen*'s "more nuanced" analysis—which is inapplicable here because the problem sought to be addressed is not novel—and relying on Reconstruction Era regulations that did not impose a burden comparable to the Ban.

Rehearing en banc is necessary to ensure that the decisions of this Court are consistent with *Bruen*.

## Course of Proceedings and Disposition of the Case

Appellant NRA brought suit challenging the Ban in March 2018. App. 7 (Docket, ECF 1.) The parties moved for summary judgment. App. 15, 16 (Docket, ECF 107 & 109.) Upholding the Ban, the District Court denied Appellants' motion for summary judgment and granted summary judgment in favor of Appellee. App. 189 (Order, at 2.) The District Court applied this Court's previous two-step approach for evaluating Second Amendment challenges. App. 196 (Order, at 9.) Under step one, the District Court "look[ed] to sources from before, at, and just after the Founding Era [to determine whether] 18-to-20-year-olds historically [were] understood to have a right to purchase firearms[.]" App. 199 (Order, at 12.) The District Court "found no case or article suggesting that, during the Founding Era, any law existed that imposed restrictions on 18-to-20-year-olds' ability to purchase

firearms." App. 200–01 (Order, at 13–14) (citation omitted.) But the District Court upheld the Ban as presumptively lawful as analogous to a prohibition on a convicted felon's possession of firearms because young adults are "thought to be especially dangerous with firearms." App. 223–25 (Order, at 36–38.) The District Court did not conduct a step-two analysis. App. 229 (Order, at 42.)

On March 9, 2023, the panel issued the Opinion, affirming the District Court's Judgment. Op. 5. The panel assumed that young adults fit within the Second Amendment's definition of the people and held that young adults have a right to purchase firearms. Op. 14–15. The panel recognized that "firearm violence among some 18-to-20-year-olds is nothing new," Op. 32, and is "a persistent societal problem," Op. 3, but did not analyze the constitutionality of the Ban under *Bruen*'s fairly straightforward analysis looking to Founding Era history. The panel instead held that "[h]istorical sources from the Reconstruction Era are more probative of the Second Amendment's scope than those from the Founding Era" when resolving a challenge to a state statute. Op. 8. The panel upheld the Ban because it found the Ban relevantly similar to Reconstruction Era laws that permitted young adults to purchase long guns but not handguns. Op. 22–23.

## Facts Necessary to Argument of the Issues

In 2018, Florida enacted the Ban: "A person younger than 21 years of age may not purchase a firearm. . . ." Fla. Stat. § 790.065(13). Violating the Ban is a felony,

4

punishable by imprisonment for up to five years, a fine of up to $5,000, or both. *Id*. §§ 775.082, 775.083.

Notwithstanding certain limited exceptions, the Ban "functions as a total ban" on firearm purchase by law-abiding, responsible young adults most likely to "actually need firearms to defend themselves," including, for example, prohibiting "the 20-year-old single mother living on her own [from] obtain[ing] a firearm for self-defense [while allowing] a 20-year-old living with their parents [to] easily obtain one[.]" App. 232–33 (Order, at 45–46.)

The Ban addresses what has long been a "a persistent societal problem": illegal firearm use among young adults. *See* Op. 2–3, 32 ("Unfortunately, firearm violence among some 18-to-20-year-olds is nothing new."). But there is "no case or article suggesting that, during the Founding Era, any law existed that imposed restrictions on 18-to-20-year-olds' ability to purchase firearms." App. 200–01 (Order, at 13–14) (citing Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 505–06 (2004) (cataloging Founding Era firearms regulations)). "Given the amount of attention this issue has received, if such a law existed, someone surely would have identified it by now." App. 201 (Order, at 14.)

"Throughout the early nineteenth century, neither the states nor the federal government imposed any explicit restrictions on the purchase of firearms by 18-to-

20-year-olds." App. 211 (Order, at 24); *see also* App. 200–04 (Order, at 13–17) (collecting authority). Some states imposed restrictions on young adults' ability to purchase handguns during and after the Reconstruction Era. Op. 34–39. But those restrictions were not as complete as the Ban because all states permitted at least the sale of long guns to young adults. *See, e.g.*, Op. 23 ("We assume for purposes of this opinion that the Reconstruction Era laws applied to handguns (but not long guns) . . . .").

## Argument

I.    **The panel Opinion is contrary to Supreme Court decisions and this Court's precedent.**

   A. **The Opinion is contrary to *Bruen*, *Heller*, *McDonald*, *Caetano*, and *GeorgiaCarry*, which make clear that evidence from the Founding Era is more probative than that from the Reconstruction Era when determining whether a state law violates the Second Amendment.**

The panel held incorrectly that "historical sources from the Reconstruction Era [are] more probative of the Second Amendment's scope than those from the Founding Era." Op. 8. This holding is contrary to the Supreme Court's decisions in *Bruen*, *Heller*, *McDonald*, and *Caetano* as well as this Court's *GeorgiaCarry* precedent, each of which, as demonstrated below, make clear that sources from the Founding Era are more probative than those from the Reconstruction Era when determining whether a state law violates the Second Amendment. *See Bruen*, 142 S. Ct. at 2137 (Reconstruction Era sources "do not provide as much insight into [the]

6

original meaning as earlier sources."). This is especially true when, like here, the Reconstruction Era sources are contradictory to the Founding Era sources, which do not reveal any restriction on firearm purchase by young adults. *See id*.

*Bruen*, which involved a state law, "made clear that individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government." *Bruen*, 142 S. Ct. at 2137 (collecting cases). In Second Amendment claims, the scope of the right is the dispositive issue: defendants must "show that the pre-existing right codified in the Second Amendment, and made applicable to the States through the Fourteenth, does not protect petitioners' proposed course of conduct." *Id*. at 2135. In that regard, the Supreme Court has "generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Id*. at 2137.

*Bruen*'s assumption is consistent with its caution to lower courts to "guard against giving postenactment history more weight than it can rightly bear." *Id*. at 2136; *United States v. Vaello Madero*, 142 S. Ct. 1539, 1545 (2022) (Thomas, J., concurring) ("It is not clear why post-1791 developments should displace more probative preconstitutional and founding-era evidence."); *see also Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) ("Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation.").

This assumption is also consistent with *Heller*'s holding that "late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S. Ct. at 2154 (citing *Heller*, 554 U.S. at 614). *Bruen* and *Heller* both discount the probative value of "post-Civil War discussions of the right to keep and bear arms" because they "'took place 75 years after the ratification of the Second Amendment, [and therefore] do not provide as much insight into its original meaning as earlier sources.'" *Bruen*, 142 S. Ct. at 2137 (quoting *Heller* 554 U.S. at 614). *Heller* relied on Reconstruction Era sources primarily to confirm what the Founding Era sources had already established. 554 U.S. at 605–10. Here, the evidence of limited Reconstruction Era regulations contradict the absence of Founding Era evidence.

*McDonald*, which also involved a state law, confirmed that "1791, the year the Second Amendment was ratified, [is] the critical year for determining the amendment's historical meaning." *Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012) (citing *McDonald*, 561 U.S. at 765 & n.14). *McDonald* also made clear that the Second Amendment may not be "subject to an entirely different body of rules than the other Bill of Rights guarantees that we have held to be incorporated into the Due Process Clause." 561 U.S. at 780. To determine the scope of the right by substituting Reconstruction Era history for Founding Era history is to apply a

different body of rules to the Second Amendment than to other enumerated, fundamental rights.

*Caetano*, which also involved a state law, further confirms that Founding Era sources are more probative than Reconstruction Era sources for examining a state law. There, the Court corrected and remanded a Supreme Judicial Court of Massachusetts decision that "contradict[ed]" *Heller* in several ways. 577 U.S. at 411–12. What the *Caetano* Court did not do is correct the Massachusetts court's decision to peg the understanding of the scope of the right to the Founding Era. *Id*. at 411.

*GeorgiaCarry*, which again involved a state law, reviewed in its step-one analysis historical sources to determine whether carrying arms onto another's private property was within the scope of the Second Amendment. 687 F.3d at 1264. Consistently with *Heller*, *McDonald*, and *Caetano*, the Court focused its historical analysis on "the pre-existing right codified in the Second Amendment" at the time the "Founding Fathers drafted [it]." *Id*. at 1264–65.

The Opinion brushes off these precedents as dicta. Op. 11. Even had *Bruen*, *Heller*, *McDonald*, *Caetano*, and *GeorgiaCarry* not held and demonstrated that Founding Era sources are more probative of the scope of the right than Reconstruction Era sources, the Opinion's disregard of Supreme Court dicta is contrary to this Circuit's precedent. *See, e.g.*, *United States v. Rozier*, 598 F.3d 768,

9

771 n.4 (11th Cir. 2010) (following *Heller*'s dicta and noting that Supreme Court dicta is given "considerable weight"). *Bruen* and *Heller* "should not be understood to endorse freewheeling reliance on historical practice from the mid-to-late 19th century to establish the original meaning of the Bill of Rights." *See Bruen*, 142 S. Ct. at 2163 (Barrett, J., concurring).

The Opinion is expressly contrary to these Supreme Court decisions and this Court's precedent. It devoted its entire historical analysis to Reconstruction Era sources, giving those sources far more weight than they can rightly bear to uphold a law that has no historical support from the Founding Era. These Reconstruction Era laws are not, as a matter of law, sufficient to contradict the undisputed and dispositive evidence that a broad prohibition on all forms of firearm purchase by young adults was unknown during the Founding Era.

By prioritizing a different set of historical sources for the Second Amendment than other enumerated rights incorporated through the Fourteenth Amendment, the Opinion relegates the Second Amendment to a different and unfavorable status. This contradiction is impermissible because the Second Amendment is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U.S. at 780.

10

This Court's en banc review is necessary to correct the Opinion's contradiction of clear and repeated Supreme Court decisions and this Court's precedent.

**B. The Opinion disregards *Bruen*'s "fairly straightforward" analysis that requires striking the Ban for lack of any historical ban on all firearm purchase by young adults.**

Not only did the panel err by relying exclusively on Reconstruction Era sources that contradict Founding Era history, it also applied the incorrect historical analysis. *Bruen* observed that usually the required historical "inquiry will be fairly straightforward." 142 S. Ct. at 2131. This fairly straightforward analysis requires the defendant to present evidence of a historical regulation that is "distinctly similar" to the challenged law. *Id*.; *see also Heller*, 554 U.S. at 631–33 (holding that no historical regulation that limited handgun possession was distinctly similar to the District of Columbia ban because none banned handgun possession as broadly and carried the same criminal penalties as the District of Columbia ban).

Where, as here, the defendant fails to provide evidence of a distinctly similar historical regulation to the challenged law, that ends the analysis and the law must be struck: "[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id*. at 2131.

11

*Heller* and *Bruen* "exemplifie[d] this kind of straightforward historical inquiry." *Id*. at 2131. Both examined laws enacted to remedy centuries-old problems. *Id.* (citing *Heller*, 554 U.S. at 631). Both found that those laws lacked a distinctly similar historical regulation. *Id*. (citing *Heller*, 554 U.S. at 631). Both struck those laws as unconstitutional. *Id*. (citing *Heller*, 554 U.S. at 631).

At issue in *Bruen* was New York's proper cause law that entirely prohibited most people from carrying a firearm (concealed or openly). The closest historical regulation to New York's law were "late-19th-century" laws that banned either open carrying or concealed carrying—but not both. 142 S. Ct. at 2138. *Bruen* held that those laws were not distinctly similar to New York's law because "[n]one of these restrictions imposed a substantial burden on public carry analogous to the burden created by New York's restrictive licensing regime." *Id*. at 2145. *Bruen* reiterated that "all told, in the century leading up to the Second Amendment and in the first decade after its adoption, there is no historical basis for concluding that the pre-existing right enshrined in the Second Amendment permitted broad prohibitions on all forms of public carry." *Id*.

The lack of historical support for the Ban is strikingly similar to the history held insufficient in *Bruen*. The closest historical regulations to the Ban are Reconstruction Era laws that banned only handgun purchases but permitted long gun purchases. They did not ban both handgun and long gun purchases. Op. 23. *Bruen*

forecloses the holding that these Reconstruction Era laws are distinctly similar to the Ban because none included a "broad prohibition[] on all forms of" firearm purchasing by young adults. 142 S. Ct. at 2145.

*Bruen* requires the fairly straightforward and dispositive analysis here because, as the Opinion recognized, the Ban was enacted to remedy a "persistent societal problem" that "is nothing new." Op. 2–3, 32. The Opinion, however, fails to analyze whether the Founders could have adopted a distinctly similar historical regulation to the Ban to confront that problem but did not. Instead, the panel expressly disregarded evidence from the Founding Era. It is undisputed that there are no Founding Era restrictions like the Ban. The absence of a distinctly similar Founding Era analogue should have the ended the panel's analysis; the panel should have struck the Ban.

The Opinion is contrary to *Bruen* for failing to apply the fairly straightforward analysis. En banc review is necessary to analyze the Ban under the fairly straightforward analysis *Bruen* requires here but was disregarded by the panel.

### C. The Opinion disregards *Bruen*'s requirements for when to resort to a "more nuanced" analysis and how to determine if a historical law is relevantly similar to a challenged law.

Rather than employ the fairly straightforward analysis required here, the panel analyzed whether the Ban has a "relevantly similar" historical analogue in the Reconstruction Era. Op. 15. *Bruen* does not permit that analysis here. Instead,

*Bruen*'s fairly straightforward analysis is dispositive unless the challenged law is a "modern regulation[] that w[as] unimaginable at the founding." *Id*. at 2132. Only then does *Bruen* contemplate "a more nuanced approach" that allows for reasoning by analogy via the relevantly similar analysis. *Id*. "While the historical analogies here and in *Heller* are relatively simple to draw, other cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach . . . . When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy." *Id*.; *see also id*. (noting that reasoning by analogy is implicated only in "new circumstances"). Because the societal concern here is longstanding, the panel should not have resorted to *Bruen*'s more nuanced approach.

In any event, relevantly similar "modern and historical regulations impose a comparable burden on the right of armed self-defense and [are] comparably justified." *Id*. at 2133 (internal quotations omitted). There is no relevantly similar analogue to the Ban even in the Reconstruction Era because none imposed a comparable burden on the right to purchase firearms as the Ban; regulations from the Reconstruction Era that banned handgun purchases but permitted long gun purchases by young adults do not impose a comparable burden. The Reconstruction Era statutes permitted firearm purchasing by young adults. The Ban does not. The Ban remains an outlier even today. Only one other state (Hawaii, Haw. Rev. Stat.

Ann. § 134-2(d)) comes close to restricting all young adult purchases of all firearms, like the Ban.

This Court's en banc review is necessary to determine whether historical regulations from the Reconstruction Era may be considered at all, and if so whether laws that permitted long gun purchases by young adults are relevantly similar to the Ban, which prohibits all firearm purchases by young adults.

## II. This appeal presents questions of exceptional importance.

### A. Rehearing en banc is necessary to right the course for courts in this Circuit applying *Bruen*.

The panel's framework for determining the scope of the Second Amendment raises "issues of important systemic consequences for the development of the law and the administration of justice" warranting this Court's en banc review. *See Watson v. Geren*, 587 F.3d 156, 160 (2d Cir. 2009) (en banc) (per curiam). This appeal is the first time a panel of this Court has applied *Bruen* to a Second Amendment claim. For the reasons demonstrated above, the Opinion is contrary to *Bruen*. Unless corrected through en banc review, the Opinion will remain binding precedent on the courts in this Circuit deciding future Second Amendment claims.

### B. Rehearing en banc is necessary to restore the Second Amendment rights of Florida's law-abiding, responsible young adults to purchase firearms.

Categorically denying hundreds of thousands of law-abiding, responsible citizens a fundamental right raises a question of exceptional importance warranting

this Court's en banc review. That this denial is predicated on demographic assumptions is particularly alarming. There is no dispute that Florida's law-abiding, responsible young adults come within the Second Amendment's protections. Op. 14–15. And there is no dispute that their right to purchase firearms also comes within the Second Amendment's protections. Op. 15 (citing *Teixeria v. Cnty of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc)).

Nothing in the Supreme Court's decisions or this Court's precedent supports banning law-abiding, responsible young adults in Florida from exercising their right to purchase any firearm merely because some states in the mid- to late-19th century banned their young adults from buying handguns. This Court's en banc review is necessary to restore these citizens' fundamental right to purchase a firearm.

## Conclusion

For the foregoing reasons, Plaintiffs-Appellants respectfully request that this Court grant their petition for rehearing en banc.

Dated: March 30, 2023        Respectfully submitted,

                            */s/ John Parker Sweeney*
                            John Parker Sweeney
                            James W. Porter, III
                            Marc A. Nardone
                            Connor M. Blair
                            BRADLEY ARANT BOULT CUMMINGS LLP
                            1615 L Street, NW
                            Washington, DC 20036
                            Telephone: (202) 393-7150
                            Fax: (202) 347-1684
                            jsweeney@bradley.com

                            *Counsel for Plaintiffs-Appellants*

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies that this Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 35 because it contains 3,687 words, exempting those portions excludes by Rule 32(f). The undersigned counsel also certifies that this Brief complies with the typeface and type-style requirements of Eleventh Circuit Rule 32 and Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: March 30, 2023                          Respectfully submitted,

                                               */s/ John Parker Sweeney*
                                               John Parker Sweeney
                                               *Counsel for Plaintiffs-Appellants*

18

**Certificate of Service**

I hereby certify that on March 30, 2023, I filed the foregoing with the Clerk of the Court via CM/ECF, which will electronically serve all counsel of record. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: March 30, 2023                   Respectfully submitted,

                                        */s/ John Parker Sweeney*
                                        John Parker Sweeney
                                        *Counsel for Plaintiffs-Appellants*