No. 21-12314

# In the
# United States Court of Appeals
# for the Eleventh Circuit

◆

NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al.,

*Plaintiffs-Appellants*,

v.

PAM BONDI, IN HER OFFICIAL CAPACITY AS ATTORNEY
GENERAL OF FLORIDA, et al.,

*Defendants-Appellees*.

◆

**Appeal from the United States District Court
for the Northern District of Florida
Case No. 4:18-cv-00137-MW-MAF**

◆

**BRIEF OF *AMICI CURIAE* FIREARMS POLICY COALITION
AND FPC ACTION FOUNDATION IN SUPPORT OF
APPELLANTS' PETITION FOR REHEARING EN BANC**

◆

JOSEPH G.S. GREENLEE
FPC ACTION FOUNDATION
5550 Painted Mirage Road
Suite 320
Las Vegas, NV 89149
(916) 517-1665
jgreenlee@fpclaw.org
*Counsel of Record*

Counsel for *Amici Curiae*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, *Amici Curiae* make the following statements:

Firearms Policy Coalition has no parent corporation, and as a non-stock nonprofit corporation, no publicly held corporation could own any share of its stock.

FPC Action Foundation has no parent corporation, and as a non-stock nonprofit corporation, no publicly held corporation could own any share of its stock.

Pursuant to 11th Cir. R. 26.1-1, *Amici Curiae* state that, in addition to the interested parties listed in the Appellants' Petition for Rehearing En Banc filed on March 30, 2023, the following person and entities have an interest in the outcome of this case:

Firearms Policy Coalition, 501(c)(4) organization, *Amicus Curiae*;

FPC Action Foundation, 501(c)(3) organization, *Amicus Curiae*;

Greenlee, Joseph, counsel for *Amici Curiae* Firearms Policy Coalition and FPC Action Foundation.

/s/ *Joseph G.S. Greenlee*
*Counsel of Record*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ....................................................................i

TABLE OF CONTENTS ........................................................................ii

TABLE OF AUTHORITIES................................................................ iii

STATEMENT OF *AMICI CURIAE* ...................................................... 1

CONSENT TO FILE ............................................................................2

SUMMARY OF ARGUMENT ...............................................................3

ARGUMENT ......................................................................................4

   I.   The panel contradicted Supreme Court precedent by holding that Reconstruction Era evidence is more probative than Founding Era evidence. .................................................................4

      A.   The Supreme Court emphasized that the significance of historical evidence depends on its proximity to the Founding. ...........................................................................4

      B.   Other relevant considerations identified by the *Bruen* Court revolve around the Founding Era. ...................................12

CONCLUSION ..................................................................................14

CERTIFICATE OF COMPLIANCE.......................................................16

CERTIFICATE OF SERVICE...............................................................17

# TABLE OF AUTHORITIES

## Cases

*Dimick v. Schiedt*,
  293 U.S. 474 (1935) ....................................................................5

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ...........................................................*passim*

*Friedman v. City of Highland Park, Illinois*,
  784 F.3d 406 (7th Cir. 2015) .....................................................7

*Funk v. United States*,
  290 U.S. 371 (1933) ....................................................................5

*Gamble v. United States*,
  139 S. Ct. 1960 (2019) .............................................................11

*Heller v. District of Columbia*,
  670 F.3d 1244 (D.C. Cir. 2011) ("*Heller II*") ....................9, 10

*Hurtado v. California*,
  110 U.S. 516 (1884) ....................................................................5

*Marbury v. Madison*,
  5 U.S. 137 (1803) ........................................................................9

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  142 S. Ct. 2111 (2022) .......................................................*passim*

*Sprint Communications Co. v. APCC Services, Inc.*,
  554 U.S. 269 (2008) ....................................................................5

## Other Authorities

Cunningham, Timothy, A NEW AND COMPLETE LAW DICTIONARY
  (1771) ..........................................................................................6

Johnson, Samuel, A DICTIONARY OF THE ENGLISH LANGUAGE
  (4th ed. 1773) .............................................................................6

Sheridan, Thomas, A COMPLETE DICTIONARY OF THE ENGLISH
LANGUAGE (2d ed. 1789).........................................................................6

Webster, Noah, AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE
(1828)..................................................................................................7

## STATEMENT OF *AMICI CURIAE*

**Firearms Policy Coalition (FPC)** is a nonprofit organization devoted to advancing individual liberty and defending individual rights, including those protected by the Constitution. FPC accomplishes its mission through legislative, regulatory, legal, and grassroots advocacy, education, and outreach programs.

FPC is a party in *Baughcum v. Jackson*, case no. 22-13444, which addresses whether adults aged 18-to-20 have the right to carry handguns in public. The *Baughcum* plaintiffs recently filed a Petition for Hearing En Banc, which is currently pending before this Court. *Amici* respectfully submit that the Court should grant that petition as well.

**FPC Action Foundation (FPCAF)** is a nonprofit organization dedicated to restoring human liberty and protecting the rights enshrined in the Constitution. FPCAF conducts charitable research, education, public policy, and legal programs. The scholarship and *amicus* briefs of FPCAF's Director of Constitutional Studies, Joseph Greenlee, have been cited in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2133 (2022); *Chiafalo v. Washington*, 140 S. Ct. 2316, 2325 (2020); and *N.Y.*

*State Rifle & Pistol Ass'n v. City of N.Y.*, 140 S. Ct. 1525, 1541 (2020) (Alito, J., dissenting).

## CONSENT TO FILE

All parties consented to the filing of this brief.[1] *Amici* also requested leave to file the brief.

---

[1] No counsel for a party authored this brief in any part. No party or counsel contributed money intended to fund its preparation or submission. Only *Amici* and their members contributed money intended to fund its preparation or submission.

## SUMMARY OF ARGUMENT

The panel held that Reconstruction Era evidence is more probative than Founding Era evidence in Second Amendment cases. This holding is contrary to Supreme Court precedents and threatens to place this Court's developing Second Amendment doctrine in conflict with the Supreme Court and sister Circuits that follow the Supreme Court.

The Supreme Court firmly established that the original 1791 understanding of the Second Amendment controls. The Court made clear that the significance of evidence from each relevant historical period depends on its proximity to the Founding. Even modern regulations that would have been unimaginable at the Founding require reason by analogy to the Founding generation's understanding of the right. By contrast, three recent Supreme Court cases have considered Reconstruction Era evidence "secondary" to Founding Era evidence in Second Amendment analyses.

The Petition for Rehearing En Banc should be granted to bring this Court's precedent into line with the Supreme Court's precedents.

## ARGUMENT

I. **The panel contradicted Supreme Court precedent by holding that Reconstruction Era evidence is more probative than Founding Era evidence.**

The panel contradicted Supreme Court precedent by holding that "historical sources from the Reconstruction Era are more probative of the Second Amendment's scope than those from the Founding Era." Op. 8. The Supreme Court has repeatedly established that the original 1791 understanding of the Second Amendment controls.

### A. **The Supreme Court emphasized that the significance of historical evidence depends on its proximity to the Founding.**

The *Bruen* Court considered evidence from five historical periods and emphasized that the significance of evidence from each period depended on its proximity to the Founding. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). *Bruen* "categorize[d] these periods as follows: (1) medieval to early modern England; (2) the American Colonies and the early Republic; (3) antebellum America; (4) Reconstruction; and (5) the late-19th and early-20th centuries." *Id.* at 2135–36. The Court's evaluation of evidence from each period demonstrates the centrality of the Founding Era.

4

*(1) Medieval to early modern England*

*Bruen* deemed it acceptable to consider "English practices that 'prevailed up to the "period immediately before and after the framing of the Constitution,"'" *id.* at 2136 (quoting *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 311 (2008) (Roberts, C.J., dissenting)), but not to "rely on an 'ancient' practice that had become 'obsolete in England at the time of the adoption of the Constitution' and never 'was acted upon or accepted in the colonies,'" *id.* (quoting *Dimick v. Schiedt*, 293 U.S. 474, 477 (1935)). Similarly, "English common-law practices and understandings" matter only if they reflect the understanding "at the time of the separation of the American Colonies." *Id.* (quoting *Hurtado v. California*, 110 U. S. 516, 529 (1884)).

Thus, "in interpreting our own Constitution, 'it [is] better not to go too far back into antiquity for the best securities of our liberties,' unless evidence shows that medieval law survived to become our Founders' law." *Id.* (quoting *Funk v. United States*, 290 U.S. 371, 382 (1933)).

When it came to the "initially limited" English arms right, therefore, what mattered most was that "'by the time of the founding,'" it was "'understood to be an individual right protecting against both public and

private violence.'" *Id.* at 2142 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 594 (2008)); *see also Heller*, 554 U.S. at 593 ("By the time of the founding, the right to have arms had become fundamental for English subjects."). Likewise, when it came to the Statute of Northampton, what mattered most was that "it was no obstacle to public carry for self-defense in the decades leading to the founding." *Bruen*, 142 S. Ct. at 2135–36.

Having repeatedly confirmed that the analytical baseline for English history is what the Founders thought of it, *Bruen*'s analysis of English history concluded with the understanding of English law at "the time of the founding." *Id.* at 2142.

*(2) the American Colonies and the early Republic*

To conduct a textual analysis of the Second Amendment, the *Heller* Court consulted Timothy Cunningham's 1771 legal dictionary,[2] Samuel Johnson's 1773 dictionary,[3] Thomas Sheridan's 1796 dictionary,[4] and

---

[2] Timothy Cunningham, A NEW AND COMPLETE LAW DICTIONARY (1771), cited by *Heller*, 554 U.S. at 581 ("arms"), 577–78 ("bear arms").

[3] Samuel Johnson, A DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 1773), cited by *Heller*, 554 U.S. at 581 ("arms"), 582 ("keep"), 584 ("bear"), 597 ("regulate").

[4] Thomas Sheridan, A COMPLETE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1789), cited by *Heller*, 554 U.S. at 584 ("bear").

Noah Webster's 1828 dictionary;[5] *see Friedman v. City of Highland Park, Illinois*, 784 F.3d 406, 417 (7th Cir. 2015) (Manion, J., dissenting) ("*Heller* examined the right to keep arms as it was understood in 1791 when the Second Amendment was ratified.").

*Heller* ultimately concluded with "our adoption of the original understanding of the Second Amendment." 554 U.S. at 625. And as the dissenting Justices acknowledged, the majority indicated that the constitutionality of modern-day laws depends on whether "similar restrictions existed in the late-18th century." *Id.* at 721 (Breyer, J., dissenting).

*Bruen*, reaffirming the centrality of 1791, consulted *Heller*'s plain text analysis—which defined the Second Amendment based on Founding Era understandings—to determine that the plaintiffs were part of "the people," 142 S. Ct. at 2134 (citing *Heller*, 554 U.S. at 580), that the handguns they desired to carry were protected arms, *id.* (citing *Heller*, 554 U.S. at 627), and that the Second Amendment protects "carrying weapons in case of confrontation," *id.* (citing *Heller*, 554 U.S. at 592).

---

[5] Noah Webster, AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828), cited by *Heller*, 554 U.S. at 581 ("arms"), 582 ("keep"), 584 ("bear"), 595 ("militia").

*Bruen* then mandated that every court begin every Second Amendment analysis by consulting *Heller*'s 1791-focused textual analysis. *Id.* at 2129–30 (setting forth "the standard for applying the Second Amendment," which begins by determining whether "the Second Amendment's plain text covers an individual's conduct").

Hence, the *Bruen* Court emphasized that "'[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*,'" 142 S. Ct. at 2136 (quoting *Heller*, 554 U.S. at 634–35) (emphasis *Bruen*'s), and that the Second Amendment's "meaning is fixed according to the understandings of those who ratified it," *id.* at 2132; *see also id.* at 2132 ("the Second Amendment's definition of 'arms' is fixed according to its historical understanding").

Accordingly, when it came to colonial restrictions, their relevance depended on their proximity to the Founding. A law from "roughly a century before the founding sheds little light on how to properly interpret the Second Amendment." *Id.* at 2144. Likewise, whether pocket pistols were uncommon in colonial America did not matter since they gained commonality "by the founding." *Id.* at 2144 n.13.

8

As for laws, circumstances, and sources from the Founding Era, unlike those from every other period, not one was disparaged in either *Heller* or *Bruen* based on the date it was produced.

*(3) antebellum America*

The *Bruen* Court reiterated *Heller*'s assertion that "evidence of 'how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century' represented a 'critical tool of constitutional interpretation.'" 142 S. Ct. at 2136 (quoting *Heller*, 554 U.S. at 605). But in the same breath, the *Bruen* Court warned that "[w]e must also guard against giving postenactment history more weight than it can rightly bear." *Id.* Specifically, "postratification adoption or acceptance of laws that are *inconsistent* with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Id.* at 2137 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1274 n.6 (D.C. Cir. 2011) ("*Heller II*") (Kavanaugh, J., dissenting)) (emphasis in *Heller II*). Notably, then-Judge Kavanaugh, whom the Court quoted, provided in *Heller II* the example of *Marbury v. Madison,* 5 U.S. 137 (1803), which "found unconstitutional a law passed by the First Congress"—further indicating that the "original meaning" *Bruen*

referred to is the original 1791 meaning. *Heller II*, 670 F.3d at 1274 n.6 (Kavanaugh J., dissenting).

Significantly, the *Bruen* Court dismissed an 1860 New Mexico law in part because it was enacted "nearly 70 years after the ratification of the Bill of Rights." 142 S. Ct. at 2147 n.22. Due to its distance from 1791, the Court determined that "[i]ts value in discerning the original meaning of the Second Amendment is insubstantial." *Id.* How it impacted the understanding of the right when the Fourteenth Amendment was ratified 8 years later was not a concern—the law's distance from the Founding determined its significance.

*(4) Reconstruction*

Far from being "more probative of the Second Amendment's scope" than Founding Era evidence, Op. 8, the Supreme Court has expressly called Reconstruction Era evidence "secondary" and useful as "mere confirmation" of Founding Era evidence:

> As we recognized in *Heller* itself, because post-Civil War discussions of the right to keep and bear arms "took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." 554 U. S., at 614; cf. *Sprint Communications Co.*, 554 U.S. at 312, 128 S.Ct. 2531 (ROBERTS, C. J., dissenting) ("The belated innovations of the mid- to late-19th-century courts come too late to provide insight into the

10

meaning of the Constitution in 1787"). And we made clear in *Gamble* that *Heller*'s interest in mid- to late-19th-century commentary was secondary. *Heller* considered this evidence "only after surveying what it regarded as a wealth of authority for its reading—including the text of the Second Amendment and state constitutions." *Gamble [v. United States*, 139 S. Ct. 1960, 1975–76 (2019)] (majority opinion). In other words, this 19th-century evidence was "treated as mere confirmation of what the Court thought had already been established." *Ibid.*

*Bruen*, 142 S. Ct. at 2137 (brackets omitted).

*Bruen*, *Gamble*, and *Heller* all considered Reconstruction Era evidence "secondary" to Founding Era evidence. *Id.* Thus, the panel opinion here flatly contradicts *three* recent Supreme Court cases.

*(5) the late-19th and early-20th centuries*

*Bruen* explained that "late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id.* at 2154. It is less insightful than earlier evidence due to its "temporal distance from the founding." *Id.* In other words, the closer to the Founding the greater the significance.

The *Bruen* Court thus refused to "stake our interpretation on a handful of temporary territorial laws that were enacted nearly a century after the Second Amendment's adoption…." *Id.* at 2155. And the Court declined to consider 20th-century evidence for the same reason: "[a]s with

11

their late-19th-century evidence, the 20th-century evidence presented by respondents and their *amici* does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id.*

*Bruen* repeated *Heller*'s statement that "'the public understanding of a legal text in the period after its enactment or ratification' was 'a critical tool of constitutional interpretation.'" *Id.* at 2128 (quoting *Heller*, 554 U.S. at 605) (emphasis omitted). Given the Court's repeated rejection of late-19th-century evidence, this statement is irreconcilable with the panel's holding that "the Reconstruction Era understanding of the right to bear arms … is what matters." Op. 8.

## B. Other relevant considerations identified by the *Bruen* Court revolve around the Founding Era.

Other factors identified as relevant considerations by the *Bruen* Court revolved around the Founding Era.

First, the *Bruen* Court explained that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." 142 S. Ct. at 2131. By requiring that the general societal problem be in existence "since the 18th

century," the Court ensured that the problem be known to the Founders. A problem known to the ratifiers of the Fourteenth Amendment but unknown to the Founders is irrelevant—which would not be the case if "the Reconstruction Era understanding of the right to bear arms … is what matters." Op. 8.

As *Bruen* noted,

> *Heller* itself exemplifies this kind of straightforward historical inquiry.… The District in *Heller* addressed a perceived societal problem—firearm violence in densely populated communities—and it employed a regulation—a flat ban on the possession of handguns in the home—*that the Founders themselves could have adopted* to confront that problem. Accordingly, after considering "*founding-era historical precedent*," including "various restrictive laws in the colonial period," and finding that none was analogous to the District's ban, *Heller* concluded that the handgun ban was unconstitutional. *Id.*, at 631; see also *id.*, at 634 (describing the claim that "there were somewhat similar restrictions in the founding period" a "false proposition").

142 S. Ct. at 2131 (emphasis added). Likewise, in *Bruen*, the Court "consider[ed] whether 'historical precedent' from before, during, and even after *the founding* evinces a comparable tradition of regulation" as the carry restriction at issue. *Id.* at 2131–32 (quoting *Heller*, 554 U.S. at 631) (emphasis added). After "find[ing] no such tradition," the Court held the law unconstitutional. *Id.* at 2132.

13

Second, as for "modern regulations that were unimaginable *at the founding*," the "historical inquiry that courts must conduct will often involve reasoning by analogy." *Id.* (emphasis added). This reasoning by analogy, like the rest of the test articulated in *Bruen*, must focus on the Founding Era. Because "the Second Amendment is the 'product of an interest balancing by the people'" of the Founding generation, *id.* at 2133 (quoting *Heller*, 554 U.S. at 635) (emphasis omitted), "[a]nalogical reasoning requires judges to apply faithfully the balance struck *by the founding generation* to modern circumstances," *id.* at 2133 n.7 (emphasis added).

## CONCLUSION

As Justice Barrett warned in her *Bruen* concurrence, the *Bruen* "decision should not be understood to endorse freewheeling reliance on historical practice from the mid-to-late 19th century to establish the original meaning of the Bill of Rights." *Id.* at 2163 (Barrett, J., concurring). Yet that is precisely how the panel understood *Bruen*.

The Petition for Rehearing En Banc should be granted to bring this Court's precedent into line with the Supreme Court's precedents.

Respectfully submitted,

/s/ *Joseph G.S. Greenlee*
JOSEPH G.S. GREENLEE
FPC ACTION FOUNDATION
5550 Painted Mirage Road
Suite 320
Las Vegas, NV 89149
(916) 517-1665
jgreenlee@fpclaw.org
*Counsel of Record*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because this brief contains 2,599 words, excluding the parts of the brief excluded by 11th Cir. R. 35-5(a), (b), (c), (d), and (j).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point, proportionally spaced Century Schoolbook font.

/s/ *Joseph G.S. Greenlee*
*Counsel of Record*

16

**CERTIFICATE OF SERVICE**

I certify that on April 6, 2023, I served the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

/s/ *Joseph G.S. Greenlee*
*Counsel of Record*