No. 21-12314

In the
# United States Court of Appeals
# For the Eleventh Circuit

**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., et al.,**

*Plaintiffs-Appellants,*

**v.**

**PAM BONDI, In her official capacity as Attorney General of Florida, et al.,**

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Florida
Case No. 4:18-cv-00137-MW-MAF

## AMICUS BRIEF OF THE NATIONAL SHOOTING SPORTS FOUNDATION, INC. IN SUPPORT OF APPELLANTS' PETITION FOR REHEARING EN BANC

Michael L. Rice
Harrison Law LLC
141 W. Jackson Blvd., Suite 2055
Chicago, IL 60604
Telephone: (213) 638-8781
mikerice@hlawllc.com

Jason S. Bell
Smith, Gambrell & Russell, LLP
1105 W. Peachtree St., N.E. Suite 1000
Atlanta, GA 30309
Telephone: (404) 815-3500
jbell@sgrlaw.com

*Counsel for Amicus*
*National Shooting Sports Foundation, Inc.*

**Certificate of Interested Persons and Corporate Disclosure Statement**

I certify that the following trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations have an interest in the outcome of this case or appeal:

1. Baum, Christopher J. (Counsel for Defendants-Appellees)

2. Bell, Daniel (Counsel for Defendants-Appellees)

3. Bell, Jason S. (Counsel for Amicus)

4. Blair, Connor M. (Counsel for Plaintiffs-Appellants)

5. Bondi, Pam, in her official capacity as Attorney General of Florida (Defendant-Appellee) (substituted for Defendant-Appellee Moody who was dismissed by the District Court)

6. Bradley Arant Boult Cummings LLP (Law Firm Representing Plaintiffs-Appellants)

7. Fant, Radford (Plaintiff-Appellant) (dismissed on appeal by this Court's panel on motion to substitute Plaintiff-Appellant Kelsey)

8. Fitzpatrick, Martin A., Hon. (Magistrate Judge Below)

9. Glass, Mark, in his official capacity as Florida Department of Law Enforcement Commissioner (Defendant-Appellee) (substituted for Defendant-Appellee Swearingen on appeal)

10. Golembiewski, Kevin (Counsel for Defendants-Appellees)

11. Kelsey, Dominic (Plaintiff-Appellant) (substituted for Plaintiff-Appellant Fant on appeal by this Court's panel)

12. Moody, Ashley, in her official capacity as Attorney General of Florida (Defendant-Appellee) (dismissed by the District Court)

13. Nardone, Marc A. (Counsel for Plaintiffs-Appellants)

14.   National Rifle Association of America, Inc. (Plaintiff-Appellant)

15.   National Shooting Sports Foundation, Inc. (Amicus)

16.   Newhall, Timothy (Counsel for Defendants-Appellees)

17.   Percival, James H. (Counsel for Defendants-Appellees)

18.   Porter, James W. (Counsel for Plaintiffs-Appellants)

19.   Rice, Michael L. (Counsel for Amicus)

20.   Swearingen, Rick, in his official capacity as Commissioner of the Florida Department of Law Enforcement (Defendant-Appellee)

21.   Sweeney, John Parker (Counsel for Plaintiffs-Appellants)

22.   Teegen, Elizabeth (Counsel for Defendants-Appellees)

23.   Walker, Mark E., Hon. (Chief United States District Judge below)

24.   Whitaker, Henry (Counsel for Defendants-Appellees)

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Dated: April 6, 2023                    Respectfully submitted,

                                        *[s] Jason S. Bell*_____
                                        Jason S. Bell
                                        *Counsel for Amicus*

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ...................i

Issues Asserted to Merit En Banc Consideration .......................................................vi

STATEMENT OF INTEREST OF AMICUS CURIAE ...........................................1

Facts Necessary to Argument of the Issues ...............................................................2

SUMMARY OF ARGUMENT ...................................................................................2

ARGUMENT ..............................................................................................................3

      I.    THE SECOND AMENDMENT RIGHT OF LAW-ABIDING
            CITIZENS TO KEEP AND BEAR ARMS FOR SELF-DEFENSE
            INCLUDES THE RIGHT TO ACQUIRE THOSE ARMS...................4

      II.    THE BAN'S PROHIBITION ON THE PURCHASE OF
            FIREARMS BY LAW-ABIDING YOUNG ADULTS CANNOT BE
            JUSTIFIED. ..........................................................................................8

Conclusion ................................................................................................................11

Certificate of Compliance ........................................................................................13

Certificate of Service................................................................................................14

# TABLE OF AUTHORITIES

## Cases

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...................................... 4, 6, 8, 10

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ............................................ 4, 5

*Griswold v. Connecticut*, 381 U.S. 479 (1965) ............................................................. 5

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*,
 5 F.4th 407 (4th Cir.), *vacated as moot on other grounds*,
 14 F.4th 322 (4th Cir. 2021) ....................................................................................... 7

*Ill. Ass'n of Firearms Retailers v. City of Chicago*,
 961 F. Supp. 2d 928 (N.D. Ill. 2014) ......................................................................... 6

*Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ................... 5

*Malloy v. Hogan*, 378 U.S. 1 (1964) ............................................................................ 9

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ................................................. 4, 9

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ....................................................... 9

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ........ v, 8, 9

*Renna v. Bonta*, Case No. 3:20-cv-02190-DMS-DEB,
 2023 WL 2756981 (S.D. Cal. Mar. 31, 2023) ......................................................... 7, 8

*Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) .................................... 5

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ......................................... 7

## Constitutions and Statutes

U.S. Const. art. I, § 2 ..................................................................................................... 9

U.S. Const. art. I, § 3 ..................................................................................................... 9

U.S. Const. art. II, § 1 .................................................................................................... 9

U.S. Const. amend. II ..................................................................................................... 4

U.S. Const. amend. XXVI .............................................................................................. 9

18 U.S.C. § 922(t) .......................................................................................................... 6

Act of May 8, 1792, ch. 33, §1, 1 Stat. 271 ................................................................ 10

1855 Ala. Laws 17 ........................................................................................................ 10

1859 Ky. Acts 245, § 23 ............................................................................................... 10

Fla. Stat. § 775.082 ................................................................................. 2

Fla. Stat. § 775.083 ................................................................................. 2

Fla. Stat. § 790.065 ................................................................................. 2

Tenn. Code § 4864 (1858) ..................................................................... 10

27 C.F.R. § 478.124 ................................................................................. 6

## Issues Asserted to Merit En Banc Consideration

Florida has enacted a law that prohibits law-abiding, responsible young adults aged 18 to 20 from purchasing any firearm, including long guns (the "Ban"). The issue presented is whether the Supreme Court's decision in *Bruen* permits Florida to deprive law-abiding young adults of their Second Amendment right to purchase firearms. Rehearing en banc is warranted because the as-corrected March 9, 2023 panel opinion ("Opinion") applied an incorrect legal framework in deciding that issue.

## STATEMENT OF INTEREST OF AMICUS CURIAE[1]

*Amicus curiae*, the National Shooting Sports Foundation, Inc. ("NSSF"), is the trade association for the firearms, ammunition, hunting, and shooting sports industry.  Formed in 1961, NSSF is a Connecticut non-profit tax-exempt corporation serving its member firearms manufacturers, distributors, and retailers; sportsmen's organizations; shooting ranges; gun clubs; publishers, and individuals. NSSF's mission is to promote, protect and preserve hunting and shooting sports. NSSF provides trusted leadership in addressing industry challenges; advances participation in and understanding of hunting and the shooting sports; reaffirms and strengthens its members' commitment to the safe and responsible use of their products; and promotes a political environment that is supportive of America's traditional hunting and shooting sports heritage and firearms freedoms.  NSSF believes that lawful commerce in firearms and firearms-related products is and must be protected to preserve the constitutional right guaranteed by the Second Amendment to purchase, own, possess and use firearms.

NSSF's interest in this action derives principally from the fact that its firearms manufacturer, distributor, and retailer members, including those affected by the Ban, provide for the lawful commerce in firearms that makes the exercise of

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *amicus* affirms that no counsel for a party wrote this brief in whole or in part, and no party, party's counsel or any person other than *amicus* made a monetary contribution intended to fund the brief's preparation or submission.

Second Amendment rights possible. Appellants have ably demonstrated in the Petition for Rehearing En Banc that consideration by the full Court is warranted to resolve the conflict between the Panel's decision and the framework established by the United States Supreme Court. NSSF submits this brief to emphasize the importance of the right to acquire firearms to a full realization of the fundamental rights protected by the Second Amendment, an issue of particular importance to its members. NSSF also addresses the lack of historical precedent justifying a complete prohibition on 18-to-20 year olds acquiring firearms.

## Facts Necessary to Argument of the Issues

In 2018, Florida enacted the Ban: "A person younger than 21 years of age may not purchase a firearm...." Fla. Stat. § 790.065(13). Violating the Ban is a felony, punishable by imprisonment for up to five years, a fine of up to $5,000, or both. *Id.* §§ 775.082, 775.083. While the Ban has limited exceptions, it operates to preclude law-abiding, responsible young adults from purchasing any firearm. App. 232-33 (Order, at 45-46.)

## SUMMARY OF ARGUMENT

First, the Supreme Court has clearly recognized that the Second Amendment preserves the right of the people to keep and bear arms. In connection with that right, multiple courts have recognized that the Second Amendment's protections must extend to the lawful purchase of covered products if the right to possess

firearms is to be realized. The Opinion's expressed view that the Ban only prohibits purchasing firearms but not the possession of firearms cannot be squared with this precedent.

Second, the Opinion improperly focused on Reconstruction Era statutes rather than the rights of young adults when the Second Amendment was ratified. It is indisputable that in 1791, young adults who were required to serve in the militia and provide their own firearms had a recognized right to acquire the needed firearms. Moreover, even if the Reconstruction Era were relevant, the Opinion erroneously relied on acts limiting *handgun* sales to justify Florida's wholesale ban of the sale of any firearm, including long guns. That broad prohibition on sales is not permitted by the Second Amendment.

Against this backdrop, NSSF believes that Appellants have demonstrated that rehearing by the full Court en banc in this case is warranted.

## ARGUMENT

The Ban, which prohibits law-abiding, responsible young adults (18-to-20 years old) in Florida from purchasing any firearm, unreasonably infringes upon the Second Amendment rights of those individuals, guaranteed to them through the Fourteenth Amendment.

## I.   THE SECOND AMENDMENT RIGHT OF LAW-ABIDING CITIZENS TO KEEP AND BEAR ARMS FOR SELF-DEFENSE INCLUDES THE RIGHT TO ACQUIRE THOSE ARMS.

The Second Amendment to the United States Constitution preserves "the right of the people to keep and bear Arms" and declares that this right "shall not be infringed."  U.S. Const. amend. II.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court determined that a ban on the possession of handguns runs afoul of this constitutional provision.  554 U.S. at 628.  And in extending the Second Amendment's protection to the states under the Fourteenth Amendment, the Court found it "clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty."  *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010).

"Both *Heller* and *McDonald* suggest that broadly prohibitory laws restricting the core Second Amendment right—like the handgun bans at issue in those cases, which prohibited handgun possession even in the home—are categorically unconstitutional."  *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011).  Of particular importance to NSSF's constituents – in particular the licensed retailers in Florida whose business is the lawful commerce in firearms and ammunition – is the basic principle that the constitutionally protected right to possess and use a firearm is meaningless absent the right to purchase or otherwise acquire the

firearm. The Seventh Circuit recognized a similar link with respect to range training, holding that "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Id*. at 704.

The Ninth Circuit similarly found that the right to possess firearms for protection includes the right "to obtain the bullets necessary to use them." *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014). And the Ninth Circuit subsequently recognized a right to acquire firearms as a necessary corollary to the realization of the rights guaranteed by the Second Amendment in *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017), although it found that the plaintiff there "failed to state a claim that the ordinance impedes Alameda County residents from acquiring firearms." *Id*. at 678; *see also Griswold v. Connecticut*, 381 U.S. 479, 482–483 (1965) ("[R]ight of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read…. Without those peripheral rights the specific rights would be less secure.").

Here, of course, the Ban operates as just such an impermissible intrusion on

the right to acquire firearms by law-abiding young adults.[2]  *See also Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 938 (N.D. Ill. 2014) (ban on sales of firearms within Chicago interfered with what the court characterized as "the *most fundamental* prerequisite of legal gun ownership—that of simple acquisition.").  Thus, the Opinion's attempt to downplay the effect of the Ban by noting that "it precludes those under 21 only from buying firearms while still leaving that age group free to possess and use firearms of any legal type" is unavailing.  The prohibition on acquiring firearms itself intrudes improperly on the young adults' constitutional rights.  Just as we would not require that such young adults' exercise of free speech depend on obtaining permission from adults over the age of 21, their exercise of their rights under the Second Amendment cannot be left to the discretion of others to provide them with long guns they are otherwise permitted to possess.

Importantly, the Opinion characterizes the Ban in this case as within the "presumptively lawful" "conditions and qualifications on the commercial sale of arms" recognized by *Heller*.  Opinion at 4 (quoting *Heller*, 554 U.S. 626-27).  But other courts have recognized that reading the Supreme Court's language as

---

[2] Young adults who seek to acquire firearms, including long guns, from federally licensed dealers could only do so in compliance with the law, which includes background checks before a firearm can be purchased, unless a valid exception applies, *e.g.*, a state permit to purchase firearms.  *See* 18 U.S.C. § 922(t); 27 C.F.R. § 478.124.

allowing a prohibition on access to firearms protected by the Second Amendment goes too far. Most recently, the court in *Renna v. Bonta* determined that California's Unsafe Handgun Act, which limits handgun sales to those on a state-approved roster of "safe" handguns, violated the Second Amendment because it restricted access to handguns commonly in use. *Renna*, Case No. 3:20-cv-02190-DMS-DEB, 2023 WL 2756981, *10 (S.D. Cal. Mar. 31, 2023). The court rejected defendants' argument that, because some handguns were available for purchase, the California law was a permissible condition on the commercial sale of firearms, finding instead that the law operated as a "functional prohibition" on "the commercial sale of a large subset of handguns in common use." *Id.*; *see also United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) (recognizing that "[i]f there were somehow a categorical exception for [commercial sales] restrictions, it would follow that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*.").

Relying on the analysis of the Fourth Circuit in *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407 (4th Cir.), *vacated as moot on other grounds*, 14 F.4th 322 (4th Cir. 2021), the court in *Renna* recognized the distinction between laws that served as "a hoop someone must jump through to *sell* a gun, such as obtaining a license, establishing a lawful premise, or maintaining

transfer records," and laws "operat[ing] as a total ban on *buying* a gun from a licensed dealer that has met the required [licensing] conditions and qualifications to sell arms." *Renna*, 2023 WL 2756981, *9. The court recognized that "[i]f the commercial sales limitation identified in *Heller* were interpreted as broadly as the State suggests, the exception would swallow the Second Amendment." *Id*. at *10.

In this case, the right to acquire firearms is a necessary and protected corollary to the Second Amendment's right to keep and bear arms, and the Ban's wholesale prohibition on young adults' exercise of that right cannot be justified.

## II.   THE BAN'S PROHIBITION ON THE PURCHASE OF FIREARMS BY LAW-ABIDING YOUNG ADULTS CANNOT BE JUSTIFIED.

The Opinion finds that the prohibition on young adults acquiring firearms is consistent with historical laws in place at the time that the Fourteenth Amendment was adopted. This analysis both impermissibly ignores the strong precedent from the Founding Era protecting the Second Amendment rights of these young adults and overstates the scope of Reconstruction Era laws that limited the sale of handguns—but not long guns—to young adults.

First, the Supreme Court's decision in *Bruen* re-affirmed that "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2136 (2022) (quoting *Heller*, 554 U.S. 570, 634–635 (2008)). For purposes of the Second Amendment, Appellants' Petition demonstrates that this means that

courts should look to the understanding of the Second Amendment at the time of the Founding, not at the time of Reconstruction.  Petition at 6–11; *see also Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012) (in case challenging state law, "1791, the year the Second Amendment was ratified" was "the critical year for determining the amendment's historical meaning").  Indeed, *Bruen* made clear that "individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment have the same scope as against the Federal Government."  *Bruen*, 142 S. Ct. at 2137; *see also McDonald*, 561 U.S. at 765 (recognizing that enforcement under the Fourteenth Amendment must be "according to the same standards that protect those personal rights against federal encroachment" (quoting *Malloy v. Hogan*, 378 U.S. 1, 10 (1964)).

Second, when properly analyzed under the view of the Second Amendment in the Founding Era, it is apparent that the Ban is irreconcilable with the Constitution.  It should be beyond debate that at the time the Bill of Rights was ratified, their protections extended to citizens 18 to 20 years old.[3]  In fact, the first federal Militia Act enacted in 1792 stated that each male citizen "*who is or shall be of the age of eighteen years* … shall severally and respectively be enrolled in the militia" and shall "provide himself" with a firearm and ammunition.  Act of May 8,

---

[3] Indeed, the Constitution includes age restrictions not found in the Bill of Rights. *See* U.S. Const. art. I, § 2 (age 25 for the House); *id.* art. I, § 3 (age 30 for the Senate); *id.* art. II, § 1 (age 35 for the President); *cf. id.* amend. XXVI (setting voting age at 18).

1792, ch. 33, §1, 1 Stat. 271, 271 (emphasis added).  And as the Supreme Court has noted, those in the militia were plainly within "the people" that were afforded Second Amendment protection.  *Heller*, 554 U.S. at 580.  Those 18-year-olds who were required to perform militia service and supply their own weapons had to acquire those firearms.  That was the understanding of the Second Amendment in the Founding Era.

Moreover, even if Reconstruction Era laws were the proper focus for analyzing the reach of the Second Amendment, the Opinion gives those acts more sway than they are entitled.  None of the cited acts included a total ban on persons aged 18 to 20 acquiring *any* firearm.  Rather, those provisions barred the acquisition of handguns, while preserving the right to acquire long guns.  *See* 1855 Ala. Laws 17 (prohibited selling or giving any "pistol"); Tenn. Code § 4864 (1858) (same); 1859 Ky. Acts 245, § 23 (same); *see generally* Opinion Appendix (identifying statutes barring sale of pistols and revolvers, with some noting specific exceptions for rifles); *see also* Opinion at 23 n.20 (assuming statutes do not cover long guns).  Thus, while the Founding Era is the proper focus, even Reconstruction Era laws cannot be used to justify the broad and complete prohibition on purchasing any firearm, including long guns, imposed by the Ban.

10

**Conclusion**

For the foregoing reasons, *Amicus* NSSF supports Plaintiffs-Appellants'

request that this Court grant their petition for rehearing en banc.

Dated: April 6, 2023         Respectfully submitted,

*[s] Jason S. Bell*
Michael L. Rice (*application pending*)
Harrison Law LLC
141 W. Jackson Blvd.
Suite 2055
Chicago, IL 60604
Telephone: (312) 638-8781
Fax: (312) 638-8793
mikerice@hlawllc.com

Jason S. Bell
Smith, Gambrell & Russell, LLP
1105 W. Peachtree St., N.E. Suite 1100
Atlanta, GA 30309
Telephone: (404) 815-3500
Fax: (404) 815-7046
jbell@sgrlaw.com

*Counsel for Amicus*
*National Shooting Sports Foundation, Inc.*

## Certificate of Compliance

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies that this Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 35 because it contains 2463 words, exempting those portions excludes by Rule 32(f). The undersigned counsel also certifies that this Brief complies with the typeface and type-style requirements of Eleventh Circuit Rule 32 and Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: April 6, 2023                    Respectfully submitted,

*[s] Jason S. Bell*
Jason S. Bell
*Counsel for Amicus*

13

## Certificate of Service

I hereby certify that on April 6, 2023, I filed the foregoing with the Clerk of the Court via CM/ECF, which will electronically serve all counsel of record. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: April 6, 2023                    Respectfully submitted,

                                        *[s] Jason S. Bell*
                                        Jason S. Bell
                                        *Counsel for Amicus*