No. 21-12314

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

NATIONAL RIFLE ASSOCIATION, INC., and RADFORD FANT,

Plaintiffs-Appellants,

v.

COMMISSIONER,
FLORIDA DEPARTMENT OF LAW ENFORCEMENT,

Defendant-Appellee.

_____

On Appeal from the United States District Court
for the Northern District of Florida

No. 4:18-cv-00137-MW
The Honorable Mark Walker

# EN BANC BRIEF OF AMICI CURIAE ILLINOIS, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA, HAWAII, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, AND WASHINGTON IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE

ALEX HEMMER
Deputy Solicitor General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

Attorneys for Amici States

*(Additional counsel on signature page)*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, I hereby certify that the following listed persons and entities have an interest in the outcome of this case and were omitted from the Certificates of Interested Persons previously filed in this case:

1.  Brown, Anthony G. (counsel for amicus curiae Maryland)

2.  Clark, Charity R. (counsel for amicus curiae Vermont)

3.  Ford, Aaron D. (counsel for amicus curiae Nevada)

4.  Henry, Michelle A. (counsel for amicus curiae Pennsylvania)

5.  Lopez, Anne E. (counsel for amicus curiae Hawaii)

6.  State of Colorado (amicus curiae)

7.  State of Nevada (amicus curiae)

8.  Schwalb, Brian L. (counsel for amicus curiae District of Columbia)

9.  Campbell, Andrea Joy (counsel for amicus curiae Massachusetts)

10. Platkin, Matthew J. (counsel for amicus curiae New Jersey)

11. Torrez, Raúl (counsel for amicus curiae New Mexico)

12. Weiser, Philip J. (counsel for amicus curiae Colorado)

/s/ Alex Hemmer
Alex Hemmer

August 30, 2024

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS
  AND CORPORATE DISCLOSURE STATEMENT ..................... C-1

TABLE OF AUTHORITIES ........................................................................ ii

IDENTITY AND INTEREST OF AMICI STATES ................................... 1

STATEMENT OF THE ISSUE ................................................................. 2

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ............................................................................................ 4

I.    The Second Amendment Allows States To Enact Measures To
      Promote Gun Safety And Protect Against Gun Violence That Are
      Consistent With Historical Tradition. ............................................... 4

II.   Florida's Age-Based Regulation Is Consistent With Measures
      Taken By Other States And Upheld By Courts Across The
      Country. .......................................................................................... 10

III.  Plaintiffs' Arguments Lack Merit. ................................................. 17

CONCLUSION ...................................................................................... 23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Bianchi v. Brown*, No. 21-1255, 2024 WL 3666180
(4th Cir. Aug. 6, 2024) (en banc) .......................................... 1

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ................................................... 5, 6, 17

*Hirschfeld v. ATF*,
5 F.4th 407 (4th Cir. 2021) ................................................ 16

*Jones v. Bonta*,
34 F.4th 704 (9th Cir. 2022) ............................................... 16

*Jones v. Bonta*,
705 F. Supp. 3d 1121 (S.D. Cal. 2023) ........................... 15, 16

*Lara v. Comm'r, Pa. State Police*,
91 F.4th 122 (3d Cir. 2024) ............................................... 16

*McDonald v. City of Chicago*,
561 U.S. 742 (2010) ................................................... 5, 6, 18

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) .......................................................... 4

*Nat'l Rifle Ass'n of Am., Inc. v. ATF*,
700 F.3d 185 (5th Cir. 2012) ........................................ 14, 15

*New York State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) ................................... 5, 6, 7, 9, 18, 20

*People v. Hidalgo*,
193 N.Y.S.3d 654 (N.Y. Sup. Ct. 2023) .............................. 16

*People v. Mosley,*
    2015 IL 115872 ................................................................ 16

*Powell v. Tompkins,*
    926 F. Supp. 2d 367 (D. Mass. 2013) ............................ 16

*United States v. Lopez,*
    514 U.S. 549 (1995) ........................................................ 4

*United States v. Morrison,*
    529 U.S. 598 (2000) ........................................................ 4

*United States v. Perez-Garcia,*
    96 F.4th 1166 (9th Cir. 2024) ...................................... 22

*United States v. Rahimi,*
    144 S. Ct. 1889 (2024) .................... 5, 8, 9, 10, 19, 20, 21, 22

*United States v. Rahimi,*
    61 F.4th 443 (5th Cir. 2023) ...................................... 8, 22

*Worth v. Jacobson,*
    208 F.4th 677 (8th Cir. 2024) ...................................... 16

## STATUTES, REGULATIONS, AND RULES

Alaska Stat.
    § 11.61.220 .................................................................. 13
    § 18.65.705 .................................................................. 13

Ariz. Rev. Stat.
    § 13-3102 .................................................................... 13
    § 13-3112 .................................................................... 13

Ark. Code § 5-73-309 ........................................................ 13

Cal. Penal Code
    § 26150 ...................................................................... 12

iii

§ 26155 ................................................................................ 12

§ 26170 ................................................................................ 12

§ 27505 ........................................................................... 11, 12

§ 27510 ........................................................................... 11, 12

Col. Rev. Stat. § 18-12-112.5 ......................................... 11, 12

Conn. Gen. Stat.

§ 29-28 ............................................................................... 12

§ 29-34 ............................................................................... 11

§ 29-35 ............................................................................... 12

§ 29-36f .............................................................................. 13

D.C. Code Ann.

§ 7-2502.03 .................................................................. 12, 13

§ 7-2505.2 ......................................................................... 12

§ 7-2509.02 ....................................................................... 12

§ 22-4507 ..................................................................... 11, 12

Del. Code Ann. tit. 11, § 1448 ......................................... 12, 13

Del. Code Ann. tit. 24, § 903 ........................................... 11, 12

Fla. Stat.

§ 790.053 ........................................................................... 12

§ 790.06 ............................................................................. 12

§ 790.065 ........................................................................ 2, 11

Ga. Code

§ 16-11-125.1 .................................................................... 12

§ 16-11-126 ....................................................................... 12

§ 16-11-129 ....................................................................... 12

Haw. Rev. Stat. Ann.

§ 134-2 ...................................................................... 11, 12, 13

§ 134-9 ............................................................................... 12

430 Ill. Comp. Stat.
    65/2 .................................................................................... 13
    65/3 .............................................................................. 11, 12
    65/4 ....................................................................... 11, 12, 13
    66/25 .................................................................................. 12

720 Ill. Comp. Stat. 5/24-1 ..................................................... 12

Iowa Code § 724.22 ........................................................... 11, 14

Ky. Rev. Stat. § 237.110 ........................................................ 13

La. Rev. Stat. § 40:1379.3........................................................ 13

Mass. Gen. Laws ch. 140,
    § 130 .................................................................................. 11
    § 131 ............................................................................ 12, 14
    § 131E ............................................................................... 11

Md. Code Ann., Pub. Safety
    § 5-101 .............................................................................. 14
    § 5-133 .............................................................................. 14
    § 5-134 .............................................................................. 11

Mich. Comp. Laws
    § 28.422.............................................................................. 11
    § 28.425b............................................................................ 13

Minn. Stat. § 624.714 ............................................................. 12

Mo. Rev. Stat. § 571.080......................................................... 11

Neb. Rev. Stat.
    § 69-2403 ........................................................................... 11
    § 69-2404 ........................................................................... 11
    § 69-2433 ........................................................................... 13

Nev. Rev. Stat. § 202.3657 ..................................................... 13

N.J. Stat. Ann.
§ 2C:58-3 ............................................................ 11, 12, 14
§ 2C:58-3.3 .............................................................. 11
§ 2C:58-4 ................................................................. 12
§ 2C:58-6.1 .............................................................. 11

N.M. Stat. § 29-19-4 .................................................. 13

N.Y. Penal Law § 400.00 ................................. 11, 12, 14

N.C. Gen. Stat. § 14-415.121 ...................................... 13

Ohio Rev. Code Ann.
§ 2923.125 ............................................................... 13
§ 2923.21 ................................................................. 11

Okla. Stat. tit. 21 § 1272 ........................................... 13

Or. Rev. Stat. § 166.291 ............................................. 13

18 Pa. Cons. Stat. § 6109 ........................................... 13

R.I. Gen. Laws
§ 11-47-11 ................................................................ 13
§ 11-47-18 ................................................................ 13
§ 11-47-35 ................................................................ 11
§ 11-47-37 ................................................................ 11

S.C. Code § 23-31-215 ............................................... 13

Utah Code
§ 76-10-505 ............................................................. 13
§ 76-10-523 ............................................................. 13

Vt. Stat. Ann. tit. 13, § 4020 ............................... 11, 12

Va. Code § 18.2-308.02 .............................................. 13

Wash. Rev. Code Ann.

    § 9.41.070 ............................................................................ 13

    § 9.41.240 ................................................................ 11, 12, 14

Wis. Stat. § 175.60 ...................................................................... 13

Wyo. Stat. § 6-8-104 .................................................................. 13

**IDENTITY AND INTEREST OF AMICI STATES**

The amici States of Illinois, California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington submit this amicus brief in support of Defendant-Appellee Mark Glass, Commissioner of the Florida Department of Law Enforcement, pursuant to Federal Rule of Appellate Procedure 29(a)(2) and Circuit Rule 35-8.

Amici States have a substantial interest in the public health, safety, and welfare of their communities, which includes protecting their residents from the harmful effects of gun violence and promoting the safe use of firearms. *See Bianchi v. Brown*, No. 21-1255, 2024 WL 3666180, at *1 (4th Cir. Aug. 6, 2024) (en banc) (describing the "basic obligation of government to ensure the safety of the governed"). To serve that interest, a substantial majority of States have historically implemented measures that regulate the sale and use of, and access to, firearms for individuals under the age of 21. Although the States have reached different conclusions on how best to regulate in this area, they

share an interest in protecting their right to address gun violence in a way that is both consistent with the Nation's historical tradition and tailored to the specific circumstances in their States. Florida's regulation of the purchase of firearms by individuals under the age of 21 is a historically sound vindication of its interest in promoting public health and safety. Accordingly, the amici States urge this Court to affirm the district court's judgment.

## STATEMENT OF THE ISSUE

Whether section 790.065(13) of the Marjory Stoneman Douglas High School Public Safety Act violates the Second Amendment.

## SUMMARY OF ARGUMENT

In the wake of the tragic shooting by a 19-year-old individual at Marjory Stoneman Douglas High School in Parkland, Florida, the Florida Legislature enacted the Marjory Stoneman Douglas High School Public Safety Act, which, among other things, prohibits the purchase of firearms by persons under the age of 21. *See* Fla. Stat. § 790.065(13). That decision is consistent with those made by many other States, as well as our Nation's history and tradition.

Plaintiffs challenge section 790.065(13), claiming that it unduly infringes upon the Second Amendment rights of young people. But as the amici States set out below, the Second Amendment allows States to enact sensible public-safety regulations as long as those regulations are consistent with our Nation's historical tradition. Exercising that authority, virtually all States and the District of Columbia have imposed age-based regulations on the purchase, possession, or use of firearms within their borders, and many have maintained those laws for over 150 years. Although these regulations differ from jurisdiction to jurisdiction, 19 States and the District of Columbia have established a minimum age requirement of 21 for individuals to purchase at least some firearms, as Florida has.

The district court and the panel thus correctly reasoned that Florida's statute comports with the Second Amendment. Section 790.065(13) is comparable to regulations imposed by States on young people for over 150 years, including statutes enacted by at least 20 jurisdictions in the 1800s barring the sale of firearms to young people. That historical record demonstrates that States have a rich tradition of imposing age-based regulations on firearm use and access, making

Florida's decision to do so here historically sound. Plaintiffs' contrary arguments are incorrect: A State need not identify exact analogues from the Founding Era to sustain a challenged statute, as plaintiffs suggest, and the many statutes enacted by States in the 1800s are comparable to, and thus justify, Florida's analogous restriction.

## ARGUMENT

### I. The Second Amendment Allows States To Enact Measures To Promote Gun Safety And Protect Against Gun Violence That Are Consistent With Historical Tradition.

The States have long exercised their police power to protect the health, safety, and welfare of their residents. In fact, "the States possess primary authority for defining and enforcing the criminal law," *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotation marks omitted), and have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996). These responsibilities include enacting measures to promote safety, prevent crime, and minimize gun violence within their borders. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the police power, which the Founders

denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

The Supreme Court has repeatedly affirmed the States' authority in this area, even as it has defined the scope and significance of the rights conferred by the Second Amendment.  Indeed, in each of its contemporary Second Amendment opinions—*District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 144 S. Ct. 1889 (2024)—the Court expressly acknowledged the critical role that States play in protecting residents from gun violence.  This role is consistent with our Nation's historical tradition.

To begin, in *Heller*, the Supreme Court made clear that the Second Amendment right to keep and bear arms is "not unlimited."  554 U.S. at 626.  The Court explained that although States may not ban the possession of handguns by responsible, law-abiding individuals or impose similarly severe burdens on the Second Amendment right, they still possess "a variety of tools" to combat the problem of gun violence.  *Id.* at 636.  They may, for example, implement measures prohibiting

certain groups of people from possessing firearms, such as "felons and the mentally ill," or "impos[e] conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. And the Court made the same point shortly thereafter in *McDonald*, emphasizing that the Second Amendment "by no means eliminates" the States' "ability to devise solutions to social problems that suit local needs and values." 561 U.S. at 785; *see also id.* at 802 (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute.").

The Supreme Court's decision in *Bruen* preserved the substantial authority that States retain in this area. At issue in *Bruen* was a New York statute that required all individuals, including law-abiding individuals, to show a "special need" to obtain a license to carry a handgun in public. 597 U.S. at 11-15. The Court clarified that in a Second Amendment challenge to a statute restricting the possession or use of firearms, a court must ask whether the challenged statute is "consistent with the Second Amendment's text and historical understanding." *Id.* at 26. And it held that the New York statute at issue—unlike the licensing statutes employed by 43 other States, *id.* at 38 n.9—failed that test, insofar as it imposed restrictions on conduct

that fell within the Amendment's scope and were inconsistent with historical practice. *Id.* at 38-39. As the Court explained, history did not support a "tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.* at 38.

But the Supreme Court emphasized—even as it reached that conclusion—its intent to preserve States' substantial authority to regulate the possession, sale, and use of firearms. Most importantly, the Supreme Court explained that States can justify challenged laws not only by pointing to identical regulations from history, but to a historical tradition of "relevantly similar" firearms regulations—a form of "reasoning by analogy." *Id.* at 28; *accord id.* at 30 ("[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." (emphasis in original)). "[E]ven if a modern-day regulation is not a dead ringer for historical precursors," the Court explained, "it may still be analogous enough to pass constitutional muster." *Id.* That approach was needed, the Court elaborated, because "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." *Id.* at 27.

*Rahimi* confirmed the dangers in reading *Bruen* too narrowly.  In

that case, the Fifth Circuit had accepted a criminal defendant's Second

Amendment challenge to a federal statute barring individuals subject to

domestic-violence restraining orders from possessing firearms.  144 S.

Ct. at 1896.  In doing so, the court examined a range of historical

measures identified by the federal government, but it dismissed each as

insufficiently similar to the challenged statute.  *United States v.*

*Rahimi*, 61 F.4th 443, 456-60 (5th Cir. 2023), *rev'd*, 144 S. Ct. 1889.

Reversing, the Supreme Court explained that the Fifth Circuit had

adopted too narrow an understanding of *Bruen*, which was "not meant

to suggest a law trapped in amber."  144 S. Ct. at 1897.  Instead, the

Court reiterated, "the Second Amendment permits more than just those

regulations identical to ones that could be found in 1791."  *Id.* at 1897-

98.  "[T]he appropriate analysis," the Court continued, "involves

considering whether the challenged regulation is consistent with the

principles that underpin our regulatory tradition."  *Id.* at 1898.  The

Fifth Circuit, the Supreme Court explained, had gone astray in the

manner described in *Bruen*—namely, seeking a "historical twin" from

the Founding Era rather than merely a "historical analogue." *Id.* at 1903.

Multiple Justices wrote separately in *Bruen* and *Rahimi* to emphasize that the States retain substantial authority to regulate firearms. In *Bruen*, for instance, Justice Kavanaugh, joined by the Chief Justice, concurred to emphasize the "limits of the Court's decision" and to note that, "[p]roperly interpreted, the Second Amendment allows a variety of gun regulations." 597 U.S. at 80 (internal quotation marks omitted). Justice Alito likewise concurred to note that *Bruen* "does not expand the categories of people who may lawfully possess a gun." *Id.* at 73. Indeed, Justice Alito added, "federal law generally . . . bars the sale of a handgun to anyone under the age of 21," *id.*—a statute that overlaps substantially with the law at issue here.

And in *Rahimi*, both Justice Kavanaugh and Justice Barrett wrote separately to explain their view of the role of history in cases in which there was no precise analogue at the Founding, with each emphasizing that the lack of such an analogue did not prohibit States from regulating. Justice Kavanaugh explained that, in his view, "post-

ratification history"—that is, the interpretation and application of constitutional provisions over the generations *after* the ratification of those provisions' text—was "important" in such a case. 144 S. Ct. at 1916-19. And Justice Barrett wrote that courts should not look for "overly specific analogues"—an approach that "assumes that founding-era legislatures maximally exercised their power to legislate." *Id.* at 1925. Rather, she explained, courts should look to history "for principles that mark the borders" of the Second Amendment right. *Id.*

Taken together, then, *Heller*, *McDonald*, *Bruen*, and *Rahimi* emphasize that States retain a large measure of regulatory authority over firearms, presuming they act consistently with text and history when regulating.

## II. Florida's Age-Based Regulation Is Consistent With Measures Taken By Other States And Upheld By Courts Across The Country.

Florida's decision to regulate the sale of firearms to young people is well within the substantial authority that the States retain—and have exercised—in this area. Although the States have reached different conclusions on how best to regulate selling, using, or accessing firearms—as they have historically been permitted to do, *see supra*

Section I—virtually every State and the District of Columbia has determined that imposing *some* age-based limit is appropriate to promote public safety and curb gun violence within their borders.

Indeed, many States have imposed age-based restrictions that are similar to those enacted by Florida and challenged by plaintiffs here. Nineteen States and the District of Columbia—California, Connecticut, Colorado, Delaware, Hawaii, Illinois, Iowa, Massachusetts, Maryland, Michigan, Missouri, Nebraska, New Jersey, New York, Ohio, Rhode Island, Vermont, Washington, and the District of Columbia, in addition to Florida—have chosen to limit the circumstances under which people under the age of 21 can purchase some or all firearms.[1] At least eight of these laws are analogous to the restrictions at issue here, in that they

---

[1] Cal. Penal Code §§ 27505(a); 27510; Col. Rev. Stat. 18-12-112.5(a.5); Conn. Gen. Stat. § 29-34(b); D.C. Code Ann. § 22-4507; Del. Code Ann. tit. 24, § 903; Fla. Stat. § 790.065(13); Haw. Rev. Stat. Ann. § 134-2(a), (d), (h); 430 Ill. Comp. Stat. 65/3(a), 65/4(a)(2); Iowa Code § 724.22(2); Mass. Gen. Laws ch. 140, §§ 130, 131E(b); Md. Code Ann., Pub. Safety § 5-134(b); Mich. Comp. Laws § 28.422(3)(b), (12); Mo. Rev. Stat. § 571.080; Neb. Rev. Stat. §§ 69-2403, 69-2404; N.J. Stat. Ann. §§ 2C:58-3(c)(4), 3.3(c), 6.1(a); N.Y. Penal Law § 400.00(1), (12); Ohio Rev. Code Ann. § 2923.21(A)(2); R.I. Gen. Laws §§ 11-47-35(a)(1), 11-47-37; Vt. Stat. Ann. tit. 13, § 4020; Wash. Rev. Code Ann. § 9.41.240.

prohibit the sale of at least some long arms, in addition to handguns, to most people under the age of 21.[2]

Other States have adopted age-based firearms regulations in other contexts. For instance, many States have decided that it serves the interest of public safety to limit the circumstances under which those under the age of 21 may carry firearms in public. To that end, at least 16 jurisdictions—California, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Maryland, Massachusetts, Minnesota, New Jersey, New York, Oklahoma, Rhode Island, South Carolina, and the District of Columbia—have concluded that people under the age of 21 should (in some States, subject to exceptions) not be able to carry certain firearms in public at all (that is, whether openly or concealed).[3]

---

[2]  Cal. Penal Code §§ 27505, 27510; Col. Rev. Stat. 18-12-112.5(a.5); D.C. Code Ann. §§ 7-2502.03(a)(1), 7-2505.2(c), 22-4507; Del. Code Ann. tit. 24, § 903; Haw. Rev. Stat. Ann. § 134-2(a), (d), (h); 430 Ill. Comp. Stat. 65/3(a), 65/4(a)(2); Vt. Stat. Ann. tit. 13, § 4020; Wash. Rev. Code Ann. § 9.41.240.

[3]  Cal. Penal Code §§ 26150, 26155, 26170; Conn. Gen. Stat. §§ 29-28(b), 29-35(a); D.C. Code § 7-2509.02(a)(1); Del. Code Ann. tit. 11, § 1448(a)(5); Fla. Stat. §§ 790.06(1), (2)(b), 790.053(1); Ga. Code §§ 16-11-125.1(2.1), 16-11-126(g)(1), 16-11-129(b)(2)(A); Haw. Rev. Stat. § 134-9(a); 430 Ill. Comp. Stat. 66/25(1); 720 Ill. Comp. Stat. 5/24-1(a)(10); Md. Public Safety Code § 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv); Minn. Stat. § 624.714; N.J. Stat. §§ 2C:58-3(c)(4), 2C:58-4(c); N.Y. Penal

At least 19 additional States—Alaska, Arizona, Arkansas, Colorado, Kentucky, Louisiana, Michigan, Nebraska, Nevada, New Mexico, North Carolina, Ohio, Oregon, Pennsylvania, Utah, Virginia, Washington, Wisconsin, and Wyoming—have enacted statutes that bar people under the age of 21 from carrying certain firearms in public in a concealed manner (again, with some exceptions), but permit them to carry those firearms openly (or, in one State, the opposite).[4] Finally, ten States and the District of Columbia have set a minimum age of 21 to possess certain firearms in the first place (again subject, in some cases, to exceptions).[5] Altogether, more than 34 jurisdictions have imposed *some*

---

Law § 400.00(1); Okla. Stat. tit. 21 § 1272(A); R.I. Gen. Laws §§ 11-47-11, 11-47-18; S.C. Code § 23-31-215(A). The provision of Delaware law barring people under the age of 21 from possessing certain firearms (and thus from carrying them in public) takes effect July 1, 2025. Del. Code Ann. tit. 11, § 1448(a)(5)e.

[4] Alaska Stat. §§ 11.61.220(a)(6), 18.65.705; Ariz. Rev. Stat. §§ 13-3102(A)(2), 13-3112(E); Ark. Code § 5-73-309; Colo. Rev. Stat. § 18-12-203(1)(b); Ky. Rev. Stat. § 237.110(4)(c); La. Rev. Stat. § 40:1379.3(C)(4); Mich. Comp. Laws § 28.425b(7)(a); Neb. Rev. Stat. § 69-2433; Nev. Rev. Stat. § 202.3657(3)(a)(1); N.M. Stat. § 29-19-4(A)(3); N.C. Gen. Stat. § 14-415.12(a)(2); Ohio Rev. Code § 2923.125(D)(1)(b); Or. Rev. Stat. § 166.291(1)(b); 18 Pa. Cons. Stat. § 6109(b); Utah Code §§ 76-10-505, 76-10-523(5); Va. Code § 18.2-308.02(A); Wash. Rev. Code § 9.41.070; Wis. Stat. § 175.60(3)(a); Wyo. Stat. § 6-8-104(a)(iv), (b)(ii).

[5] Conn. Gen. Stat. § 29-36f; D.C. Code Ann. § 7-2502.03(a)(1); Del. Code Ann. tit. 11, § 1448(a)(5); Haw. Rev. Stat. Ann. § 134-2(a), (d); 430 Ill.

restriction on the purchase, possession, or use of firearms by people under the age of 21.[6]

The restriction plaintiffs challenge, in other words, is hardly an outlier; it is consistent with the way many States have elected to handle this issue. And many courts across the country have upheld state laws that limit firearm access for people under the age of 21.

Most notably, the Fifth Circuit upheld over a decade ago a federal statute that restricted the sale of firearms to individuals under the age of 21, relying in substantial part on the historical record to do so. *See Nat'l Rifle Ass'n of Am., Inc. v. ATF ("NRA I")*, 700 F.3d 185 (5th Cir. 2012). In *NRA I*, the court undertook a lengthy analysis of the Nation's historical traditions regarding gun ownership and possession by people under the age of 21. *Id.* at 199–204. It explained that, at the Founding, it was understood that jurisdictions could "disarm[] select groups for the sake of public safety," an approach, the court observed, that was

---

Comp. Stat. 65/2(a)(1), 65/4(a)(2); Iowa Code § 724.22; Md. Code Ann., Pub. Safety §§ 5-101(r), 5-133(d); Mass. Gen. Laws ch. 140, § 131(d)(iv); N.J. Stat. Ann. § 2C:58-3(c)(4); N.Y. Penal Law § 400.00(1)(a); Wash. Rev. Code Ann. § 9.41.240(2), (3). This aspect of Delaware's law takes effect on July 1, 2025. *Supra* n.3.

[6] *See supra* nn.3-5.

consistent with the "classical republican notion that only those with adequate civic 'virtue' could claim the right to arms." *Id.* at 200-01. Given that the common-law age of majority was 21, the court explained, the Founders would likely have "supported restricting an 18-to-20-year-old's right to keep and bear arms." *Id.* at 202. And in the nineteenth century, the court added, a large range of States enacted restrictions on the use or purchase of firearms by those under the age of 21. *Id.* at 202-03. In short, the court concluded, there is "considerable evidence" of a "longstanding, historical tradition" of restricting the purchase or use of firearms by those under the age of 21. *Id.* at 203. The Fifth Circuit's decision remains sound under *Bruen*'s historical framework. *See Bruen*, 507 U.S. at 19 (describing pre-*Bruen* historical analyses as "broadly consistent with *Heller*").

Other courts have agreed with *NRA I*'s assessment of history. Most recently, for instance, the district court in *Jones v. Bonta*, 705 F. Supp. 3d 1121 (S.D. Cal. 2023), denied a motion for a preliminary injunction in a case challenging a California statute that generally prohibits the sale of long guns to individuals under the age of 21, subject to certain exceptions. The court reasoned that the statute was

consistent with the historical record, in that individuals under the age of 21 were "considered 'infants' or 'minors' under the law in the Founding era," and, "[i]n keeping with [that] public understanding, . . . numerous states and municipalities enacted age-based restrictions on the sale, gift, or loan of weapons including firearms" in the period of time between the Founding Era and the late 1800s. *Id.* at 1135-36. The same reasoning has animated other courts' analysis in challenges to similar statutes. *See, e.g.*, *Powell v. Tompkins*, 926 F. Supp. 2d 367 (D. Mass. 2013), *aff'd on other grounds*, 783 F.3d 332 (1st Cir. 2015); *People v. Mosley*, 2015 IL 115872, ¶¶ 35-37; *People v. Hidalgo*, 193 N.Y.S.3d 654, 656-57 (N.Y. Sup. Ct. 2023).[7]

In short, Florida's decision to enact a statute prohibiting the sale of firearms to young people is consistent with other States' approaches

---

[7] Two court of appeals opinions to reach contrary conclusions were subsequently vacated. *See Jones v. Bonta*, 34 F.4th 704, *vacated on reh'g*, 47 F.4th 1124 (9th Cir. 2022) (vacated and remanded for further proceedings); *Hirschfeld v. ATF*, 5 F.4th 407, *vacated*, 14 F.4th 322 (4th Cir. 2021) (vacated as moot when plaintiffs aged out of the challenged statutes). The Third and Eighth Circuits have issued opinions finding unconstitutional other state statutes regulating firearm access to those under the age of 21, *see Lara v. Comm'r, Pa. State Police*, 91 F.4th 122, *reh'g en banc denied*, 97 F.4th 156 (3d Cir. 2024), *cert. pet'n pending*, No. 24-93 (U.S.); *Worth v. Jacobson*, 208 F.4th 677 (8th Cir. 2024), but proceedings in each case remain ongoing.

in this area, which have been upheld as constitutional in light of our Nation's historical tradition.

## III. Plaintiffs' Arguments Lack Merit.

Amici States agree with Florida that the challenged statute is constitutional. As Florida explains, among other things, the statute is consistent with the Nation's historical tradition: States have since the Founding concluded that it best serves the interests of public safety to prohibit certain individuals from accessing firearms, and for over 150 years States have enacted statutes that do so by specifically restricting access to firearms for those under the age of 21. Amici States write separately to respond to several aspects of plaintiffs' en banc brief.

First, plaintiffs are wrong to suggest that a State is required to identify a precise historical analogue to a challenged statute from the Founding Era. Pls'. En Banc Br. ("Br.") 28-36; *accord id.* at 37 ("The State's evidence is too late."). As plaintiffs concede, *id.* at 34-36, the Supreme Court has never announced such a rule: *Heller*, for instance, described Reconstruction Era perspectives on the scope of the Second Amendment as "instructive," 554 U.S. at 615, and *McDonald* (which held that the Second Amendment was incorporated against the States

in the late 1800s, with the ratification of the Fourteenth Amendment)

conducted an extensive analysis of the evidence of the Reconstruction

Era understanding of the scope of the right to bear arms, 561 U.S. at

770-78. Justice Thomas even wrote separately in *McDonald* to set out

his understanding of the Fourteenth Amendment as "agreed upon by

those who ratified it," *id.* at 813 (Thomas, J., concurring in part and in

the judgment)—i.e., the Reconstruction Era generation.

The Court's opinions in *Bruen* and *Rahimi* are to the same effect.

*Bruen*, like *McDonald*, extensively examined both antebellum and

postbellum historical evidence. *See* 597 U.S. at 50-66. And although

the Court there observed the existence of "an ongoing scholarly debate

on whether courts should primarily rely on" historical accounts from

1791, when the Second Amendment was ratified, or 1868, when the

Fourteenth Amendment was ratified, *id.* at 37; *accord id.* at 82-83

(Barrett, J., concurring), it did not, as plaintiffs appear to suggest, Br.

34-35, implicitly resolve that debate in favor of Founding Era sources,

given the Court's conclusion that the statute challenged there was not

compatible with historical understandings of the Second Amendment

irrespective of the timeframe.

*Rahimi*, if anything, refutes the idea that a State is required to point to a precise analogue in the Founding Era to sustain a statutory restriction on the right to bear arms. When holding unconstitutional the federal law barring individuals subject to domestic-violence restraining orders, the Fifth Circuit reasoned in substantial part that there was no Founding Era analogue to the challenged law. *Rahimi*, 61 F.4th at 456-60. But the Supreme Court reversed. *Rahimi*, 144 S. Ct. at 1898. It explained that the methodology set out in *Bruen* was "not meant to suggest a law trapped in amber." *Id.* at 1897. Thus, a State defending a firearm statute need not establish that it is "identical to ones that could be found in 1791," *id.* at 1898; rather, a State need only show that the law is "consistent with the principles that underpin our regulatory tradition," *id.* And multiple Justices wrote separately to emphasize this very point: Justice Kavanaugh explained that, in his view, what he termed "post-ratification history" was particularly important in cases where "the pre-ratification history is elusive or inconclusive," *id.* at 1916 (concurring opinion), a point echoed by Justice Barrett, *see id.* at 1924 (concurring opinion) ("postenactment history can be an important tool" in offering "persuasive evidence of the original

meaning," among other things).  Justice Barrett added that a rule requiring the government to "produce a founding-era relative of the challenged regulation" would "assume[] that founding-era legislatures maximally exercised their power to regulate," contrary to historical practice and common sense.  *Id.* at 1925.

Plaintiffs are thus wrong to suggest that "[e]vidence from Reconstruction or later" is "too late" to establish a historical tradition relevant to the Second Amendment analysis.  Br. 35.  To the contrary, "enduring" and "representative" statutes from that period, *Bruen*, 597 U.S. at 30-31, are highly probative to the analysis, including because they reflect that generation's collective "understanding of the Constitution's authorizations and limitations," *Rahimi*, 144 S. Ct. at 1916 (Kavanaugh, J., concurring), and "provide persuasive evidence of the original meaning" of the Second Amendment, *id.* at 1924 (Barrett, J., concurring).  In *Rahimi*'s words, Reconstruction Era statutes of the kind Florida has amassed illustrate "the principles that underpin our regulatory tradition."  *Id.* at 1898 (majority opinion).  This Court thus has no need to decide whether, as the panel reasoned, "historical sources from the Reconstruction Era are *more* probative of the Second

Amendment's scope than those from the Founding Era" in a challenge to a state statute, Panel Op. 8 (emphasis added), because at minimum those sources *are* probative under *Rahimi* and establish a historical tradition sufficient to justify the challenged law.

Second, plaintiffs are wrong to suggest that the long line of statutes the panel identified from the 1800s is insufficient to justify the challenged statute even setting aside those statutes' "temporal distance from the founding." Br. 42; *see id.* at 41-50. To the contrary, Florida's historical evidence firmly establishes that by the close of the 1800s, 20 States, or just under half the States in the Union, had enacted laws that "banned the sale of firearms to all 18-to-20-year olds." Panel Op. 21; *see also id.* at 34-39 (listing statutes). These statutes easily pass muster as "analogues," *Rahimi*, 144 S. Ct. at 1902, to the challenged law.

Plaintiffs' contrary argument, Br. 43-47, lacks merit. Plaintiffs contend that the 20 statutes that the panel identified are disanalogous to the challenged statute because (a) many (but not all) prohibited the sale only of handguns, not of long arms; (b) many (but not all) applied only to males; and (c) many (but not all) imposed consequences only on

21

the supplier of the firearm in question, and not the young person. *Id.*
But *Rahimi* rejected just this form of "divide-and-conquer approach to
the historical evidence." *United States v. Perez-Garcia*, 96 F.4th 1166,
1191 (9th Cir. 2024). The Fifth Circuit in that case, too, reasoned that
the government's proposed analogues were each individually deficient
on some basis, including because they relied on different enforcement
mechanisms or swept more narrowly than the challenged statute. *See
Rahimi*, 61 F.4th at 458-60. But the Supreme Court rejected this kind
of approach, under which a court isolates each historical precursor and
asks whether it differs from the challenged regulation in some way. It
explained that the Fifth Circuit had erred in seeking a "historical twin"
rather than considering only whether the federal law "comport[ed] with
the principles underlying the Second Amendment." *Rahimi*, 144 S. Ct.
at 1898, 1902-03.

Plaintiffs' argument here suffers from the same flaw. As the
panel correctly reasoned, Panel Op. 22-24, although the challenged law
is not a "twin" to the many state statutes that the panel identified from
the late 1800s, it is "relevantly similar" in every key respect, *Rahimi*,
144 S. Ct. at 1903, and at minimum imposes no greater burden on the

young-adult plaintiffs than the historical statutes did. As the panel explained, although the challenged statute sweeps more broadly than the historical statutes in terms of the kinds of firearms that fall within its scope, in other respects it is narrower, in that it permits people under the age of 21 to acquire firearms from friends and family, an avenue not left open to such individuals under the historical laws the panel identified. Panel Op. 24. As the panel explained, although the Florida law "and its Reconstruction Era predecessors are not precisely the same," that is permissible under *Bruen* (as *Rahimi* confirmed) because "they need only be analogues, not twins." *Id.* That conclusion is correct, and plaintiffs are wrong to demand a tighter historical fit than that between the historical statutes the panel identified and the challenged measure.

## CONCLUSION

For these reasons, the Court should affirm the judgment below.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

23

JANE ELINOR NOTZ
Solicitor General

/s/ Alex Hemmer
ALEX HEMMER
Deputy Solicitor General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

RAÚL TORREZ
*Attorney General*
*State of New Mexico*
201 3rd Street NW
Albuquerque, NM 87109

JOSHUA H. STEIN
*Attorney General*
*State of North Carolina*
114 W. Edenton Street
Raleigh, NC 27603

MICHELLE A. HENRY
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 MLK Jr, Blvd.
St. Paul, MN 55155

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

August 30, 2024

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rules 35-7 and -8 because it contains 4,737 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirement of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

/s/ Alex Hemmer
ALEX HEMMER

August 30, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2024, I electronically filed the foregoing Brief of Amici Curiae Illinois et al. with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Alex Hemmer
ALEX HEMMER